UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
SPRINGFIELD DIVISION

| | |
|---|---|
| GEOFFREY CROWTHER,<br>           Plaintiff,<br>      v.<br><br>CSX TRANSPORATION, INC. and<br>CONSOLIDATED RAIL CORP,<br>           Defendant<br><br>AND<br><br>GEOFFREY CROWTHER,<br>           Plaintiff,<br>      v.<br><br>CSX TRANSPORTATION, INC. | 3:09-cv-10334-MAP<br><br><br><br><br><br><br><br>3:09-cv-11467-MAP |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE TO PRECLUDE PLAINTIFF'S MEDICAL EXPERT, ANDREW P. LEHMAN, M.D., FROM TESTIFYING AT TRIAL

Defendants CSX Transportation, Inc. ("CSXT") and Consolidated Rail Corporation ("Conrail") submit this Memorandum of Law in support of their Motion in Limine to Preclude Plaintiff's Medical Expert, Andrew P. Lehman, M.D., from Testifying at Trial. As grounds for their Motion, Defendants state that:

1.     Plaintiff's expert, Andrew P. Lehman, M.D. ("Dr. Lehman") is not qualified to offer an expert opinion under Rule 702 because he is not an occupational medicine doctor or an ergonomist;

2.     Dr. Lehman's opinion is unreliable because it lacks the necessary factual foundation;

3.      Dr. Lehman's opinion is unreliable because it lacks the prerequisite scientific support;

4.      Dr. Lehman's opinion is not based on a reasonable degree of medical certainty or its substantive equivalent; and

5.      Dr. Lehman's purported medical causation opinion is inadmissible because he cannot link Defendants' alleged negligence to Plaintiff's alleged bilateral knee osteoarthritis.

In further support of this Motion, Defendants state as follows:

## I.      FACTUAL BACKGROUND:

In addition to the facts summarized below, Defendants refer to and specifically incorporate herein by this reference their Omnibus Statement of Facts in Support of Defendants' Motions in Limine and exhibits attached thereto.

Plaintiff disclosed his orthopedic surgeon, Andrew P. Lehman, M.D. ("Dr. Lehman") as an expert witness in this case. See Dr. Lehman's Report, a copy of which is attached as Exhibit A. On April 17, 2007, Dr. Lehman performed bilateral knee arthroplasty (knee replacement) on Plaintiff. See Office Note of Dr. Lehman dated Apr. 30, 2007, a copy of which is attached as Exhibit B (discussing post-operative treatment of Plaintiff's April 17, 2007 surgery). According to Dr. Lehman, the bilateral knee replacement was necessitated by Plaintiff's osteoarthritis. (See Dep. of Andrew P. Lehman, M.D., at 17:6-15, relevant portions of which are attached as Exhibit C.) Dr. Lehman further testified that Plaintiff's osteoarthritis was caused by bilateral meniscectomies that he had had before he began working for Conrail. Id. at 18:4-19, 42:21-43:15, 64:1-9.

Dr. Lehman submitted an expert report opining that "[i]t is impossible to tell what extent [Plaintiff's] work has contributed to the development of osteoarthritis." Ex. A at 2. Indeed, Dr. Lehman could not "tell[] when [Plaintiff] would have developed the symptoms of osteoarthritis had he not been exposed to such conditions." Id. Most notably, Dr. Lehman opined that Plaintiff's osteoarthritis was caused by his pre-railroad knee injuries and not by the conditions of his employment with Defendants. Id.; (Ex. C at 18:4-19, 42:21-43:15, 64:1-9. According to Dr. Lehman, the medical "literature would show . . . that following removal of the meniscus, which [Plaintiff] had, **greater than ninety percent of the individuals will develop osteoarthritis** . . . ." (Ex. C at 18:13-17.) (Emphasis added).

Despite clearly stating that the medical history showed Plaintiff's osteoarthritis was caused by a pre-railroad condition, in his report Dr. Lehman opined in a conclusory fashion that "it is more likely than not that [Plaintiff's] work conditions have aggravated the symptoms of his osteoarthritis." Ex. A at 2. Dr. Lehman's conclusion is inexplicable as he clearly admitted at his deposition to lacking any objective or scientific evidence, whether medical or ergonomic, supporting the opinion that Plaintiff's railroad employment aggravated his osteoarthritis symptoms. (See Ex. C at 22:17-22, 25:10-18, 29:2-16.) In fact, all Dr. Lehman relied on in reaching his opinion was "common sense." (Id. at 24:18-23.) Perhaps realizing the inadequacy of his opinion, Dr. Lehman admitted that it is impossible to say whether Plaintiff's work conditions aggravated his osteoarthritis symptoms. (Id. at 43:17-19.)

His opinion regarding the alleged aggravation of Plaintiff's knee osteoarthritis is also inadmissible because Dr. Lehman knows nothing about Plaintiff's railroad occupation. At his deposition, Dr. Lehman admitted to not having reviewed Plaintiff's job duties. (Ex. C at 23:24-24:10, 27:2-5, 56:2-17.) Dr. Lehman lacks any knowledge about the frequency and amount of

bending, stooping, lifting, or equipment operation in which Plaintiff engaged while at the railroad. (Id. at 24:11-16.) Dr. Lehman never even reviewed an ergonomic assessment of Plaintiff's job. (Id. at 29:5-8.) When asked whether he knew the "factual foundation of [Plaintiff's] actual job duties," Dr. Lehman explicitly answered "No." (Id. at 27:2-5.) Most importantly, Dr. Lehman is not an occupational medicine doctor or an ergonomist. (Id. at 26.) Dr. Lehman has never conducted any research in the area of repetitive stress injuries or cumulative trauma nor has he published any articles related to degenerative knee conditions, and definitely none related to degenerative knee conditions caused by railroad work. (Id. at 8.) Even more troubling is that Dr. Lehman admitted under oath that, if he were rendering an opinion that Plaintiff's condition was work-related in this case, which he was retained to do, having a sound understanding of what Plaintiff's job duties entailed would be important. (Id. at 26-27.) Dr. Lehman admitted, however, that he does not have a firm basis of what Plaintiff's job duties were during the course of his employment with Defendants. (Id.)

Lastly, Dr. Lehman only reviewed his own clinic notes and relied on no other medical records. (See id. at 4:18-5:15.) Clearly, Dr. Lehman's opinion regarding the alleged aggravation of Plaintiff's bilateral knee osteoarthritis lacks the necessary scientific and factual basis.

## II.     DISCUSSION OF LAW

### A.     The Court Should Preclude Dr. Lehman from Testifying as An Expert Because His Opinion Lacks The Necessary Factual and Scientific Foundation Under Rule 702

Expert testimony is only admissible when it is reliable and would assist the trier of fact to understand the evidence or determine a fact at issue. See Fed. R. Evid. Rule 702; Daubert v. Merrell Dow Pharm., 509 U.S. 579, 589-591 (1993). The proponent of the expert bears the burden of demonstrating that the expert's testimony satisfies the Daubert standard. See Fed. Evid. Rule 702 advisory committee's note (2000 Amends.). Cf. Bourjaily v. United States, 483

U.S. 171, 175-76 (1987) (holding that proponent of hearsay evidence must prove by preponderance of evidence that Rules of Evidence have been satisfied).

In <u>Daubert</u>, the Supreme Court held that, when faced with the proffer of expert testimony under Rule 702, the trial judge must preliminarily assess whether the testimony's underlying reasoning or methodology is scientifically or technically valid and can properly be applied to the facts at issue.   509 U.S. at 592-93.   The judge must consider the following factors when determining whether an expert's opinion meets the minimum standards of reliability:

(1)   Whether the theory or technique in question can be (and has been) tested;
(2)   Whether the theory or technique has been subjected to peer review and publication;
(3)   The known potential rate of error and the existence and maintenance of standards controlling the techniques, operation; and
(4)   General acceptance by the relevant scientific community.

<u>Id.</u> at 591-95.

Federal courts have noted that the more subjective and controversial the expert's inquiry, the more likely the testimony should be excluded as unreliable.   <u>O'Conner v. Commw. Edison Co.</u>, 13 F.3d 1090, 1106 (7th Cir. 1994) (holding Rule 702 requires more than subjective belief or speculation); <u>United States v. Santiago</u>, 156 F. Supp. 145, 147 (D.P.R. 2001) (stating purpose of <u>Daubert</u> inquiry is to rule out subjective belief or speculation); <u>Best v. Lowe's Home Ctrs., Inc.</u>, 2008 U.S. Dist. LEXIS 45175, at *20 (E.D. Tenn., June 4, 2008) (holding that if expert's methodology cannot be explained in objective terms then methodology is presumptively unreliable).   An expert's opinion cannot be based solely on the weight of his own authority.   <u>See Gen. Elec. v. Joiner</u>, 522 U.S. 136, 146 (1997).   "[N]othing in either <u>Daubert</u> or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert."   <u>Id.</u>   "The expert must explain precisely how [he has] followed the scientific method, as it is practiced by (at least) a recognized minority of

scientists in [his] field." Lust v. Merrell Dow Pharm., 89 F.3d. 594, 597 (9th Cir. 1996) (internal

quotations omitted).

1.      **Dr. Lehman Is Not Qualified to Offer A Medical Causation Opinion in This Case**

Dr. Lehman is not qualified to provide causation testimony because he lacks the training

and experience necessary to link Plaintiff's work activities with his degenerative disc disease.

Under Daubert, the trial judge must determine whether a proffered expert is qualified to testify

and whether his testimony is scientifically reliable.   509 U.S. at 592-593.   As noted by the

Seventh Circuit:

> [W]e have no doubt that an expert's qualifications bear upon the scientific validity
> of his testimony.  In United States v. Benson, 941 F.2d 598 (7th Cir. 1991), we
> stated, "An expert's opinion is helpful only to the extent the expert draws on some
> special skill, knowledge, or experience to formulate that opinion; the opinion
> must be an expert opinion (that is, an opinion informed by the witness's expertise)
> rather than simply an opinion broached by a purported expert." Id. at 604.
> Because an expert's qualifications bear upon whether he can offer special
> knowledge to the jury, the Daubert framework permits – indeed, encourages – a
> district judge to consider the qualifications of a witness.  Cf. Braun v. Lorillard
> Corp., 84 F.3d 230, 234-35 (7th Cir. 1996).

United States v. Vitek Supply Corp., 144 F.3d 476, 486 (7th Cir. 1998)

By his own admission, Dr. Lehman is not qualified to offer an expert opinion in this case

because he has no training whatsoever in analyzing work place exposure to risk factors for

repetitive stress injuries, let alone railroad work place exposure, to determine whether Plaintiff's

arthritic conditions were actually caused and/or aggravated by his work place activities.  (Ex. C

at 26.)   In making a diagnosis, whether in Plaintiff's case or another, Dr. Lehman is not

concerned with also diagnosing the cause of the condition.  In addition, Dr. Lehman admitted

that he has no sound or reliable basis to render an opinion that Plaintiff's bilateral knee condition

is work-related based on the fact that he does know what Plaintiff's job duties were during the

course of his employment with Defendants.  (Id. at 26-27.)  More importantly, Dr. Lehman has never conducted any research or authored any articles related to repetitive stress injuries or cumulative trauma, and certainly none related to railroad work.  (Id. at 8.)  The Court should, therefore, preclude Dr. Lehman from offering any expert testimony because he is not qualified to opine on medical causation under the circumstances of this case.

**2.      Dr. Lehman's Opinion Is Inadmissible Because It Lacks Any Factual Basis**

Dr. Lehman's opinion lacks the reliability required by Daubert and its progeny because Dr. Lehman knows nothing about Plaintiff's job duties with Defendants.  Dr. Lehman admitted that he never talked to Plaintiff about what his job entailed.  (Ex. D at 23:24-24:10, 27:2-5, 56:2-17.)  Dr. Lehman does not know the basics of Plaintiff's employment activities such as the frequency and the amount of his bending, stooping, lifting, or equipment operation.  (Id. at 24:11-16.)  Dr. Lehman did not even educate himself on Plaintiff's employment by reviewing ergonomic assessments of his occupation.  (Id. at 29:5-8.)

Furthermore, Dr. Lehman did not review any of Plaintiff's medical history.  As he admitted at his deposition, Dr. Lehman only relied on his own notes when drafting his expert report.  Therefore, Dr. Lehman's opinion is inadmissible as unreliable because it is devoid of any factual foundation.

**3.      Dr. Lehman's Opinion Is Inadmissible Because It Lacks Any Scientific Support**

Dr. Lehman's opinion lacks the reliability required by Daubert and its progeny because it is not based on any scientific evidence but on "common sense."  Dr. Lehman testified that his opinions were not based on any medical or ergonomic evidence.  In fact, Dr. Lehman could not point to any objective evidence that support his opinion.  Certainly, relying on one's "common sense," as Dr. Lehman testified to having done here, does not require specialized training or

education.  See Trimed, Inc. v. Stryker Corp., 608 F.3d 1333, 1342 (Fed. Cir. 2010) (common sense does not require reference to expert opinion); Bethea v. Bristol Lodge Corp., No. 01-612, 2003 U.S. Dist. LEXIS 9011, *19-20 (E.D. Pa. 2003) (expert must provide methodology and cannot simply rely on instinct).  The jury can be particularly influenced if an expert's common sense is allowed to invade their fact-finding province.  See Murray v. Marina Dist. Dev., No. 06-583, 2006 U.S. Dist. LEXIS 92769, *12 (E.D. Pa. 2006) (excluding expert where jury could use common sense).  Therefore, Dr. Lehman's opinion is inadmissible as unreliable because it is based on "common sense" and not on his specialized training and experience.

**4.     Dr. Lehman's Opinion Is Inadmissible Because He Applies the Incorrect Standard**

Finally, Dr. Lehman's opinion is inadmissible because he applies the improper standard of causation and provides the jury with no basis on which they can determine that Plaintiff's railroad work is causally related to his osteoarthritis aggravation.  When presenting medical causation testimony, the "opinion must be stated within a reasonable degree of medical certainty or probability."  Gonzalez v. United States, No. 05-00269, 2010 U.S. Dist. LEXIS 110215, *22 (E.D. Ari. 2010).  In fact, many jurisdictions require that the phrase "reasonable degree of medical certainty" be incorporated into the testimony.  See, e.g., Bone v. Ames Taping Tool Sys., Inc., 179 F.3d 1080, 1082 n.1 (8th Cir. 1999) (noting Missouri requires medical causation opinion to be expressed in terms of reasonable degree of certainty); Kannankeril v. Terminix Int'l, Inc., 128 F.3d 802, 806 n.5 (3d Cir. 1997) (same for New Jersey); In re Paoli R.R. Yard PCB Litigation, 35 F.3d 717, 750 (3d Cir. 1984) (same for Pennsylvania); O'Banion v. Owens-Corning Fiberglass Corp., 968 F.2d 1011, 1013 (10th Cir. 1992) (agreeing with other courts that medical opinions should be given to medical degree of certainty); Askey v. Occidental Chem. Corp., 102 A.D.2d 130, 137 (N.Y. 1984) (same for New York).  At the very least, the medical

expert should base his opinion on the substantive equivalent of "reasonable degree of certainty." Guam v. Reyes, 879 F.2d 646, 649 (9th Cir. 1989).

Dr. Lehman should be precluded from testifying at trial because he did not opine to a reasonable degree of medical certainty nor its substantive equivalent.  Not only did Dr. Lehman fail to mention the phrase "reasonable degree of medical certainty," but he altogether omitted any conviction of opinion and simply stated that "it is more likely than not that [Plaintiff's] work conditions have aggravated the symptoms of his osteoarthritis . . . ."  Although strict reliance on a phrase may be unnecessary, Dr. Lehman's failure to opine to a reasonable degree of medical certainty is troublesome because, as discussed above, his opinion lacks any factual or scientific support.  Therefore, Dr. Lehman's opinion is not based, either in form or in substance, on a reasonable degree of medical certainty.  Accordingly, the Court should preclude Dr. Lehman from testifying that Plaintiff's work aggravated his bilateral knee osteoarthritis.

**5.      Dr. Lehman Offers No Opinion Whatsoever Regarding Defendants' Negligence and the Alleged Causal link Between Defendants' Alleged Negligence and Plaintiff's Alleged Bilateral Knee Osteoarthritis**

To the extent the Court finds Dr. Lehman qualified to render an opinion in this case and that the foundation of his opinion pass muster under Daubert, Dr. Lehman should nonetheless be excluded because his opinions are based entirely on the physical activities that Plaintiff encountered in the daily performance of his job functions as a trackman and not on any negligence of Defendants.  In occupational cases, it is insufficient for a plaintiff to claim that his normal and routine work activities caused his injuries.  He must instead demonstrate that his injuries were caused by some increased repetition, force, posture, or other exposure, over and above that normally experienced in the workplace, and that these atypical exposures were further caused by the defendant's negligence.

Interestingly, Dr. Lehman testified that, other than a living a completely sedentary life, he did not know what, if any, changes Defendants could have made to prevent Plaintiff's alleged bilateral knee osteoarthritis:

> Q.    Are you aware of any valid scientific studies that associate the type of work duties that [Plaintiff] did with the development of degenerative joint disease?
>
> A.    No. . . .
>
> Q.    Is there anything in the scientific literature that shows that a specific change can be made to a job process that would prevent the development of degenerative joint disease in a person like Mr. Crowther?
>
> A.    There is no such study that I'm aware of . . . .
>
> Q.    Okay.  And so you don't have an opinion that [Defendants] could have done some specific change that would have resulted in him not having degenerative joint disease in his knee; would you agree?
>
> A.    I think job modifications may have alleviated symptoms related to his osteoarthritis, but not necessarily . . . the fact that he had osteoarthritis. . . .
>
> Q.    Are you aware of any specific changes that could have been done to Mr. Crowther's job that would have changed the outcome with regard to his knees?
>
> A.    I think if he was more sedentary, he would have less symptoms.
>
> Q.    And it's impossible to prevent degenerative joint disease in the knees, correct?
>
> A.    Just sitting down on a couch for your entire life, you'd never develop it.

(Ex. C at 51:8-12, 51:20-52:17, 52:24-53:5.)   Clearly, Dr. Lehman cannot point to any negligence by Defendants that may have caused Plaintiff's bilateral knee osteoarthritis.  Without this causal link, Dr. Lehman cannot and should not testify that Plaintiff's knee ailment is related to Defendants' alleged negligence.  Accordingly, the Court should preclude Dr. Lehman from providing any medical causation testimony at trial.

### III.   <u>CONCLUSION</u>

WHEREFORE, for all the above-stated reasons, Defendants' Motion should be

**<u>ALLOWED</u>**.

### IV.   <u>REQUEST FOR ORAL ARGUMENT</u>

Pursuant to Local Rule 7, Defendants respectfully state that oral argument may assist the

Court and requests a hearing on its motion in limine.

> Respectfully submitted,
> Defendants, CSX Transportation, Inc., and
> Consolidated Rail Corporation,
> By their attorneys,
>
>  /s/ Heather M. Gamache
> Michael B. Flynn, Esq., BBO# 559023
> mbflynn@flynnwirkus.com
> Lori A. Wirkus, Esq., BBO # 635525
> lawirkus@flynnwirkus.com
> Heather M. Gamache, BBO# 671898
> hgamache@flynnwirkus.com
> Flynn & Wirkus, P.C.
> 400 Crown Colony Drive, Suite 200
> Quincy, MA 02169
> (617) 773-5500

DATED: November 8, 2010

G:\F & A\CASE FILES\CSX OCCUPATIONAL\Worn\Crowther - WORN - 61-123\Trial\Motions in Limine\MIL to Preclude Lehman\MoL re MIL to Preclude Dr. Lehman.doc

## <u>CERTIFICATE OF SERVICE</u>

I, Heather M. Gamache, attorney for Defendants hereby certify that I have served true and correct copies of the foregoing Memorandum of Law upon all counsel of record electronically via *CM/ECF* this 8th day of November, 2010.

/s/ Heather M. Gamache
Heather M. Gamache, Esq.
