# EXHIBIT "C"

**Andrew P. Lehman, M.D.**
**December 15, 2008**





Page 1

1        COURT OF COMMON PLEAS

2     PHILADELPHIA COUNTY - CIVIL DIVISION

3           DOCKET NO. 02389

4

5     *******************************

6     GEOFFREY CROWTHER,

7           Plaintiff,

8     Vs.

9     CONSOLIDATED RAIL CORPORATION

10    and CSX TRANSPORTATION, INC.,

11          Defendants.

12    *******************************

13

14       DEPOSITION OF ANDREW P. LEHMAN, M.D.

15

16       New England Orthopedic Surgeons

17            300 Birnie Avenue

18       Springfield, Massachusetts

19

20       December 15, 2008      4:20 p.m.

21

22

23          Jonathan P. Lodi

24          Court Reporter

---

**CATUOGNO COURT REPORTING & STEN-TEL TRANSCRIPTION**
Springfield, MA   Worcester, MA   Boston, MA   Lawrence, MA   Providence, MA

4a2ae25d-d8ea-4abe-ae57-b1dcb5257fa0

**Andrew P. Lehman, M.D.**
**December 15, 2008**

1   ANDREW P. LEHMAN, M.D., Deponent, having first

2   been duly sworn, deposes and states as follows:

3           (Lehman Deposition Exhibits 1 - 5:

4           Marked for identification.)

5           EXAMINATION

6       Q.    (By Mr. Hall)  Good afternoon, Doctor.

7   My name is Stephen Hall, and I represent the

8   Railroad in a piece of litigation involving one of

9   your former patients, Geoffrey Crowther.  And

10  before we began, we talked a little bit about the

11  exhibits, and I just want to make sure that we go

12  through them on the record, quickly.

13          Exhibit 1 is marked as the notice of

14  deposition, which has got the legalese, but asking

15  for -- I'm not sure if you saw this or not -- but

16  it was sent to Mr. Joyce, care of -- to you --

17  care of Mr. Joyce, but it asked that you bring the

18  whole file relating to Mr. Crowther.  And it's my

19  understanding that Exhibits 3 and 4 constitute the

20  records that relate to your treatment, is that

21  correct?

22      A.    Yes, as far as I know.  I didn't see

23  the --

24      Q.    Sure.  And you're more than welcome to

**CATUOGNO COURT REPORTING & STEN-TEL TRANSCRIPTION**
**Springfield, MA   Worcester, MA   Boston, MA   Lawrence, MA   Providence, MA**

4a2ae25d-d8ea-4abe-ae57-b1dcb5257fa0

**Andrew P. Lehman, M.D.**
**December 15, 2008**

1   take a look through those.   You gave me a --

2        A.     Yes.   These are the -- this is pretty

3   redundant.   This has got -- this stuff has got

4   that in there, but --

5        Q.     Okay.   There was some additional

6   material in --

7        A.     This is --

8        Q.     And Exhibit 4 is what you reviewed in

9   advance of the deposition?

10       A.     Yes.

11       Q.     And Exhibit 2 is your report that you

12  were asked to draft in this case and a copy of

13  your CV, is that correct?

14       A.     Yes.   And that is also in 4, as well;

15  My CV, not; but the report is.

16       Q.     I just want to make sure.   Is that a

17  true and accurate copy?

18       A.     It appears to be.

19       Q.     Okay.   And you signed that?

20       A.     Yes.   This is an older CV.   This is

21  not quite accurate.

22       Q.     Okay.   We can append it afterwards.

23       A.     Okay.

24       Q.     Is there anything -- as you're looking

**CATUOGNO COURT REPORTING & STEN-TEL TRANSCRIPTION**
Springfield, MA   Worcester, MA   Boston, MA   Lawrence, MA   Providence, MA

4a2ae25d-d8ea-4abe-ae57-b1dcb5257fa0

**Andrew P. Lehman, M.D.**
**December 15, 2008**

1    certification?

2          A.    Orthopedic surgery.

3          Q.    **And, I'm sorry, when did you complete**

4    **the boards?**

5          A.    Step I, I believe, was in 2003.  Part

6    II was following twenty-six months of practice,

7    which was in August of 2006.

8          Q.    **And have you conducted any research?**

9          A.    We do have a database here, at New

10   England Orthopedics, where we do clinical

11   research.

12         Q.    **Have you done any research in the area**

13   **of repetitive stress injuries?**

14         A.    No.

15         Q.    **Cumulative trauma disorders?**

16         A.    No.

17         Q.    **Or anything involving railroad work?**

18         A.    No.

19         Q.    **Have you published any findings with**

20   **regard to the cause of degenerative conditions in**

21   **the hip or knees?**

22         A.    No.

23         Q.    **And have you ever been deposed before,**

24   **sir?**

**CATUOGNO COURT REPORTING & STEN-TEL TRANSCRIPTION**
**Springfield, MA   Worcester, MA   Boston, MA   Lawrence, MA   Providence, MA**

4a2ae25d-d8ea-4abe-ae57-b1dcb5257fa0

**Andrew P. Lehman, M.D.**
**December 15, 2008**

1          A.     That's correct.

2          Q.     **And that was a result of**

3    **osteoarthritis in both of his knees, is that**

4    **right?**

5          A.     That is correct, yes.

6          Q.     **Okay.  So it was the osteoarthritis**

7    **that caused him to have to have surgery, correct?**

8          A.     Well, it was the pain from the

9    osteoarthritis which caused him to have a surgery.

10   We don't treat the x-rays.  We treat the patient.

11   And the patient was having pain, secondary to his

12   osteoarthritis, and that was refractory to other

13   treatments.  So the ultimate treatment for

14   arthritis of the knee or pain, secondary to

15   osteoarthritis of the knee, is a knee replacement.

16         Q.     **And my understanding is that your**

17   **opinion is that his old injuries or old surgeries**

18   **caused the osteoarthritis, is that correct?**

19         A.     They contributed.  I think the cause

20   of osteoarthritis is multi-factorial.

21         Q.     **Well, in your multi-factorial**

22   **analysis, you said it was more likely than not**

23   **that his work conditions may have aggravated his**

24   **symptoms, but that his osteoarthritis was caused**

**CATUOGNO COURT REPORTING & STEN-TEL TRANSCRIPTION**
**Springfield, MA   Worcester, MA   Boston, MA   Lawrence, MA   Providence, MA**

4a2ae25d-d8ea-4abe-ae57-b1dcb5257fa0

Andrew P. Lehman, M.D.
December 15, 2008

1    by his original injuries to the back in the early

2    1970s, right?

3         A.    Yes.

4         Q.    And so we can agree that his

5    osteoarthritis was caused, in your opinion, within

6    a reasonable degree of medical certainty, was

7    linked back to his original injuries in the early

8    '70s, right?

9              MR. JOYCE:  Objection.  You can

10             answer.

11             THE WITNESS:  I mean, that's a

12             slippery slope you have there.  I mean, I

13             think literature would show you that

14             following removal of the meniscus, which he

15             had, greater than ninety percent of the

16             individuals will develop osteoarthritis

17             after twenty years or so.  Whether that

18             arthritis is symptomatic or not is a

19             separate issue.

20        Q.    (By Mr. Hall)  Okay.  But the onset of

21   the disease is osteoarthritis, correct?

22        A.    I think one of the major contributing

23   factors to his osteoarthritis is his original

24   injuries back in the early 1970s.

Andrew P. Lehman, M.D.
December 15, 2008

1    Q.    You're not saying, within a reasonable

2   degree of medical certainty, that his job at the

3   Railroad caused or contributed to an actual

4   acceleration of the disease process, are you?

5              MR. JOYCE:  Objection.

6              THE WITNESS:  Well, I think it's

7         unclear whether that is the case or not.  I

8         mean, there's no --

9    Q.    (By Mr. Hall)  I'm sorry.  That's

10  unclear?

11   A.    It's unclear.  I mean, I think, with a

12  reasonable degree of medical certainty, if

13  someone's lifting fifty pounds a day, I think that

14  would accelerate the amount of osteoarthritis you

15  have.  I don't think it necessarily initiated the

16  osteoarthritis, but it certainly accelerated it.

17   Q.    Well, do you have any objective

18  scientific evidence to support that his job duties

19  at the Railroad caused or contributed to --

20   A.    No.

21   Q.    -- an actual acceleration?

22   A.    Absolutely not.

23   Q.    Okay.  So -- and you've never reviewed

24  his job duties, have you?

**Andrew P. Lehman, M.D.**
**December 15, 2008**

1        A.      Well, I think it did mention that, in

2    Attorney Joyce's note, that he had -- "As a track

3    laborer, track welder, track foreman, track

4    inspector and welder foreman," that "his tasks

5    included operating all types of equipment such as

6    hand and power tools including torches, electric

7    and gas welding equipment, grinders, chipping

8    guns, track chisels, sledge hammers, claw bars,

9    spiking mauls, needle guns, air impact hammers and

10   saws.  His tasks required him to stoop, bend, and

11   kneel while welding and repairing railroad track.

12   These tasks also exposed him to an extreme amount

13   of repetitive strenuous motion, vibration force

14   and awkward postures, heavy lifting and carrying

15   along with excessive walking on uneven ballast."

16            So that's the job description that I

17   was privy to.

18       Q.      Okay.  So the job description that --

19   did you rely on anything else in coming up with

20   the idea that his work may have played a role in

21   his problem, other than what you were provided by

22   Mr. Joyce?

23       A.      Common sense.

24       Q.      Okay.  Well, let me ask you this:  Did

**CATUOGNO COURT REPORTING & STEN-TEL TRANSCRIPTION**
Springfield, MA   Worcester, MA   Boston, MA   Lawrence, MA   Providence, MA

4a2ae25d-d8ea-4abe-ae57-b1dcb5257fa0

**Andrew P. Lehman, M.D.**
**December 15, 2008**

1    you ask Mr. Crowther about his job?

2         A.    When I last saw him, yes, probably in

3    April, April of 2007, I believe.  Or was it

4    February?

5         Q.    **And what did he tell you he did then?**

6         A.    He said he worked on the railroad for

7    upwards of thirty years and did a lot of heavy

8    work for it.  I didn't get the actual job

9    description at that time because I did not believe

10   he was filing this under Workers' Compensation.

11        Q.    **Did you take down any notes as to the**

12   **frequency, the amount of bending, stooping,**

13   **lifting, or his use of tools; did you try to look**

14   **at the frequency or anything, or any details about**

15   **that in your file at all?**

16        A.    No.

17        Q.    **Have you ever went out and looked at**

18   **the type of work that Mr. Crowther did?**

19        A.    No.

20        Q.    **Have you ever seen any videotape of**

21   **the type of work that Mr. Crowther did?**

22        A.    No.

23        Q.    **Do you have any familiarity with the**

24   **types of things he actually did, other than --**

**Andrew P. Lehman, M.D.**
**December 15, 2008**

Page 25

1       A.      Just from what I'm reading in this

2    report.  That's it.

3       Q.      **And you would understand that that was**

4    **given to you by the plaintiff's lawyer, right?**

5       A.      Yes.

6       Q.      **And did you read that with any**

7    **skepticism?**

8               MR. JOYCE:  Objection.

9               THE WITNESS:  No, I did not.

10      Q.      **(By Mr. Hall)  Okay.  And I suppose**

11   **you didn't perform any scientific analysis on the**

12   **exposure he had at the Railroad, did you?**

13      A.      No.

14      Q.      **And not only didn't you quantify his**

15   **exposure, but you also didn't quantify any rest**

16   **period or down-time that he may have had on the**

17   **job as well, is that correct?**

18      A.      That's correct.

19      Q.      **And did you talk to Mr. Crowther about**

20   **his past work history?**

21      A.      I'm sorry?

22      Q.      **His past work history.**

23      A.      No, I did not.  I was more interested

24   in treating his knees, replacing his knees.

**Andrew P. Lehman, M.D.**
**December 15, 2008**

1    Q.    And you're not an occupational

2  medicine doctor, are you?

3    A.    No.

4    Q.    And you know that there's a specialty

5  in occupational medicine?

6    A.    I do.

7    Q.    And those folks deal specifically with

8  work-related conditions, is that right?

9    A.    As far as I know, yes.

10    Q.    And fair to say that's not what you do

11  on a day-to-day basis?

12    A.    That's correct.

13    Q.    And you're a treating doctor and a

14  surgeon, right?

15    A.    Yes.

16    Q.    And you don't routinely examine

17  workers to determine whether or not their work

18  caused or contributed to a problem they're having,

19  right?

20    A.    That's correct.

21    Q.    And you'd agree with me, sir, that it

22  would be important, if you were making a work-

23  related opinion, to have some sound basis of what

24  the actual work was, would you agree with that?

**Andrew P. Lehman, M.D.**
**December 15, 2008**

Page 27

1      A.    That is correct.

2      Q.    **And would you agree you don't have a**

3  **firm, factual foundation of Mr. Crowther's actual**

4  **job duties --**

5      A.    No.

6      Q.    **-- and exposure?**

7            MR. JOYCE:  Objection.

8            THE WITNESS:  I think it says pretty

9      clearly what he does here, and it seems like

10     it's pretty heavy work.  I think I have a

11     fair judgment of what he's doing.

12     Q.    **(By Mr. Hall)  Okay.  And would you**

13  **agree that the description of any causality, with**

14  **regard to any specific work duties, is not**

15  **contained in your report?**

16     A.    Well, I mentioned that he's done a lot

17  of heavy lifting and repetitive strenuous motion.

18     Q.    **And can you define that for me, in**

19  **terms of Mr. Crowther's actual work history?**

20     A.    I'm sorry.  I don't understand the

21  question.

22     Q.    **Well, you know, what vibratory stress**

23  **or what heavy lifting or repetitive strenuous**

24  **motions did he have to do with regard to his**

**CATUOGNO COURT REPORTING & STEN-TEL TRANSCRIPTION**
Springfield, MA  Worcester, MA  Boston, MA  Lawrence, MA  Providence, MA

4a2ae25d-d8ea-4abe-ae57-b1dcb5257fa0

**Andrew P. Lehman, M.D.**
**December 15, 2008**

1    A.    I have no reason to doubt it.

2    Q.    Do you have any sound scientific data

3    upon which to rely upon?

4    A.    No.

5    Q.    Have you ever seen an ergonomic

6    assessment of the type of work that Mr. Crowther

7    did?

8    A.    No.

9    Q.    And would you agree with me that you

10   don't have a scientific basis for those

11   conclusions?

12         MR. JOYCE:  Objection.

13         THE WITNESS:  I think if --

14   Q.    (By Mr. Hall)  You were given those

15   conclusions by a lawyer, right?

16   A.    Yes.

17   Q.    And that's not scientific, correct?

18         MR. JOYCE:  Objection.

19         THE WITNESS:  Aren't you a lawyer?

20         MR. HALL:  Yes, I'm a lawyer, so --

21   Q.    (By Mr. Hall)  But you'd agree with me

22   that you were given information by a lawyer?

23   A.    I was given information.  And I take

24   information, as given to me, as truth, so --

**CATUOGNO COURT REPORTING & STEN-TEL TRANSCRIPTION**
**Springfield, MA   Worcester, MA   Boston, MA   Lawrence, MA   Providence, MA**

4a2ae25d-d8ea-4abe-ae57-b1dcb5257fa0

**Andrew P. Lehman, M.D.**
**December 15, 2008**

Page 42

1         in the development of his osteoarthritis.

2              THE WITNESS:  No.  I mentioned it in

3         two different places, I believe.

4         Q.     (By Mr. Hall)  Okay.  **You said that it**

5    **made him more symptomatic?**

6         A.     Yes.  We treated his symptoms of knee

7    replacement.

8         Q.     OKay.  And --

9         A.     We didn't treat his x-rays.  We

10   treated his symptoms.

11        Q.     Okay.  And I --

12        A.     If he didn't have symptoms, I wouldn't

13   have had to operate on him.

14        Q.     **But in terms of causing the disease**

15   **that produced the symptoms, you did not link work**

16   **to the cause --**

17              **(Multiple speakers.)**

18              THE WITNESS:  Can you repeat that

19        again, please?

20              MR. HALL:  Sure.

21        Q.     (By Mr. Hall)  **You said that his job**

22   **duties may have made him more symptomatic, right?**

23        A.     Yes.

24        Q.     **And you did not say that his work**

**CATUOGNO COURT REPORTING & STEN-TEL TRANSCRIPTION**
**Springfield, MA   Worcester, MA   Boston, MA   Lawrence, MA   Providence, MA**

4a2ae25d-d8ea-4abe-ae57-b1dcb5257fa0

Andrew P. Lehman, M.D.
December 15, 2008

1    produced the underlying disease, is that correct?

2    I mean, that's what your report states.

3        A.    That's correct, other than the ACL

4    injury --

5        Q.    In 1986.

6        A.    -- in 1986, which, from my

7    understanding, was also a work-related injury.

8        Q.    Okay.  That was a trauma that occurred

9    at work?

10       A.    I believe that also caused the

11   arthritis in his left knee, in addition to the

12   cartilage procedures he had in the early '70s,

13   which are not work-related.  I think he would have

14   developed arthritis, irrespective of his job, with

15   the aforementioned operations on his knees.

16       Q.    Okay.

17       A.    However, I do not know if he would

18   have become symptomatic from his arthritis, had it

19   not been for his job.  It's impossible to say.

20       Q.    And so you can't say, within a

21   reasonable degree of medical certainty, either

22   way?

23            MR. JOYCE:  Objection.

24            THE WITNESS:  Either way what?

4a2ae25d-d8ea-4abe-ae57-b1dcb5257fa0

Andrew P. Lehman, M.D.
December 15, 2008

Page 51

1    improvement.  I expect him to continue doing well

2    for a number of years.

3         Q.    And do you know of any valid studies

4    that have been done, that associate Mr. Crowther's

5    work duties with the development of degenerative

6    joint disease in the knees?

7         A.    Say that again, please.

8         Q.    Are you aware of any valid scientific

9    studies that associate the type of work duties

10   that Mr. Crowther did with the development of

11   degenerative joint disease?

12        A.    No.

13        Q.    Are you aware of any valid studies

14   that -- or any scientific literature -- that

15   indicates that there are any specific,

16   scientifically-accepted measures that are

17   preventative for degenerative joint disease of the

18   knees?

19        A.    Could you please repeat that again?

20        Q.    Sure.  Is there anything in the

21   scientific literature that shows that a specific

22   change can be made to a job process that would

23   prevent the development of degenerative joint

24   disease in a person like Mr. Crowther?

**CATUOGNO COURT REPORTING & STEN-TEL TRANSCRIPTION**
Springfield, MA   Worcester, MA   Boston, MA   Lawrence, MA   Providence, MA

4a2ae25d-d8ea-4abe-ae57-b1dcb5257fa0

**Andrew P. Lehman, M.D.**
**December 15, 2008**

1     A.    There is no such study that I'm aware

2    of.  But there may be instances -- no, there's no

3    such study that I'm aware of.

4    **Q.    Okay.  And so you don't have an**

5    **opinion that the Railroad could have done some**

6    **specific change that would have resulted in him**

7    **not having degenerative joint disease in his knee;**

8    **would you agree?**

9    MR. JOYCE:  Objection.  That's not Dr.

10    Lehman's role in this case.  He's not our

11    liability expert.  He's not our ergonomic

12    expert.

13    THE WITNESS:  I think job

14    modifications may have alleviated symptoms

15    related to his osteoarthritis, but not

16    necessarily changed his -- the fact that he

17    had osteoarthritis.

18    **Q.    (By Mr. Hall)  So you're unaware of**

19    **any specific scientific literature that indicates**

20    **a specific change to be made to his job that would**

21    **prevent him to have symptoms, is that correct?**

22    A.    I don't think a scientific study could

23    ever be done in that regard.

24    **Q.    Are you aware of any specific changes**

**CATUOGNO COURT REPORTING & STEN-TEL TRANSCRIPTION**
**Springfield, MA   Worcester, MA   Boston, MA   Lawrence, MA   Providence, MA**

4a2ae25d-d8ea-4abe-ae57-b1dcb5257fa0

**Andrew P. Lehman, M.D.**
**December 15, 2008**

Page 53

1   that could have been done to Mr. Crowther's job

2   that would have changed the outcome with regard to

3   his knees?

4        A.    I think if he was more sedentary, he

5   would have less symptoms.

6        Q.    **Other than that, that's it?**

7        A.    Right.

8        Q.    **And it's impossible to prevent**

9   **degenerative joint disease in the knees, correct?**

10            MR. JOYCE:  Objection.

11        Q.    **(By Mr. Hall)  Is there any way to**

12   **prevent it?**

13        A.    Just sitting on a couch for your

14   entire life, you'd never develop it.

15        Q.    **Okay.**

16        A.    It's a matter of wear and tear.  The

17   more wear, the more tear.

18        Q.    **And did you take into consideration**

19   **Mr. Crowther's avocational activities?**

20        A.    No.  Do you mean activities outside of

21   work?

22        Q.    **Yes.**

23        A.    No.

24        Q.    **And activities of daily living are all**

**CATUOGNO COURT REPORTING & STEN-TEL TRANSCRIPTION**
**Springfield, MA   Worcester, MA  Boston, MA  Lawrence, MA  Providence, MA**

4a2ae25d-d8ea-4abe-ae57-b1dcb5257fa0

Andrew P. Lehman, M.D.
December 15, 2008

1      A.    Yes.

2      Q.    And other than what has been provided

3   by you, in terms of the letter from Mr. Joyce,

4   it's my understanding you've not reviewed any of

5   the case materials; depositions --

6      A.    Such as --

7      Q.    -- Mr. Crowther's deposition --

8      A.    No, I have not.

9      Q.    -- or any of the discovery that's been

10  exchanged between the parties?

11     A.    No, I did not.

12     Q.    And you didn't review his railroad

13  medical file, did you?

14     A.    No, I did not.

15     Q.    Or any of the medical records from Dr.

16  Baustin or any of his other physicians?

17     A.    No.  I did request it.

18     Q.    And, I'm sorry, who did you make that

19  request to?

20     A.    I think my secretary made the request

21  either to Mr. Crowther or to Attorney Joyce for

22  the records related to his ACL injury, as well as

23  his original sports injuries back in the early

24  1970s.

4a2ae25d-d8ea-4abe-ae57-b1dcb5257fa0

**Andrew P. Lehman, M.D.**
**December 15, 2008**

Page 64

1    gathered from your opinion is that, in your

2    opinion, Geoff's job as a track laborer and

3    foreman aggravated and worsened his pre-existing

4    osteoarthritis, is that correct?

5         A.    That's correct.

6         Q.    You're not here telling us that his

7    job as a trackman caused the osteoarthritis,

8    correct?

9         A.    That's correct.

10        Q.    And in your opinion, is Geoff disabled

11   from working as a trackman, based upon what you --

12   your understanding of what he does at the

13   Railroad?

14        A.    If his description of his job is

15   accurate, then yes.

16        MR. JOYCE:  Okay.  That's all the

17   questions I have.

18        MR. HALL:  You have the ability to

19   read the transcript and make any corrections

20   that might be necessary.

21        THE WITNESS:  Okay.

22        MR. HALL:  Or you can waive that

23   right and basically believe that the court

24   reporter has accurately taken down what

**CATUOGNO COURT REPORTING & STEN-TEL TRANSCRIPTION**
**Springfield, MA   Worcester, MA   Boston, MA   Lawrence, MA   Providence, MA**

4a2ae25d-d8ea-4abe-ae57-b1dcb5257fa0