UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
SPRINGFIELD DIVISION

| | |
|---|---|
| GEOFFREY CROWTHER,<br>        Plaintiff,<br>    v.<br><br>CSX TRANSPORATION, INC. and<br>CONSOLIDATED RAIL CORP,<br>        Defendant<br><br>AND<br><br>GEOFFREY CROWTHER,<br>        Plaintiff,<br>    v.<br><br>CSX TRANSPORTATION, INC. | 3:09-cv-10334-MAP<br><br><br><br><br><br><br><br><br>3:09-cv-11467-MAP |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE TO PRECLUDE PLAINTIFF'S EXPERT STEVEN M. WENNER, M.D. FROM OFFERING ANY TESTIMONY AT TRIAL**

Defendants CSX Transportation, Inc. ("CSXT") and Consolidated Rail Corporation ("Conrail") (hereinafter referred to collectively as "Defendants"), hereby submit the following Memorandum of Law in support of their Motion in Limine to Preclude Steven M. Wenner, M.D. from testifying at trial. In support thereof, Defendants aver as follows:

1.      Plaintiff's expert, Steven M. Wenner, M.D. ("Dr. Wenner"), is not qualified as an expert under Rule 702;

2.      Plaintiff has failed to show that Dr. Wenner has any reliable scientific or medical evidence to establish the necessary causal link between the Defendants' alleged negligence and his left thumb arthritis; and

1

2.	Dr. Wenner cannot, and did not, give his opinions to a reasonable degree of medical certainty.

Accordingly, this Court should preclude Plaintiff from offering Dr. Wenner as an expert witness on causation.

## I.	FACTUAL BACKGROUND:

Defendants will not reiterate the facts of this case in their entirety here, instead Defendants hereby incorporate by this reference their Omnibus Statement of Facts in Support of Defendants' Motions in Limine and exhibits attached thereto. Briefly, Plaintiff disclosed Dr. Wenner as a medical causation expert. Dr. Wenner provided a written report dated November 11, 2008, as well as an addendum report on November 30, 2008. In his written report, Dr. Wenner opined "[w]ith respect to the questions whether [Plaintiff's] left thumb arthritis is a result of what he does at work, I cannot state whether it is or isn't." See Dr. Wenner's written report dated November 11, 2008 at 3, a copy of which is attached as Exhibit A. In his addendum report, Dr. Wenner opined, "[Plaintiff] aggravated the arthritis of the metacarpophalangeal joint of his left thumb in using it for work-related duties." See Dr. Wenner's addendum report dated November 30, 2008, a copy of which is attached as Exhibit B.

At his deposition, Dr. Wenner admitted that he has no connection whatsoever to the railroad industry. (See Dep. of Steven M. Wenner, M.D., at 10, relevant portions of which are attached as part of Exhibit C.) Dr. Wenner testified that his knowledge of Plaintiff's job duties was limited to a basic understanding that Plaintiff worked for the railroad repairing and laying track. (Id. at 18.) Dr. Wenner did not recall receiving and/or reviewing a written description of Plaintiff's job duties nor did he acknowledge speaking with Plaintiff about his job duties. (Id. at 25.) Dr. Wenner further admitted: (1) he never observed the type of work Plaintiff performed;

(2) he never viewed a video of the type of work Plaintiff performed; and (3) he never observed an ergonomic assessment of the work Plaintiff performed. (Id. at 20.)

More importantly, Dr. Wenner is admittedly not qualified to offer a medical causation opinion in this case. Dr. Wenner testified that, although this subspecialty exists in his field, he is not an occupational medicine doctor. (Id. at 24.) He did not perform his own scientific analysis of the exposure, if any, Plaintiff had on his job nor did he analyze Plaintiff's work verses rest periods. (Id. at 20.) In fact, Dr. Wenner was forced to admit that he has no knowledge whatsoever of how much time, if any, in any given shift, Plaintiff used his hands, the way in which he held and/or manipulated tools, how long he used tools, or the amount of time he rested between each use. (Id.) Dr. Wenner never conducted any research or authored any articles related to repetitive stress injuries, and certainly none related to railroad work. (Id. at 8.)

In addition, Dr. Wenner admitted that, in reaching the opinions expressed in his reports, he did not rely on any specific literature nor is he aware of a leading article on point. (Id. at 17.) Dr. Wenner testified that he is not aware of any scientific literature that has shown that the type of work Plaintiff engaged in caused or contributed to his left thumb arthritis. (Id. at 41.) Similarly, Dr. Wenner is not aware of any objective scientific evidence that Plaintiff's disease process was actually worsened as a result of his job duties. (Id. at 45.)

Most importantly, Dr. Wenner's written reports, and deposition testimony for that matter, are entirely devoid of any opinion reached "to a reasonable degree of medical certainty." In fact, Dr. Wenner outright admits that he cannot state "to a reasonable degree of medical certainty" that Plaintiff's job duties caused his left thumb arthritis. (Id. at 13.) Indeed, the following exchange occurred at Dr. Wenner's deposition:

Q.  Basically, my understanding is that you don't have an opinion, within a reasonable degree of medical certainty, as to whether or not [Plaintiff's] job duties caused his left thumb arthritis, is that correct?

A.  I can't say for sure.

Q.  And you can't say within a reasonable degree of medical certainty, correct?

A.  Yes.

(Id.) Dr. Wenner has not testified "to a reasonable degree of medical certainty" that Plaintiff's job duties aggravated his left thumb arthritis. Instead, Dr. Wenner's addendum report merely states, without any basis or support, "[h]e aggravated the arthritis of the metacarpophalangeal joint of his left thumb in using it for his work related duties." Ex. B.

Consequently, Dr. Wenner cannot, and did not, opine to a reasonable degree of medical certainty that Plaintiff's job duties caused and/or aggravated his left thumb arthritis. More importantly, although Plaintiff disclosed Dr. Wenner as a medical causation expert, Dr. Wenner has not provided the requisite medical causation testimony linking the development of Plaintiff's left thumb arthritis to any negligent failure of Defendants to provide a reasonably safe workplace. Instead, to the extent Dr. Wenner expressed any opinion at all on causation, he focused entirely on the physical activities that Plaintiff encountered in the everyday, routine performance of his job functions and the routine operation of the equipment he used. (Ex. C at 48-49.)

## II.    DISCUSSION OF LAW:

**A.    This Court Should Preclude Dr. Wenner from Testifying as an Expert Witness**

Expert testimony is only admissible when the testimony is reliable and would assist the trier of fact to understand the evidence or determine a fact at issue in a case. See Fed. R. Evid. Rule 702; Daubert v. Merrell Dow Pharm., 509 U.S. 579, 589-91 (1993). The proponent of the

expert bears the burden of demonstrating that the expert's testimony satisfies the Daubert standard.  Fed. R. Evid. Rule 702 advisory committee's note (2000 Amends.); cf. Bourjaily v. United States, 483 U.S. 171, 175-76 (1987) (holding that the proponent of hearsay evidence must prove to the court, by a preponderance of the evidence, that the Rules of Evidence have been satisfied).

In Daubert, the Supreme Court held that when faced with the proffer of expert testimony under Rule 702, the trial judge, pursuant to Rule 104(a), must make a preliminary assessment of whether the testimony's underlying reasoning or methodology is scientifically or technically valid and can properly be applied to the facts at issue.  Daubert, 509 U.S. at 592-93.  The Supreme Court noted that the court must consider the following when determining whether an expert's opinion(s) meets the minimum standards of reliability:

(1) Whether the theory or technique in question can be (and has been) tested;
(2) Whether the theory or technique has been subjected to peer review and publication;
(3) The known potential rate of error and the existence and maintenance of standards controlling the techniques, operation; and
(4) General acceptance by the relevant scientific community.

Id. at 591-95.

Federal courts have noted that the more subjective and controversial the expert's inquiry, the more likely the testimony should be excluded as unreliable.  O'Conner v. Commw. Edison Co., 13 F.3d 1090, 1106 (7th Cir. 1994) (holding Rule 702 requires more than subjective belief or speculation); United States v. Santiago, 156 F. Supp. 145, 147 (D. P.R. 2001) (stating purpose of Daubert inquire is to rule out subjective belief or speculation); Best v. Lowe's Home Ctrs., Inc., 2008 U.S. Dist. LEXIS 45175, at *20 (E. D. Tenn., June 4, 2008) (holding that if expert's methodology cannot be explained in objective terms then methodology is presumptively unreliable).  An expert's opinion cannot be based solely on the weight of his own authority.  See

Gen. Elec. v. Joiner, 522 U.S. 136, 146 (1997). "[N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." Id. "The expert 'must explain precisely how [he has] followed the scientific method, as it is practiced by (at least) a recognized minority of scientists in [his] field." Lust v. Merrell Dow Pharm., 89 F.3d. 594, 597 (9th Cir. 1996) citing Daubert v. Merrell Dow Pharm., 43 F.3d 1311, 1318-19 (9th Cir. 1995).

### 1.  Dr. Wenner Is Not Qualified to Offer A Medical Causation Opinion in This Case

Dr. Wenner is not qualified to provide causation testimony because he lacks the training and experience necessary to link Plaintiff's work activities with his degenerative disc disease. Under Daubert, the trial judge must determine whether a proffered expert is qualified to testify and whether his testimony is scientifically reliable. 509 U.S. at 592-593. As noted by the Seventh Circuit:

> [W]e have no doubt that an expert's qualifications bear upon the scientific validity of his testimony. In United States v. Benson, 941 F.2d 598 (7th Cir. 1991), we stated, "An expert's opinion is helpful only to the extent the expert draws on some special skill, knowledge, or experience to formulate that opinion; the opinion must be an expert opinion (that is, an opinion informed by the witness's expertise) rather than simply an opinion broached by a purported expert." Id. at 604. Because an expert's qualifications bear upon whether he can offer special knowledge to the jury, the Daubert framework permits – indeed, encourages – a district judge to consider the qualifications of a witness. Cf. Braun v. Lorillard Corp., 84 F.3d 230, 234-35 (7th Cir. 1996).

United States v. Vitek Supply Corp., 144 F.3d 476, 486 (7th Cir. 1998)

By his own admission, Dr. Wenner is not qualified to offer an expert opinion in this case because he has no training whatsoever in analyzing work place exposure to risk factors for repetitive stress injuries, let alone railroad work place exposure, to determine whether Plaintiff's arthritic conditions were actually caused and/or aggravated by his work place activities. (Ex. C

6

at 24.) Indeed, Dr. Wenner is a medical doctor specifically tasked with diagnosing medical conditions. In making a diagnosis, whether in Plaintiff's case or another, Dr. Wenner is not concerned with also diagnosing the cause of the condition. In addition, Dr. Wenner did not review any literature regarding repetitive stress injuries, cumulative trauma disorders or causes of degenerative disc disease. (Id. at 20, 41.) Most importantly, Dr. Wenner never conducted any research or authored any articles related to repetitive stress injuries, and certainly none related to railroad work. (Id. at 8.) The Court should, therefore, preclude Dr. Wenner from offering any expert testimony because he is not qualified to opine on medical causation under the circumstances of this case.

### 2. Dr. Wenner's Opinions Are Not Based on "Sufficient Facts or Data"

Here, Dr. Wenner's opinions do not pass muster under the tests set forth in Rule 702, Daubert, or its progeny. As noted, *supra*, at his deposition, Dr. Wenner testified that he has no connection whatsoever to the railroad industry. (Id. at 10.) Dr. Wenner testified that his knowledge of Plaintiff's job duties was limited to a basic understanding that Plaintiff worked for the railroad repairing and laying track. (Id. at 18.) Dr. Wenner did not recall receiving and/or reviewing a written description of Plaintiff's job duties nor did he acknowledge speaking with Plaintiff about his job duties. (Id. at 25.) Dr. Wenner did, however, testify that over the course of his thirty-four (34) year career, he has treated approximately six railroad workers, and admitted that his knowledge of Plaintiff's job duties derived, at least in part, from those individuals' description of their work.

Moreover, Dr. Wenner conceded that, in reaching the opinions expressed in his written reports, he did not rely on any specific literature nor is he aware of a leading article on point. (Id. at 17.) Dr. Wenner clearly based his opinions on insufficient facts and data. Unfortunately

for Plaintiff, Dr. Wenner's lack of knowledge and unsound bases is exactly what Rule 702 was designed to protect litigants from.

### 3. Dr. Wenner's Expert Opinion Is Not Based on Reliable Scientific Methodology

There is absolutely no evidence that Dr. Wenner's opinions are based on reliable scientific methodology. In fact, Dr. Wenner himself indirectly admits that his opinion is nothing more than a bald conclusion with absolutely no basis in science. As noted, *supra*, Dr. Wenner admitted that in reaching the opinions expressed in his report: (1) he never observed the type of work Plaintiff performed; (2) he never viewed a video of the type of work Plaintiff performed; and (3) he never observed an ergonomic assessment of the work Plaintiff performed. (Id. at 20.) He also conceded that he did not perform his own scientific analysis of the exposure, if any, Plaintiff had on his job nor did he analyze Plaintiff's work verses rest periods. (Id.) In fact, Dr. Wenner was forced to admit that he has no knowledge whatsoever of how much time, if any, in any given shift, Plaintiff used his hands, the way in which he held and/or manipulated tools, how long he used tools, or the amount of time he rested between each use. (Id.)

Moreover, Dr. Wenner testified that he is not aware of any scientific literature that has shown that the type of work Plaintiff engaged in caused or contributed to his left thumb arthritis. (Id. at 41.) Similarly, Dr. Wenner is not aware of any objective scientific evidence that Plaintiff's disease process was actually worsened as a result of his job duties. (Id. at 45.) Dr. Wenner has clearly failed to apply any reliable principles or methods to his analysis of this case. Thus, his opinions are based entirely on the mere weight of his own opinion. This is obviously not permitted under Rule 702 and the corresponding case law mentioned, *supra*. Accordingly, this Court should not permit Dr. Wenner to testify as an expert.

### 4. Dr. Wenner's Opinion Is Inadmissible Because He Applies The Incorrect Standard

Finally, Dr. Wenner's opinion is inadmissible because he applies the improper standard of causation and provides the jury with no basis on which to determine that Plaintiff's railroad work is causally related to his left thumb arthritis. When presenting medical causation testimony, the "opinion must be stated within a reasonable degree of medical certainty or probability." Gonzalez v. United States, No. 05-00269, 2010 U.S. Dist. LEXIS 110215, *22 (E.D. Ari. 2010). In fact, many jurisdictions require that the phrase "reasonable degree of medical certainty" be incorporated into the testimony. See, e.g., Bone v. Ames Taping Tool Sys., Inc., 179 F.3d 1080, 1082 n.1 (8th Cir. 1999) (noting Missouri requires medical causation opinion to be expressed in terms of reasonable degree of certainty); Kannankeril v. Terminix Int'l, Inc., 128 F.3d 802, 806 n.5 (3d Cir. 1997) (same for New Jersey); In re Paoli R.R. Yard PCB Litigation, 35 F.3d 717, 750 (3d Cir. 1984) (same for Pennsylvania); O'Banion v. Owens-Corning Fiberglass Corp., 968 F.2d 1011, 1013 (10th Cir. 1992) (agreeing with other courts that medical opinions should be given to medical degree of certainty); Askey v. Occidental Chem. Corp., 102 A.D.2d 130, 137 (N.Y. 1984) (same for New York). At the very least, a medical expert should base his opinion on the substantive equivalent of "reasonable degree of certainty." Guam v. Reyes, 879 F.2d 646, 649 (9th Cir. 1989).

This Court should preclude Dr. Wenner from testifying at trial because he did not opine to a reasonable degree of medical certainty nor its substantive equivalent. Not only does Dr. Wenner fail to mention the phrase "reasonable degree of medical certainty," but he altogether omitts any conviction of opinion and simply states that "[h]e aggravated the arthritis of the metacarpophalangeal joint of his left thumb in using it for his work related duties." Ex. B. Although strict reliance on a phrase may be unnecessary, Dr. Wenner's failure to opine to a

reasonable degree of medical certainty is troublesome because, as discussed above, his opinion lacks any factual or scientific support. Therefore, Wenner's opinion is not based, either in form or in substance, on a reasonable degree of medical certainty. Accordingly, the Court should preclude Dr. Wenner from proffering any medical causation testimony.

**5.  Dr. Wenner Offers No Opinion Whatsoever Regarding Defendants' Negligence and The Alleged Causal Link Between Defendants' Negligence and Plaintiff's Left Thumb Arthritis**

To the extent this Court finds Dr. Wenner qualified to render an opinion in this case and that the foundation of his opinions pass muster under Daubert, Defendants contend that Dr. Wenner should be excluded on the grounds that his opinions are based entirely on the physical activities that Plaintiff encountered in the everyday, routine performance of his job functions as a trackman, and the routine operation of the equipment that he used, and not on any negligence of Defendants. It is not enough in an occupational exposure case for a plaintiff to prove that his normal and routine work activities caused his conditions. A plaintiff must instead demonstrate that his conditions were caused by some increased repetition, force, posture, or other exposure, over and above that normally experienced in the workplace, and that these atypical exposures were further caused by the defendant's negligence. Interestingly, Dr. Wenner testified that Defendants could not have changed anything about Plaintiff's working conditions so as to prevent Plaintiff from developing his alleged conditions. Indeed, the following exchange took place at Dr. Wenner's deposition:

> Q. Are you aware of any scientific literature that shows that there are specific changes that could be done to the type of work that Mr. Crowther did, that would prevent him from developing the type of problems he had in his left thumb?
>
> A. I'm not.

> Q. [Y]ou've not seen any objective scientific change in the arthritis that was contained in his left thumb as a result of his job, is that right . . . ?
>
> A. I think that's correct.
>
> Q. And in terms of his job duty, was there anything in particular . . . causing a problem in terms of his symptoms or aggravation as you've stated?
>
> A. Well, the nature of gripping large heavy objects is you have to wrap your thumb around it . . . and his arthritic metacarpal phalangeal joint, will make contact with any large handle.
>
> Q. Are there any specific changes that the Railroad could have made in his job, that could have prevented him from having an aggravation . . . ?
>
> A. I guess not having him used those tools.

(Ex. C at 41-42, 45, 48-49.) Accordingly, this Court should preclude Dr. Wenner from offering any medical causation testimony at trial.

### III.   CONCLUSION:

Based on the above-stated reasons, this Honorable Court should preclude Steven M. Wenner, M.D., from testifying as an expert at trial, and GRANT Defendants' Motion.

### IV.   REQUEST FOR ORAL ARGUMENT:

In accordance with Local Rule 7.1(D), Defendants believe that oral argument may assist the Court and wishes to be heard. Defendants, therefore, request that the Court schedule a hearing on the instant Motion.

        Respectfully submitted,
        Defendants, CSX Transportation, Inc., and
        Consolidated Rail Corporation,
        By their attorneys,


        /s/ Heather M. Gamache_____
        Michael B. Flynn, Esq., BBO# 559023
        mbflynn@flynnwirkus.com
        Lori A. Wirkus, Esq., BBO # 635525
        lawirkus@flynnwirkus.com
        Heather M. Gamache, BBO# 671898
        hgamache@flynnwirkus.com
        Flynn & Wirkus, P.C.
        400 Crown Colony Drive, Suite 200
        Quincy, MA 02169
        (617) 773-5500

DATED: November 8, 2010
G:\F & A\CASE FILES\CSX OCCUPATIONAL\Worn\Crowther - WORN - 61-123\Trial\Motions in Limine\MIL to Preclude Wenner\MOL re MIL to Preclude Wenner

## **CERTIFICATE OF SERVICE**

    I, Heather M. Gamache, attorney for Defendants CSXT and Conrail hereby certify that I have served true and correct copies of the foregoing upon all counsel of record electronically via *CM/ECF* this 8th day of November, 2010.

/s/ Heather M. Gamache\_\_\_\_  
Heather M. Gamache, Esq.
