UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
SPRINGFIELD DIVISION

| | |
|---|---|
| GEOFFREY CROWTHER,<br>        Plaintiff,<br><br>v.<br><br>CSX TRANSPORATION, INC. and<br>CONSOLIDATED RAIL CORP,<br>        Defendant<br><br>AND<br><br>GEOFFREY CROWTHER,<br>        Plaintiff,<br><br>v.<br><br>CSX TRANSPORATION, INC. | 3:09-cv-10334-MAP<br><br><br><br><br><br><br><br>3:09-cv-11467-MAP |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE
TO PRECLUDE PLAINTIFF'S ERGONOMIC EXPERT, MICHAEL D. SHINNICK,
Ed.D., FROM OFFERING ANY TESTIMONY AT TRIAL**

Defendants CSX Transportation, Inc. ("CSXT") and Consolidated Rail Corporation ("Conrail") (hereinafter referred to collectively as "Defendants"), hereby submit the following Motion in Limine to Preclude Plaintiff's Ergonomic Expert, Michael D. Shinnick, Ed.D., from Offering any Testimony at Trial.  In support thereof, Defendants aver as follows:

1.      Plaintiff's expert, Michael D. Shinnick, Ed.D., is not qualified as an expert under Rule 702 because he is not an ergonomist or an occupational medicine doctor; and

2.      Plaintiff has failed to show that Dr. Shinnick has any reliable scientific evidence to establish the necessary causal link between the Defendants' alleged negligence and his degenerative arthritic conditions.

## I.   <u>FACTUAL BACKGROUND</u>:

Defendants will not reiterate the facts of this case in their entirety here, instead Defendants hereby incorporate by this reference their Omnibus Statement of Facts in Support of Defendants' Motions in Limine and exhibits attached thereto.   Briefly, in support of his claims, Plaintiff submitted the report of Michael Shinnick, dated November 28, 2008, to offer the opinion that Defendants' failed to implement an adequate ergonomics program which exposed Plaintiff to risk factors associated with work-related repetitive stress injuries.   <u>See</u> Dr. Shinnick's report, a copy of which is attached as Exhibit A.

Despite the fact that Plaintiff intends to offer Dr. Shinnick as his only liability expert to provide an opinion regarding ergonomics, Dr. Shinnick does not have a degree in ergonomics, engineering or biomechanics.   Instead, Dr. Shinnick obtained his bachelor's degree in Hotel Management, his master's degree in Rehabilitation Counseling and Psychology, and his doctorate in Rehabilitation and Special Education (specializing in service systems for individuals with severe physical handicaps).   In fact, Dr. Shinnick apparently did not even take any coursework during his entire academic career related to ergonomics or railroad work.   In addition, Dr. Shinnick is not a certified professional ergonomist.   <u>See</u> Dr. Shinnick's curriculum vitae, a copy of which is attached as Exhibit B.

More importantly, Dr. Shinnick does not have a medical degree and is not, therefore, an occupational medicine doctor or an epidemiologist.   Ex. B.   Dr. Shinnick is neither qualified nor capable of making a medical diagnosis or causation determination in this case.   At best, Dr. Shinnick may have participated in the publication of peer reviewed articles relating to ergonomics, however, none of these articles relate to railroad employment or the types of repetitive stress injuries Plaintiff allegedly suffers from in this case.

In his report, Dr. Shinnick opined that Defendants did not provide an ergonomically safe work environment because they: (1) did not perform any systematic work task analysis of Plaintiff's job; (2) did not implement any hazard prevention and control measures for Plaintiff's job to reduce his exposure to risk factors for development of work-related musculoskeletal stress disorders ("WMSD"); (3) failed to implement medical management programs to identify and monitor at-risk workers; and (4) did not train or educate Plaintiff regarding the risk factors for WMSDs. Id. at 16.

According to Dr. Shinnick, he used the standard accepted ergonomic methodology consisting of work task analysis, assessment of hazard reduction, assessment of medical surveillance, and assessment of education and training to reach his opinions regarding this case. In reaching his opinions, Dr. Shinnick purportedly relied, at least in part, on a telephonic interview with Plaintiff on November 24, 2008, merely four days prior to drafting his report, and prior inspections of undisclosed job sites.[1]  Dr. Shinnick admittedly did not perform a site inspection and, in fact, indicated "there is no need for a site inspection" in this case.  Id. at 9. Instead, as stated, he relied on past site inspections, but did not reference any photographs, videotape, or other data regarding these prior site inspections.

Moreover, as noted above, although Plaintiff alleges he was exposed to risk factors due to excessive reaching, stretching bending, twisting, squatting, kneeling, climbing, lifting, operation of equipment, use of hand tools, working in awkward positions, working in poor ground conditions, and/or walking in improper and poorly maintained ballast, Dr. Shinnick did not:

- Quantify or measure Plaintiff's exposure to bending;

---

[1] Dr. Shinnick did not even indicate whether the sites he inspected were CSXT and/or Conrail job sites.  These "prior inspections" could very well have been of other railroads.  Moreover, Defendants have no idea whether these "prior inspections" are related in any way to Plaintiff's work conditions and/or job duties, the time period during which the inspections were conducted, or the actual location of any inspection.

- Quantify or measure Plaintiff's exposure to reaching;

- Quantify or measure Plaintiff's exposure to stretching;

- Quantify or measure Plaintiff's exposure to climbing;

- Quantify or measure Plaintiff's exposure to twisting;

- Quantify or measure Plaintiff's exposure to lifting;

- Quantify or measure Plaintiff's exposure to repetitive tasks;

- Quantify or measure Plaintiff's exposure to kneeling;

- Quantify or measure Plaintiff's exposure to squatting;

- Quantify or measure Plaintiff's exposure to operation of equipment;

- Quantify or measure Plaintiff's exposure to use of hand tools;

- Quantify or measure Plaintiff's exposure to working in awkward positions;

- Quantify or measure Plaintiff's exposure to working in poor ground conditions;

- Quantify or measure Plaintiff's exposure to walking on improper and poorly maintained ballast;

- Quantify or measure Plaintiff's exposure to vibration or, force; or

- Quantify or measure the amount of break time or rest periods Plaintiff had in between job activities.

In fact, Dr. Shinnick provides no information whatsoever regarding the above-mentioned risk factors.  Dr. Shinnick merely summarized Plaintiff's self-serving description of his work history, then summarized what railroads purportedly knew or should have known about ergonomics as early as 1989, and then baldly concluded that Defendants failed to provide Plaintiff with a safe place to work.  Dr. Shinnick failed to show a critical piece of information, that is, how, if at all,

4

Plaintiff's job duties exposed him to ergonomic risk factors of developing arthritis of his knees, neck, left elbow and left thumb.  Thus, Dr. Shinnick has not shown a causal link between Plaintiff's job duties and the development of his bilateral knee, neck, left thumb or left elbow arthritis.  Dr. Shinnick's baseless conclusion that Defendants failed to implement an adequate ergonomics program alone is insufficient to establish a causal link between Plaintiff's job duties and his arthritis.

Moreover, Dr. Shinnick apparently relied exclusively on Plaintiff's own self-serving deposition testimony, and/or the brief description of his work history which was provided during the one and only conversation Dr. Shinnick ever had with Plaintiff on November 24, 2008.  Dr. Shinnick did not attempt to verify any of this information through the use of objective measures.  Furthermore, as noted *supra*, Dr. Shinnick did not set forth how, if at all, Plaintiff's job duties exposed him to ergonomic risk factors for the neck, knees, left elbow or left thumb.

Finally, on pages 10 through 12 of his report, Dr. Shinnick sites a handful of irrelevant articles by various authors, which apparently support his conclusions.  Specifically, Dr. Shinnick summarizes articles published by the Occupational Safety and Health Administration ("OSHA"), the National Institute for Occupational Safety and Health ("NIOSH"), and the Association of American Railroads ("AAR"), apparently in support of his opinion that Plaintiff was exposed to risk factors for developing arthritis of his knees, neck, left thumb and left elbow as a result of Defendants' negligence.  Ex. A.  Interestingly, however, a thorough review of these articles revealed that the degenerative condition which is the subject of this action, that is, arthritis, is not identified as a WMSD in the articles referenced by Dr. Shinnick.  Instead, the articles uniformly agree that WMSDs are most-commonly tendonitis and tenosynovitis, which effect nerves, tendons, tendon sheaths, and muscles – not joints.  Thus, this Court should not consider any of

the articles cited in Dr. Shinnick's report as evidence of support of his conclusions or methodology.

## II.   DISCUSSION OF LAW:

**A.    This Court Should Preclude Dr. Shinnick from Testifying as an Expert Witness**

Expert testimony is only admissible when the testimony is reliable and would assist the trier of fact to understand the evidence or determine a fact at issue in a case. See Fed. R. Evid. Rule 702; Daubert v. Merrell Dow Pharm., 509 U.S. 579, 589-91 (1993).  The proponent of the expert bears the burden of demonstrating that the expert's testimony satisfies the Daubert standard.  Fed. R. Evid. Rule 702 advisory committee's note (2000 Amends.); cf. Bourjaily v. United States, 483 U.S. 171, 175-76 (1987) (holding that the proponent of hearsay evidence must prove to the court, by a preponderance of the evidence, that the Rules of Evidence have been satisfied).

In Daubert, the Supreme Court held that when faced with the proffer of expert testimony under Rule 702, the trial judge, pursuant to Rule 104(a), must make a preliminary assessment of whether the testimony's underlying reasoning or methodology is scientifically or technically valid and can properly be applied to the facts at issue.  Daubert, 509 U.S. at 592-93.  The Supreme Court noted that the court must consider the following when determining whether an expert's opinion(s) meets the minimum standards of reliability:

(1)   Whether the theory or technique in question can be (and has been) tested;
(2)   Whether the theory or technique has been subjected to peer review and publication;
(3)   The known potential rate of error and the existence and maintenance of standards controlling the techniques, operation; and
(4)   General acceptance by the relevant scientific community.

Id. at 591-95.

Federal courts have noted that the more subjective and controversial the expert's inquiry, the more likely the testimony should be excluded as unreliable.  O'Conner v. Commw. Edison Co., 13 F.3d 1090, 1106 (7th Cir. 1994) (holding Rule 702 requires more than subjective belief or speculation); United States v. Santiago, 156 F. Supp. 145, 147 (D. P.R. 2001) (stating purpose of Daubert inquire is to rule out subjective belief or speculation); Best v. Lowe's Home Ctrs., Inc., 2008 U.S. Dist. LEXIS 45175, at *20 (E. D. Tenn., June 4, 2008) (holding that if expert's methodology cannot be explained in objective terms then methodology is presumptively unreliable).  An expert's opinion cannot be based solely on the weight of his own authority.  See Gen. Elec. v. Joiner, 522 U.S. 136, 146 (1997).  "[N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert."  Id.  "The expert 'must explain precisely how [he has] followed the scientific method, as it is practiced by (at least) a recognized minority of scientists in [his] field."  Lust v. Merrell Dow Pharm., 89 F.3d 594, 597 (9th Cir. 1996) citing Daubert v. Merrell Dow Pharm., 43 F.3d 1311, 1318-19 (9th Cir. 1995).

**1.      Dr. Shinnick Is Not Qualified to Offer Any Ergonomics Opinions at Trial**

Dr. Shinnick is not qualified by knowledge, skill, experience, training or education to proffer an opinion regarding whether Defendants provided Plaintiff with an ergonomically safe work environment and, therefore, the Court should preclude him from doing so at trial.  It is well-settled that the trial court must determine whether a proffered expert is "qualified by knowledge, skill, experience, training, or education."  Mitchell v. U.S., 141 F.3d 8, 15 (1st Cir. 1998) (internal citation omitted); see also Ed Peters Jewelry Co., Inc. v. C & J Jewelry Co., Inc., 124 F.3d 252, 259 (1st Cir. 1997) (quoting Bogosian v. Mercedes Benz of N. Am., Inc., 104 F.3d

472, 476 (1st Cir. 1997)). A district court enjoys substantial discretion to decide whether to exclude expert testimony. <u>Mitchell</u>, 141 U.S. at 15.

It is absolutely indisputable that Dr. Shinnick does not have the requisite knowledge, skill, experience, training, or education to proffer an opinion regarding ergonomics. Dr. Shinnick is not a certified professional ergonomist. He does <u>not</u> have a degree in ergonomics, engineering or biomechanics. In fact, Dr. Shinnick apparently did not even take any coursework during his entire academic career that relates to ergonomics or biomechanical engineering. Instead, Dr. Shinnick obtained his bachelor's degree in Hotel Management, his master's degree in Rehabilitation Counseling and Psychology, and his doctorate in Rehabilitation and Special Education (specializing in service systems for individuals with severe physical handicaps). Similarly, Dr. Shinnick also does not have a medical degree, and, therefore, is not an occupational medicine doctor or an epidemiologist. As such, Dr. Shinnick does not have an educational background that is sufficient to support the conclusion that he has specialized knowledge on the topic of ergonomics or work-place injuries nor does he have any specialized knowledge relating to railroad work.

Dr. Shinnick is apparently relying solely on his experience in the field of ergonomics to attain expert status. Although "experience in a field may offer another path to expert status . . . if the witness is relying solely or primarily on experience, then the witness must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." <u>U.S. v. Frazier</u>, 387 F.3d 1244, 1260-61 (11th Cir. 2004) (citing Fed. R. Evid. Rule 702 advisory committee's note (2000 amends.)) (emphasis omitted). Dr. Shinnick has not done so in this case.

As the basis for this Court finding Dr. Shinnick qualified to testify here, Plaintiff will likely argue that Dr. Shinnick has testified in numerous railroad cases. Although Dr. Shinnick has testified about vocational rehabilitation in a variety of cases, vocational rehabilitation is not related to the field of ergonomics and in no way renders Dr. Shinnick qualified to testify here. Moreover, Defendants urge this Court to closely examine Dr. Shinnick's credentials as he clearly fits the definition of a professional witness. Dr. Shinnick earns a substantial income from his testimonial activities. Dr. Shinnick almost exclusively testifies for FELA plaintiffs and is well-known to the plaintiffs' bar. Most importantly, Dr. Shinnick has added little to the field of ergonomics and has not published any articles in the area of railroad work. Dr. Shinnick may have participated in the publication of peer reviewed articles relating to ergonomics, but <u>none</u> of these articles relate to railroad employment or the types of repetitive stresses claimed by Plaintiff in this case. As such, this Court should be wary of accepting Dr. Shinnick as an expert simply because he says his experience <u>as a hired gun expert</u> qualifies him to render an opinion in this case. In short, Defendants assert that Dr. Shinnick is not qualified to give any ergonomics opinions and respectfully request that this Court preclude him from testifying at trial.

**2.      Dr. Shinnick's Opinions are Not Based on Sufficient "Facts or Data"**

Even if this Court finds Dr. Shinnick qualified to offer an expert opinion in this case, which Defendants vehemently oppose, Dr. Shinnick's opinions are wholly based on speculation and conjecture. Dr. Shinnick has written that a <u>detailed assessment</u> of a worker's job tasks is paramount. <u>See</u> Shinnick, M. D. and Lanphear, M. J., <u>An Expert's Analysis of Daubert</u>, a copy of which is attached as Exhibit C. In the matter at bar, however, Dr. Shinnick did not visit Plaintiff's work site to investigate Plaintiff's particular claims of exposure and/or injury. In fact, Plaintiff never even requested a site inspection in this case. Instead, Dr. Shinnick spoke to

Plaintiff once over the telephone four days prior to disclosing his report.  Moreover, contrary to Dr. Shinnick's opinion that a <u>detailed assessment</u> is paramount, Dr. Shinnick concluded that "there is no need for a site inspection in the Crowther case."  Ex. A at 9; Ex. C.  Dr. Shinnick admitted that his opinions are based entirely on prior site inspections.  <u>Id.</u>  Dr. Shinnick did not even attempt to establish, however, that these "prior inspections" are representative of Plaintiff's work history nor did he suggest that they were of CSXT and/or Conrail work locations.  Dr. Shinnick has absolutely no "facts or data," specific to this case, on which to base his opinions. He has admittedly relied exclusively on a single telephone conversation with Plaintiff and undisclosed and unidentified "prior inspections."

### 3. Dr. Shinnick's Expert Opinion Is Not Based on Reliable Scientific Methodology

According to Dr. Shinnick himself, to meet the <u>Daubert</u> standard, "the expert must carefully assess each case individually, with appropriate testing to provide an objective basis upon which to base conclusions.  The expert must also use a generally accepted methodology that is sound and valid."  Ex. C.  Here, Dr. Shinnick admittedly did not follow the methodology he proclaims is widely recognized by ergonomic authorities.

Dr. Shinnick has written the following about work site analysis:

> <u>An ergonomic expert's analysis must almost always begin with a visit to the injured employee's work site.</u> . . . <u>A detailed evaluation of the performance of the employee's work tasks and the tools/equipment utilized by the employee is paramount.</u>  I have visited numerous railway yards throughout the country and observed railroad workers performing their work tasks for the purpose of examining their exposure to the risk factors for cumulative trauma disorders.  <u>When I cannot visit the worksite personally, I will rely on the injured employee's statements of what his work duties were, pictures, charts and diagrams of the work site, videotapes of the work processes and inspection of those tools and equipment which can be furnished to me.</u>

10

> <u>The tools and equipment used by the employee must be weighed and measured along with the force and postures needed to operate them.</u>  The quantification of such weights and forces helps assure reliability.  Job analyzes [sic] should also be consulted which may be available regarding the physical requirements of a particular job or task.

(Ex. C at 2).

First, as noted *supra*, Dr. Shinnick did not perform a site inspection in this case nor did he request one.  Instead, contrary to his opinion that analysis must begin with a visit to the work site, Dr. Shinnick opined that a site inspection was unnecessary in this case.  In addition, Dr. Shinnick did not visually inspect any tools/equipment Plaintiff used and the manner in which Plaintiff used them.  Rather, he admittedly relied on prior inspections and measurements.

Second, Dr. Shinnick clearly did not perform a "*detailed evaluation* of the performance of [Plaintiff's] work tasks."  Ex. C. (emphasis added).  Although Dr. Shinnick spoke to Plaintiff once prior to disclosing his report, it is entirely unclear whether Dr. Shinnick relied exclusively, or even in part, on that conversation when determining what Plaintiff's work duties were.  In fact, Plaintiff's work history as set forth in Dr. Shinnick's report, mirrors Plaintiff's deposition testimony.  Dr. Shinnick also did not state the exact source of estimated "frequencies" of job tasks he reviews on pages four (4) through eight (8) of his report.  More importantly, he did not review or rely upon any pictures, charts, diagrams, or videotapes of any work processes because none of that information is mentioned in his report and no such information has been exchanged during discovery.  Thus, there is absolutely no evidence whatsoever that Dr. Shinnick conducted any studies or investigations to determine the relationship, if any, between Plaintiff's job duties and his degenerative conditions.

Finally, Dr. Shinnick has also fallen well-short of performing a "detailed evaluation" because he did not:

- Quantify or measure Plaintiff's exposure to bending;

- Quantify or measure Plaintiff's exposure to reaching;

- Quantify or measure Plaintiff's exposure to stretching;

- Quantify or measure Plaintiff's exposure to climbing;

- Quantify or measure Plaintiff's exposure to twisting;

- Quantify or measure Plaintiff's exposure to lifting;

- Quantify or measure Plaintiff's exposure to repetitive tasks;

- Quantify or measure Plaintiff's exposure to kneeling;

- Quantify or measure Plaintiff's exposure to squatting;

- Quantify or measure Plaintiff's exposure to operation of equipment;

- Quantify or measure Plaintiff's exposure to use of hand tools;

- Quantify or measure Plaintiff's exposure to working in awkward positions;

- Quantify or measure Plaintiff's exposure to working in poor ground conditions;

- Quantify or measure Plaintiff's exposure to walking on improper and poorly maintained ballast;

- Quantify or measure Plaintiff's exposure to vibration or, force; or

- Quantify or measure the amount of break time or rest periods Plaintiff had in between job activities.

In short, Dr. Shinnick has not provided a detailed scientific evaluation of Plaintiff's work tasks in violation of his own self-described methodology, and more importantly, the methodology

apparently recognized by ergonomic authorities, including no.  Instead, Dr. Shinnick apparently relied entirely on an injured employee's self-serving testimony and "prior inspections."

In addition, in his article on expert testimony, Dr. Shinnick actually advises that experts should use <u>appropriate</u> <u>testing</u> to provide a <u>solid</u> <u>objective</u> basis upon which to base conclusions. Ex. C.  Dr. Shinnick further suggests that an expert should carefully assess <u>each case</u> <u>individually</u> by utilizing a <u>personalized method of assessment</u>.  In fact, Dr. Shinnick states in his article that:

> [u]sing a personalized method of assessment and the ergonomic methodology outlined above, testimony regarding exposure risk factors for musculoskeletal disorders and the vocational implications of a worker's limitations can generally withstand *Daubert* challenges.  <u>Carefully assessing each case individually, with appropriate testing to provide an objective basis upon which to base conclusions, in conjunction with an accepted methodology will result in reliable testimony that meets the *Daubert* test of assisting the trier of fact to understand the evidence or to determine a fact in issue.</u>

Ex. C at 3.

It is clear that Dr. Shinnick does not practice what he preaches.  Dr. Shinnick has not used a single objective fact to reach his opinions in this case.  In fact, Dr. Shinnick does not reference any testing specific to this case and/or Plaintiff's work assessment.  It is indisputable that Dr. Shinnick lazily and haphazardly relied on prior work assessments and tests, if any, to reach his opinions.  As noted supra, Dr. Shinnick did not even rely on any chart, diagrams or photographs specific to Plaintiff's negligence claims against Defendants.

Finally, on pages 10 through 12 of his report, Dr. Shinnick summarizes articles published by OSHA, NIOSH, the AAR.  Dr. Shinnick relies heavily on these articles and the alleged premise that Plaintiff was exposed to risk factors for developing arthritis of his knees, neck, left thumb and left elbow as a result of Defendants' negligence.  Ex. A.  Interestingly, however, not one of the articles cited on pages 10 through 12, conclude, or even suggest, that arthritis is a

WMSD.  Instead, the articles uniformly agree that WMSDs are most-commonly tendonitis and tenosynovitis, which effect nerves, tendons, tendon sheaths, and muscles – not joints.  For example, Dr. Shinnick relies on Ergonomics: The Study of Work, published by OSHA, for forming the basis of his opinion that work related "risk factors' can cause WMSDs.  Yet, in Ergonomics: The Study of Work, OSHA clearly and unequivocally states that arthritis is not caused by work related exposures to these alleged risk factors.  More specifically, OSHA concludes, in a section titled "Can non-work related factors case WSDs[,]" that, "[y]es.  Risk factors not related to your job can cause or contribute to MSDs.  These factors include . . . medical conditions, such as obesity, diabetes, and **arthritis**[.]"  See OSHA, Ergonomics: The Study of Work, 1991, rev'd 2000, a copy of which is attached as Exhibit C.

Moreover, Dr. Shinnick also apparently intends to rely on Preventing Repetitive Motion Injuries, Working Smart With Your Hand And Arm, which lists "repetitive motion injuries" as including tendinitis, rotator cuff injury, tenosynovitis, carpal tunnel syndrome, epicondylitis, and white finger.  See Preventing Repetitive Motion Injuries, Working Smart With Your Hand And Arm, 1989 (author unknown), a copy of which his attached as Exhibit D.  Interestingly, the article is entirely devoid of any reference whatsoever to arthritis or, as Dr. Shinnick apparently concludes, the link between arthritis and "repetitive motion injuries."

### 4.      Recent Case Law Strongly Supports Precluding Dr. Shinnick as An Expert

The case law set forth below clearly demonstrates that Dr. Shinnick's method in this case does not comport with scientific methodology and is inadmissible.  As noted above, Dr. Shinnick has not:  (1) performed any scientific tests, (2) reported any relevant observations, (3) measured or objectively documented the relevant risk factors for injury, or (4) relied upon any valid epidemiological studies regarding railroad work and injury.

It is indisputable that Dr. Shinnick has been excluded in federal court in several FELA cases because of his errors in methodology.   In <u>Stasior v. National Railroad Passenger Corporation d/b/a Amtrak</u>, 19 F. Supp. 2d 835, 845 (N.D. Ill 1998), Dr. Shinnick offered similar conclusions to the case at hand.  In that case, Dr. Shinnick testified that the risk factors for carpal tunnel syndrome were present at the Plaintiff's place of employment and that the railroad should have known about these risk factors.  However, the court in <u>Stasior</u> flatly rejected Dr. Shinnick's testimony as it was not subjected to any scientific method.  <u>Id.</u> at 852.

In sum, the <u>Stasior</u> court rejected Dr. Shinnick's testimony because: (1) he failed to perform any scientific tests or compare the data he collected to scientific or epidemiological studies conducted by other ergonomists; (<u>Id.</u> at 852); (2) he failed to observe the workstation Plaintiff used (<u>Id.</u>); (3) he failed to measure the awkward posture and repetition which are allegedly present at Plaintiff's work station in order to extrapolate what the conditions were like (<u>Id.</u>); (4) he failed to cite any specific epidemiological or scientific studies in support of his conclusion; (<u>Id.</u> at 853); and (5) he failed to cite to any studies from 1991 or before showing that the degree of posture, repetition and force at Plaintiff's workplace was ergonomically unsafe. (<u>Id.</u>)

Since <u>Stasior</u>, Dr. Shinnick has been excluded in at least four other federal court cases on similar, if not the same, grounds. <u>See</u> <u>Hall v. Norfolk & Western Railway Company</u>, No. 98-1661, 1999 U.S. App. LEXIS 7595, (4th Cir. April 20, 1999); <u>Myers v. Amtrak</u>, 648 F. Supp. 2d 1032 (N.D. Ill. 2009) (holding that Dr. Shinnick's opinions lacked the necessary link between the conclusions he reached and a recognized underlying scientific method); <u>Arrington v. National Railroad Passenger Corp.</u>, No. 06-2278, (Doc. 41) (N.D. Ill. 2008) (holding that Dr. Shinnick's opinions were unreliable in that he offered little more than a bottom line opinion, that is, he

opined that the railroad could have made the workplace safer, but never established that the workplace was inherently unsafe); and McCarty v. Canadian Nat'l., No. 3:06cv00177, 2008 U.S. Dist. LEXIS 14860 (S.D. Miss. Feb. 27, 2008) (holding that Dr. Shinnick: (1) failed to quantify the amount of pressure or repetition necessary to cause Plaintiff's alleged injury; (2) failed to perform any studies or investigations as to plaintiff's method of performing his job; and (3) failed to cite any studies that scientifically demonstrate that plaintiff's working conditions were associated with his alleged injury).

The above-mentioned cases are relevant to the matter at bar.  As noted, *supra*, Dr. Shinnick never conducted a site inspection, never evaluated Plaintiff's method of performing his job, never inspected the tools Plaintiff used, never conducted any studies or investigations to determine the relationship, if any, between Plaintiff's job duties and his degenerative conditions, and most importantly, never quantified or measured the amount of repetition necessary to cause and/or contribute to Plaintiff's degenerative conditions.

Moreover, other courts have excluded the testimony of proffered experts where the expert failed to fully assess the extent of the plaintiff's exposure to risk factors for musculoskeletal injuries.  For example, in Magdaleno v. Burlington Northern R.R. Co., 5 F.Supp.2d 899 (D. Col. 1998), the court excluded the testimony of plaintiff's proffered ergonomic expert, where the expert never obtained measurements of Magdaleno's body; other than weighing tools, failed to measure the duration, joint deviation, posture, cycles of vibration or force exertion necessary to operate specific tools; failed to measure the temperature of the repair facility; failed to monitor the recover time permitted Burlington Northern employees after their use of a specific tool; and failed to consider non-occupational factors, such as medical histories and non-work activities.

In <u>Dukes v. Illinois Central R.R. Co.</u>, 934 F.Supp. 939 (N.D. Ill. 1996), the plaintiff's proffered expert's conclusions were derived from an interview and examination of the plaintiff, review of the plaintiff's medical records, and a review of depositions and pleadings.  The plaintiff's expert, Dr. Engelhard, did not conduct any independent investigation.  Additionally, Dr. Engelhard failed to present any evidence as to the amount of pressure or repetition necessary to cause the plaintiff's injuries.  The court noted that "Dr. Engelhard has not performed any studies or investigations as to the plaintiff's method of carrying the signal lights, or as to what reduction in the length of time or number of repetitions of carrying signal lights would be needed to insure that the plaintiff did not develop [carpal tunnel syndrome]."  <u>Id.</u> at 948.

In concluding that Dr. Engelhard's testimony was inadmissible, the court stated "Dr. Engelhard is unable to meet the *Daubert* requirements because he has no factual or scientific basis or empirical data to support his opinions, but rather his conclusions are based merely on his own subjective observations."  <u>Id.</u> at 949.  Moreover, the Court found that Dr. Englehard "<u>prepared his testimony specifically for this litigation, and his conclusions are mainly based on the Plaintiff's own description of his work</u>."  <u>Id.</u> at 952 (emphasis added).

In <u>Pretter v. Metro North Commuter R.R. Co.</u>, 206 F.Supp.2d 601 (S.D.N.Y. 2002), the Court also excluded an ergonomist's opinions that the Metro North Railroad was negligent for exposing its employees to ergonomic risk factors, not performing job evaluations, not implementing engineering or administrative controls, not providing adequate training, not implementing a medical management program and not providing an Ergonomics Program.  The Court stated as follows:

> Precisely because they purport to be matters of "scientific certainty," all but the first of these opinions are deficient on their face.  Whether, for example, Metro North "should have known" by the mid-1980's that its employees were being "exposed to

> ergonomic risk factors" (opinion "2") or whether Metro North was
> "negligent" for "not performing worksite and job evaluations for
> ergonomic risk factors" (the first of the two opinions numbered
> "3") are, by their very nature, matters not reducible to scientific
> certainty and any attempt to pretend otherwise is calculated to
> confuse and mislead the jury. This is not to say that scientific
> information might not be relevant to some of the issues addressed
> in these opinions (although not necessarily in areas of Dr. Andres'
> expertise); but neither Dr. Andres nor his clients so limit his
> opinions, but rather proffer that the opinions as a whole are held
> "to a reasonable degree of scientific certainty" when, in fact, they
> are mostly not matters of science at all.

Id. at 603. [2]

Even more recently, an ergonomist's conclusion regarding what a railroad should have

done in the way of medical management and ergonomics were once again excluded from use at

trial in the State of Indiana. Wilcox v. CSX Transportation, 2007 WL 156708 (N.D. Ind.)(Slip

Copy). In Wilcox, which involved a plaintiff alleging cumulative injuries to his feet, defendant

CSXT argued that the ergonomists' opinions were irrelevant, because there is no evidence

> that a lack of an 'appropriate medical management program' or a
> 'comprehensive ergonomic program' caused Plaintiff to develop
> plantar faciitis. Because there is no link between this alleged
> negligence and Plaintiff's plantar faciitis, his opinions are
> irrelevant and should be excluded.

Wilcox, at 14.

The court in Wilcox agreed with this argument and excluded the ergonomist's from

offering his opinions as follows:

> As to Andres' opinion that CSX was negligent due to its failure to
> have some sort of medical management program or ergonomic
> program in place for its employees, that opinion will not be
> admitted as evidence. As CSX points out, there is no evidence in
> the case that the lack of such a program proximately caused
> Wilcox's alleged injuries. Furthermore, Andres admitted in his

---

[2] The topics referenced in the Pretter case are substantially similar to the opinions that Dr. Shinnick has set forth in his report in this case.

> deposition that he could not say with any degree of certainty that having such a program in place would have prevented Wilcox's condition.  The real issue in this case…is whether CSX was negligent in any way…The issue is not whether CSX should have had a medical management program or ergonomic program in place.  Permitting Andres to offer his opinion on this issue could confuse a jury and possibly lead a jury to wrongfully conclude that the lack of such a program necessitates a finding of negligence against defendant…(emphasis added).

*Wilcox* at 15.[3]

Dr. Shinnick has made many of the same mistakes which resulted in the exclusion of other experts in the cases noted above.  Dr. Shinnick inappropriately relies upon information provided to him directly from Plaintiff (during a brief telephone interview) without conducting any independent analysis to confirm the information.  Dr. Shinnick says that he relied upon information gathered in other cases, but when "push comes to shove" he has not produced a single piece of scientific data.  Despite not relying on any objective evidence in this case, Dr. Shinnick has acknowledged in an article he authored that detailed, appropriate, case-specific testing is what is required to arrive at objective conclusions.

It is clear that coming to a firm conclusion first and then doing research to support it is the antithesis of the scientific method.  Claar v. Burlington Northern Railroad Co., 29 F.3d 499, 502-503 (9th Cir. 1994); Viterbo v. Dow Chemical Co., 646 F.Supp. 1420, 1425 (E.D. Tex. 1996), aff'd 826 F.2d 420 (5th Cir. 1987).  Furthermore, if an expert cannot "tie" his assessment of data to known scientific conclusions based on either research or studies, then there is no comparison for the jury to evaluate and the expert's testimony is not helpful to the jury.  Porter v. Whitehall Laboratories. Inc., 9 F.3d 607, 609 (7th Cir. 1993).

---

[3] The opinions regarding medical management and an ergonomic program, which were excluded in Wilcox, are almost identical to the opinions that Dr. Shinnick has arrived at in this case.

Moreover, as noted above, numerous other jurisdictions have precluded expert testimony in FELA cases where, as here, the proffered expert based his conclusions on little more than the plaintiff's own description of his job duties.  See, e.g., Staisor v. National R.R. Passenger Corp., 19 F.Supp.2d 835 (N.D. Ill. 1998); Magdaleno v. Burlington Northern R.R. Co., 5 F.Supp.2d 899 (D. Colo. 1998); Dukes v. Illinois Central R.R. Co., 934 F.Supp. 939 (N.D. Ill. 1996); Zarecki v. National R.R. Passenger Corp., 914 F. Supp. 1566 (N.D. Ill. 1996).

It is clear that Dr. Shinnick came to his conclusion but never did the necessary "research" to support his opinions.  Given Dr. Shinnick's admitted failure to base his opinions upon objectively measured evidence or any valid scientific literature, Defendants suggests that Dr. Shinnick's opinions are, at best, based on speculation and conjecture.  Accordingly, this Court should preclude Dr. Shinnick offering any testimony at trial.

### III.    CONCLUSION:

Based on the above-stated reasons, this Honorable Court should preclude Michael D. Shinnick, Ed.D., from testifying as an expert at trial, and GRANT Defendants' Motion.

### IV.    REQUEST FOR ORAL ARGUMENT:

In accordance with Local Rule 7.1(D), Defendants believe that oral argument may assist the Court and wishes to be heard.  Defendants, therefore, request that the Court schedule a hearing on the instant Motion.

Respectfully submitted,
Defendants, CSX Transportation, Inc., and
Consolidated Rail Corporation,
By their attorneys,


 /s/ Heather M. Gamache_____
Michael B. Flynn, Esq., BBO# 559023
mbflynn@flynnwirkus.com
Lori A. Wirkus, Esq., BBO # 635525
lawirkus@flynnwirkus.com
Heather M. Gamache, BBO# 671898
hgamache@flynnwirkus.com
Flynn & Wirkus, P.C.
400 Crown Colony Drive, Suite 200
Quincy, MA 02169
(617) 773-5500

DATED: November 8, 2010

G:\F & A\CASE FILES\CSX OCCUPATIONAL\Worn\Crowther - WORN - 61-123\Trial\Motions in Limine\MIL to Preclude Shinnick\MOL re MIL to prec Shinnick

## <u>CERTIFICATE OF SERVICE</u>

I, Heather M. Gamache, attorney for Defendants CSXT and Conrail hereby certify that I have served true and correct copies of the foregoing upon all counsel of record electronically via *CM/ECF* this 8th day of November, 2010.

<u>/s/ Heather M. Gamache</u>
Heather M. Gamache, Esq.
