UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
SPRINGFIELD DIVISION

| | |
|---|---|
| GEOFFREY CROWTHER,<br>      Plaintiff,<br>      v.<br><br>CSX TRANSPORATION, INC. and<br>CONSOLIDATED RAIL CORP,<br>      Defendant<br><br>AND<br><br>GEOFFREY CROWTHER,<br>      Plaintiff,<br>      v.<br><br>CSX TRANSPORTATION, INC. | 3:09-cv-10334-MAP<br><br><br><br><br><br><br><br><br><br>3:09-cv-11467-MAP |

**<u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE
TO PRECLUDE PLAINTIFF FROM OFFERING EVIDENCE OF DAMAGES
RELATED TO HIS BILATERAL KNEE, NECK AND LEFT
THUMB CONDITIONS PAST JULY 2007</u>**

Defendants CSX Transportation, Inc. ("CSXT") and Consolidated Rail Corporation ("Conrail") submit this Memorandum of Law in support of their Motion in Limine to Preclude Plaintiff from Offering Evidence of Damages Relating to His Bilateral Knee, Thumb and Neck Conditions Past July 2007. As grounds for their Motion, Defendants state that:

1. Plaintiff completely recovered from the bilateral knee, thumb and neck conditions by July 2007;

2. Plaintiff admitted under oath that his physical condition was "up to speed" by July 2007;

3. Plaintiff failed to mitigate his damages by not seeking alternative employment and/or refusing to participate in CSXT's vocational rehabilitation program.

In further support of their Motion, Defendants state as follows:

## I.     FACTUAL BACKGROUND

In addition to the facts summarized below, Defendants refer to and specifically incorporate herein by this reference their Omnibus Statement of Facts in Support of Defendants' Motions in Limine and exhibits attached thereto.

Plaintiff had various surgeries during the first four months of 2007, including procedures to his neck, thumb and knees.  See Operative Report of Dr. Cowan dated Jan. 17, 2007, attached as Ex. A (discussing Plaintiff's January 17, 2007 cervical spine surgery); Office Note of Dr. Wenner dated Feb. 21, 2007, attached as Ex. B (providing treatment for February 14, 2007 thumb surgery); Office Note of Dr. Lehman dated Apr. 30, 2007, attached as Ex. C (discussing post-operative treatment of Plaintiff's April 17, 2007 bilateral knee arthroplasty).  Plaintiff last visited for his thumb on April 13, 2007, and his condition was noted as "solid."  See Office Note of Dr. Wenner dated Apr. 13, 2007, attached as Ex. D.  Plaintiff last visited for his neck on July 6, 2007, and reported doing "very well."  See Office Note of Dr. Cowan dated Jul. 6, 2007, attached as Ex. E.  With respect to follow-up knee visits, Plaintiff saw Dr. Lehman on July 17, 2007 and October 10, 2007, and reported being "very happy with the results" of surgery and stated that his knees are "perfect."  See Office Notes of Dr. Lehman dated July 17, 2007 and October 10, 2007, attached as Ex. F.  Thus, Plaintiff experienced no thumb issues as of April 13, 2007, and displayed no neck or knee problems past July of 2007.  Indeed, Plaintiff admitted in his deposition that he was physically "up to speed" as of July of 2007.  (See Pl.'s Dep. dated Jan. 22, 2010, relevant excerpts attached as Ex. G, at 27:13-28:1.)

Plaintiff's treating physicians agreed with Plaintiff's self-assessment that he had fully recovered from the three surgeries.  Plaintiff's knee surgeon testified that Plaintiff did

"extraordinarily well" in terms of his bilateral knee replacement. (See Dr. Lehman's Dep., relevant excerpts attached as Ex. G, at 33:6-9.) Dr. Lehman noted that Plaintiff is "essentially back to normal activities without restriction." See Dr. Lehman's Report dated Nov. 24, 2008, attached as Ex. H. According to Dr. Lehman's testimony, Plaintiff had recuperated so well that he could hold various types of jobs. (Ex. G at 48:4-49:1.)

Plaintiff reached the same, if not better, results with his neck. Plaintiff's neck surgeon, Dr. Cowan, testified that the surgery went well and that Plaintiff "didn't have persistent radicular findings, weakness or numbness." See Dr. Cowan's Dep., relevant excerpts attached as Ex. I, at 66:3-5.) According to Dr. Cowan, Plaintiff could have returned to light work within two weeks of the neck surgery and could have returned to medium duty within six weeks of the operation. (See Ex. I, at 64:16-65:10.) As of July 2007, Plaintiff's last neck visit, Dr. Cowan had no concerns about Plaintiff's prognosis. (Id. at 67:14-20.) In any event, Plaintiff's neck surgery results are moot for purposes of his claims because Dr. Cowan expressly stated at his deposition that "[t]he neck alone . . . would not keep him out of any and all work. It certainly would not render him totally disabled." (Id. at 61:15-20.)

Plaintiff's recovery from thumb surgery was even faster than the other two operations. His thumb surgeon, Dr. Wenner, testified that the procedure had "excellent results." (See Dr. Wenner's Dep., relevant excerpts attached as Ex. J, at 39:20-24.) After April 13, 2007, Plaintiff did not need any more follow-up visits regarding his thumb. (See Dr. Wenner's Expert Report dated Nov. 11, 2008, a copy of which is attached as Ex. K, at p. 2.) According to Dr. Wenner's testimony, the results and his prognosis were so encouraging that the thumb should not have kept Plaintiff from returning to his railroad work. (Ex. J at 40:1-23.)

Plaintiff's residual employment capacity is even more evident when considering the extent of his avocational activities. For instance, Plaintiff rides his bicycle at least a few days per week for approximately one to two hours per day. (Ex. G at 20:4-16.) Plaintiff snowshoes weekly, completing two hour loops. (Id. at 148:9-14, 151:1-16.) Plaintiff also swims four to five times per week, and admittedly has no problems whatsoever with his neck while doing so. (Id. at 146:8-24.) Plaintiff also walks, plays golf and performs other activities. (Id. at 145:16-18.)

Despite having a significant residual work capacity past July 2007, Plaintiff has failed to seek any alternative employment. (Ex. G at 187:17:23.) Plaintiff has never performed an online job search or looked at classified adds in the newspaper. (Id. at 197:3-18.) Plaintiff has not even attempted to return to the railroad, even in light duty capacity. (Id. at 188:1-4.) In fact, he did not explore the possibility of alternative jobs in any capacity. (Id. at 188:5-9). Plaintiff even refused to attend a vocational rehabilitation program sponsored by CSXT. (Id. at 189:22-194:17, 195:24-196:3.)

## II.     DISCUSSION OF LAW

### A.     Plaintiff Should Be Precluded from Offering Evidence of Damages Past July of 2007 Because He Had Fully Recovered from Bilateral Knee, Neck and Thumb Surgeries

The FELA holds railroads liable for workplace injuries "resulting in whole or in part from [their] negligence." 45 U.S.C. § 51. The Supreme Court has long held that the FELA is compensatory in nature and that a plaintiff may only recover for the amount of his actual damages. See Norfolk & W. Ry. v. Liepelt, 444 U.S. 490, 493-496 (1980); Michigan Cent. R.R. v. Vreeland, 227 U.S. 59, 68 (1913). The plaintiff bears the burden of proving the factual basis under which damages can be awarded, whether such damages are for lost earnings, medical

4

expenses or pain and suffering. Williams v. Missouri Pac. R.R., 11 F.3d 132, 135 (10th Cir. 1993).

Here, Plaintiff has no reasonable expectation of proving damages relating to his thumb, neck and knee conditions past July 2007. After his April 13, 2007 visit with Dr. Wenner, where the condition of his thumb was "solid," Plaintiff did not make any other follow-up appointments, presumably because he had no need to do so. Similarly, Plaintiff last visited Dr. Cowan for his neck on July 6, 2007 and was doing "very well." Again, Plaintiff did not have any other follow-up visits as they were unnecessary given his return to normal functional capacity. Lastly, Plaintiff visited with Dr. Lehman in July and October 2007, and was very happy with the results of the surgery. Indeed, he felt that his knees were "perfect."

More importantly, Plaintiff testified that he was physically "up to speed" by July 2007. In other words, Plaintiff's neck, thumb and knee ailments were no longer impairing him. Plaintiff should not be allowed to contradict his own deposition testimony and claim at trial that he is seeking damages for those ailments past July 2007. See Conlantuoni v. Alfred Calcagni & Sons, Inc., 44 F.3d 1, 4-5 (1st Cir. 1994); Ng. Bros. Constr., Inc. v. Cranney, 436 Mass. 638, 647-648 (2002).

Furthermore, all of Plaintiff's treating physicians concluded that he had fully-recovered from his three surgeries by July 2007. As discussed above, Dr. Wenner testified that the thumb surgery should not have kept Plaintiff from returning to the railroad. (Ex. J at 39:20-24, 40:1-23.) Similarly, by July 6, 2007, Dr. Cowan opined that his neck was doing well and that Plaintiff could perform various light and medium duty work. (Ex. I at 61:15-20, 64:16-65:10, 66:3-5, 67:14-20.) Lastly, Dr. Lehman testified that Plaintiff's knees could withstand the demands of

5

various job tasks as he had had an excellent recovery from his knee procedure. (Ex. G at 33:6-9, 48:4-49:1.)

If the physicians' testimony was not enough, Plaintiff's own conduct after his surgeries clearly demonstrate that he could perform a number of activities. At his deposition, Plaintiff admitted to snowshoeing, walking and riding his bicylce on an almost daily basis. Plaintiff can swim without any problems related to his neck surgery. Clearly, the arthritic conditions that Defendants allegedly caused have not handicapped Plaintiff's lifestyle. Therefore, the Court should allow the instant Motion and preclude Plaintiff from offering any evidence of damages relating to his thumb, neck and knee conditions past July of 2007 as he had fully recovered by then.

**B.     Plaintiff Should Be Precluded from Offering Any Evidence of Damages Past July of 2007 Because He Failed to Mitigate His Damages as Required Under the FELA**

Plaintiff has failed to mitigate his damages. Under the FELA, Plaintiff has a legal obligation to mitigate his damages, that is, to minimize the economic loss resulting from his injury by resuming gainful employment as soon as such can be reasonably done, if such is available. See Mikus v. Norfolk &W. Ry. Co., 312 Ill. App. 3d II, 28, 726 N.E.2d 95, 109 (2000) ("a plaintiff has a duty to mitigate damages and secure gainful employment within a reasonable time after plaintiff's injury."). If he does not do so, he may not recover damages for earnings lost after the date on which he was or reasonably could have been able to return to some gainful employment. See, e.g., Jones v. Consolidated Rail Corp., 800 F.2d 590 (6th Cir. 1986); Holley v. Missouri Specific R Seal, 867 S.W.2d 610 (Mo. Ct. App. 1993). Plaintiff's duty to mitigate includes but is not limited to further scholastic training, vocational or rehabilitation training, or any other preparation necessary to improve Plaintiff's earning ability in light of his

6

injury.  Baker v. Baltimore & Ohio R. Co., 502 F.2d 638 (6th Cir. 1974); Trejo v. Denver & R. G. R. Co., 568 F.2d 181 (10th Cir. 1977).

Here, Plaintiff failed to mitigate his damages because he did not seek any alternative employment despite possessing the physical capacity to work.  As discussed above, Plaintiff's treating physicians testified that Plaintiff can, at the very least, perform light-duty jobs.  However, Plaintiff never sought to return to the railroad on a light-duty basis.  Plaintiff outright refused CSXT's vocational rehabilitation program.  Perhaps preoccupied with his many hobbies, Plaintiff did not even explore, never mind inquire and apply for, other job opportunities.  Certainly, Defendants should not be held responsible for and required to fund Plaintiff's leisurely lifestyle when he can clearly perform a variety of jobs.  Plaintiff's complete refusal to seek alternative employment is a perfect illustration of a FELA plaintiff failing to mitigate his damages.  Accordingly, the Court should allow the instant motion and preclude Plaintiff from seeking any damages past July of 2007 as he has failed to mitigate his damages.

### III.   CONCLUSION

WHEREFORE, for all the above-stated reasons, Defendants' Motion should be **ALLOWED**.

### IV.   REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(D), Defendants respectfully state that oral argument may assist the Court and requests a hearing on its Motion in Limine.

8

          Respectfully submitted,
          CSX Transportation, Inc.,
          by its attorneys,


          _/s/  Heather M. Gamache_____
          Michael B. Flynn, BBO# 559023
          *mflynn@flynnwirkus.com*
          Heather M. Gamache, BBO# 671898
          *hgamache@flynnwirkus.com*
          FLYNN & WIRKUS, P.C.
          400 Crown Colony Drive, Suite 200
          P.O. Box 699242
          Quincy, MA 02269
          T: (617) 773-5500
Dated:  November 8, 2010          F: (617) 773-5510

G:\F & A\CASE FILES\CSX OCCUPATIONAL\Worn\Crowther - WORN - 61-123\Trial\Motions in Limine\MIL to Preclude Damages Past July 2007\MoL re MIL to Preclude Damages Past July 2007.doc

## **CERTIFICATE OF SERVICE**

     I, Heather M. Gamache, attorney for Defendants hereby certify that I have served true and correct copies of the foregoing Memorandum of Law upon all counsel of record electronically via *CM/ECF* this 8th day of November, 2010.

/s/ Heather M. Gamache\_\_\_\_
Heather M. Gamache, Esq.