IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

| | | |
|---|---|---|
| GEOFFREY CROWTHER | : | Civil Action No.  09-10334-MAP and |
| | : | 09-11467-MAP |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| CSX TRANSPORTATION, INC. | : | ORAL ARGUMENT REQUESTED |
| and | : | |
| CONSOLIDATED RAIL CORP. | : | |
| | : | |
| Defendants | : | |

---

PLAINTIFF'S RESPONSE AND MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANTS' MOTION IN LIMINE TO
PRECLUDE R. SCOTT COWAN, M.D.

COMES NOW the Plaintiff, Geoffrey Crowther, by and through his attorneys, Thomas J. Joyce, III, and Michael J. McDevitt, and hereby responds in Opposition to Defendants' Motion in Limine to Preclude R. Scott Cowan, M.D. (Document 63), as follows:

---

I.   INTRODUCTION:

This is an occupational injury action brought pursuant to an Act of Congress known as the Federal Employers' Liability Act (FELA), 45 U.S.C. Section 51, et seq.  Plaintiff, Geoffrey Crowther, claims occupational neck, bilateral knee, left elbow, and left thumb injuries, which were caused and/or contributed to and/or aggravated, worsened and exacerbated, in whole or in part, by exposure to occupational risk factors for cumulative-trauma injuries, including repetition, force, vibration and/or awkward postures, in his employment as a track laborer, track welder, track foreman, and track inspector (trackman) with Defendants, CSX Transportation, Inc. (CSX) and Consolidated Rail Corp. (Conrail).

Defendants have filed a Motion in Limine to Preclude R. Scott Cowan, M.D., arguing that there is allegedly no basis for his opinions with regard to the medical causation of his own patient's injuries which he treated. For the reasons stated herein, Defendants' Motion in Limine to Preclude R. Scott Cowan, M.D. should be denied.

II.   FACTS:

Plaintiff, Geoffrey Crowther, is presently age 59. Geoffrey Crowther worked as a track laborer, track welder, track foreman, and track inspector (trackman) for the railroad from 1975 through December 2006, when he became disabled (at age 55). As a trackman, Geoffrey Crowther's work tasks required an extreme amount of heavy repetitive work, utilizing certain track tools and equipment such as torches, electric and gas welding equipment, grinders, chipping guns, track chisels, sledge hammers, claw bars, spiking mauls, needle guns, air impact hammers and saws. He was also required to lift and carry heavy objects, and was exposed to excessive and harmful vibration. Geoffrey Crowther's job duties further required prolonged use of his arms in awkward and extended positions, and working in poor ground conditions and walking on improper and poorly maintained ballast. Many times he was required to perform his tasks without adequate tools and equipment and/or adequate manpower.

On January 27, 2006, Geoffrey Crowther consulted Dr. R. Scott Cowan of New England Orthopedic Surgeons, with complaints of left cervical radicular pain. A cervical MRI was performed on February 8, 2006, which revealed mild disc bulge, herniation and spur formation C3-4; mild disc herniation C4-5; mild disc bulge, herniation and prominent end plate degenerative spur formation C5-6; and, mild disc herniation and prominent end plate degenerative spur formation C6-7. Despite conservative treatment for his neck injuries, Geoffrey Crowther eventually underwent cervical anterior discectomy with microscopic decompression

and fusion with fibular allograft and plate fixation C5-C7 surgery, performed by Dr. Cowan on January 17, 2007.  The preoperative diagnosis and postoperative diagnosis from the operative report states "Disc herniation and neuroforaminal stenosis C5-C6, C6-C7, left".  (Please see Medical Records of New England Orthopedic Surgeons, attached as Exhibit 1).

Geoffrey Crowther has disclosed his treating physician and surgeon, R. Scott Cowan, M.D., as Plaintiff's medical expert with regard to his neck injuries in this matter.  Dr. Cowan is a highly qualified medical professional with expertise and knowledge as to orthopedic surgery who regularly treats patients with cervical injuries including cervical disc herniation, cervical stenosis and cervical degenerative disc disease.  (Please see CV of Dr. R. Scott Cowan, attached as Exhibit 2).  Dr. Cowan will be called to testify on behalf of Geoffrey Crowther as to the history, physical examinations, diagnostic tests, diagnosis, treatment, surgery, cause and disability of Plaintiff's cervical injuries.

On or about November 9, 2008, Dr. Cowan authored a narrative medical report regarding his patient, Geoffrey Crowther.  In his detailed narrative medical report, Dr. Cowan states, in pertinent part:

> His employment history was notable for work over the course of 31 years time from 1975 to 2006 as a track laborer for a railroad industry.  He worked doing heavy duty manual labor, welding, repairing railroad tracks, and was exposed thereby to a significant amount of repetitive strenuous motion, vibration, awkward postures, heavy lifting and loading of his axial spine.
> …
> It is my opinion, based on a reasonable degree of medical certainty, that Mr. Geoffrey Crowther sustained cumulative micro-trauma to his neck as a result of his strenuous labor on the railroad over the course of 30 years time from 1975 through 2006.  The lifting, stooping, bending, awkward postures and vibration all contributed to the progression of this degenerative disc condition and resultant herniations at the C5-6 and C6-7 levels, confirmed on the MRI scan of 2/08/06.  They, therefore, contributed to, as well, the cervical surgery, which Mr. Crowther underwent on January 17, 2007.

(Please see Medical Report of Dr. Cowan, attached as Exhibit 3).

On December 16, 2008, Dr. R. Scott Cowan was deposed by Defendants. Dr. Cowan testified in his discovery deposition, in pertinent part, as follows:

> Q. And how long have you been at this practice?
>
> A. Fourteen years.
>
> Q. And are you board certified?
>
> A. Yes.
>
> Q. And what's your board in?
>
> A. Orthopedic surgery.
>
> …
>
> Q. And have you had a past experience as an expert witness?
>
> A. Yes.
>
> Q. Can you tell me the type of cases that you've served in as an expert?
>
> A. Auto accident cases, medical malpractice cases, and Workers' Compensation cases.
>
> …
>
> Q. Have you ever been excluded or not permitted to give your full opinions in any court?
>
> A. No.

(Please see Deposition of Dr. R. Scott Cowan, attached as Exhibit 4, at page 6-8).

Dr. R. Scott Cowan further testified:

> Q. And sir, you'd agree that you're not an ergonomist; would you agree with that?
>
> A. I'd agree to that.
>
> …
>
> Q. And would you agree that you're a treating physician and that your day to day job is to treat patients and conduct surgeries?
>
> A. Correct.
>
> …

Q. And you don't hold yourself out as a specialist in the area of occupationally related injuries, is that true as well?

A. Well, I treat a lot of occupational injuries. I have a sizeable Workers' Comp. patient population, and so I'm asked my opinion on causality often. …

…

Q. Can you tell me what information, if any, you received about Mr. Crowther's job and his job duties at the railroad?

A. Mr. Crowther discussed with me his job duties as part of his intake history and physical examination.

Q. And what did he tell you?

A. Well, essentially what I wrote in my letter, which is that he was employed for thirty-one years as a track laborer; that he stated his duties were heavy manual labor, welding, repairing railroad tracks; and then described repetitive strenuous motion, vibration, awkward postures, heavy lifting and loading.

…

Q. What, if anything, did you do to confirm with Mr. Crowther that this was correct information that was contained in Mr. Joyce's letter?

A. Well, in the history obtained by Mr. Crowther, I, once again, was described what he did for work, which was important to my evaluation of his case and his condition. And to the extent that correlated with what doctor or - - I'm sorry - - with what Mr. Joyce said, I put it in a letter.

…

Q. … What were the specific job duties that you believe exposed him to repetitive strenuous motion or awkward postures or any of the other things that are listed in the second paragraph of your letter?

A. Well, I would think any type of track repair would be repetitive and strenuous.

…

Q. And you'd agree that in your letter, in your narrative report, that you've not suggested that there are any specific changes to Mr. Crowther's job that has been scientifically demonstrated or would otherwise be - - reasonably anticipated to be preventive of his neck issue?

MR. JOYCE: Objection. That's not the purpose of Dr. Cowan's participation in Mr. Crowther's case.

>    THE WITNESS: I don't understand the question.
>
>    MR. JOYCE: He's not our liability expert, Steve, and you know that. He's a medical doctor, treating physician, surgeon, expert medical witness. He's not a liability witness. We have a different liability witness to address that issue.
>
>    MR. HALL: Okay. Well, I'm just asking him if he has an opinion.
>
> Q. Would you agree that you've not given any opinions that there were any specific changes to Mr. Crowther's job that could have been done by the railroad that would have prevented his injury?
>
> A. Correct. I gave no such opinion.

(Please see Deposition of Dr. R. Scott Cowan, attached as Exhibit 4, at page 13-23).

>    Dr. R. Scott Cowan further testified:
>
> Q. And do you hold yourself out as an expert in the area of causes of degenerative diseases of the neck?
>
> A. Yes.
>
> Q. And what are the risk factors for the development of degenerative disc disease in the neck?
>
> A. Genetic predisposition or neck-strenuous manual labor.
> …
>
> Q. And can you tell me which of the risk factors you ruled out, if any?
>
> A. Deformity, trauma, genetics.
>
> Q. You didn't rule age out?
>
> A. No. He's at an age where, certainly, they're fairly predominant.
> …
>
> Q. And so we can agree that his age contributed at least in part to the development of his degenerative disc disease, is that correct?
>
> A. Yes.
> …
>
> Q. And is there any way to attribute whether or not his surgery was due to a function of age more than a function of his job?

        MR. JOYCE:  Objection.

        THE WITNESS:  Based on chronology of symptoms.

…

Q. And so based on the fact that he began to have neck pain, according to your file, in 2005, how is that significant?  I'm sorry.  Maybe I'm not picking it up.

A. Well, there comes a point in the patient's degenerative disc process where it becomes symptomatic.  And in this case, that was 2005.  The patient was fifty four years of age. He had been working on the railroad, at that point, for thirty odd years.  And can I differentiate exactly whether it was age-related or job related?  No.  But it was my opinion that it would be a combination of the two.

(Please see Deposition of Dr. R. Scott Cowan, attached as Exhibit 4, at page 23-26).

    Dr. R. Scott Cowan further testified:

Q. Okay.  As you sit here today, you don't have an opinion, within a reasonable degree of medical certainty, and under the pains and penalties of perjury, as set forth in your report, that his job actually increased the disease process in his neck?

        MR. JOYCE:  Objection.

        THE WITNESS:  I did not render an opinion there, correct.

Q. (By Mr. Hall)  And you don't have such an opinion within a reasonable degree of medical certainty and under the pains and penalties of perjury?

A. Presently?

Q. Yes.

A. I do think his job duties aggravated his underlying cervical degenerative disc disease, yes.

…

Q. And what's the basis for that opinion?  You've not seen his job.  I mean, what's the basis for that opinion?

A. I based that opinion, A, that he has a degenerative disc disease process going on based on MRIs that I was able to visualize; and, second, that, in my opinion, the work that he described were work duties that I considered to be aggravating to a cervical degenerative disc disease process.

(Please see Deposition of Dr. R. Scott Cowan, attached as Exhibit 4, at page 35-38).

    Dr. R. Scott Cowan further testified:

> Q. And going before March of 2006, do you have any evidence to determine whether or not his job actually aggravated or increased the disease process --
>
>     MR. JOYCE: Objection.
>
> Q. -- from 2002 until 2006?
>
>     MR. JOYCE: Objection.
>
>     THE WITNESS: Yes.
>
> Q. What objective evidence do you have?
>
> A. The development of the left arm symptoms.
>
> …
>
> Q. And there's no predisposing occupation for the development of degenerative disc disease in the neck, would you agree with that?
>
> A. No. I think certain people have a risk for developing cervical degenerative problems that result in more aggressive care. Certain occupations are predisposing.
>
> Q. And this being your first railroad case, does that involve any occupation at the railroad?
>
> A. Well, the activities described as Mr. Crowther's job duties, in my opinion, would put him at risk.

(Please see Deposition of Dr. R. Scott Cowan, attached as Exhibit 4, at page 57-60).

    Dr. R. Scott Cowan further testified:

> Q. (By Mr. Joyce) Dr. Cowan, in your opinion, was Geoff's job as a trackman at the railroad a contributing factor in the development of his degenerative disc disease in his neck?
>
> …
>
> A. Yes.
>
> …

> Q. In your opinion, Geoff is occupationally disabled form working as a trackman at the railroad as to his cervical condition?
>
> …
>
> A. Yes.

(Please see Deposition of Dr. R. Scott Cowan, attached as Exhibit 4, at page 74).

The National Institute for Occupational Safety and Health (NIOSH) / Centers for Disease Control (CDC), published *Musculoskeletal Disorders and Workplace Factors, A Critical Review of Epidemiologic Evidence for Work-Related Musculoskeletal Disorders of the Neck, Upper Extremity, and Low Back,* in July 1997.  Thus, the federal government, through NIOSH, as far back as 1997, determined what the occupational risk factors were for work related musculoskeletal disorders (WMSDs).

This Honorable Court should note that the parties took Dr. Cowan's videotape deposition on November 30, 2010, which is not yet available for inclusion in Plaintiff's Response in Opposition to Defendants' Motion in Limine as of this date of filing.   Plaintiff respectfully requests the opportunity to submit the *entire* videotape deposition testimony of Dr. Cowan to the Court for the Court's consideration before the Court makes a ruling on Defendants' Motion in Limine to Preclude R. Scott Cowan, M.D. when the transcript becomes available.

III. <u>ARGUMENT</u>:

This occupation injury action was brought pursuant to an Act of Congress known as the Federal Employers' Liability Act (FELA), 45 U.S.C. Sec. 51 et seq.  Specifically, the FELA states, in pertinent part:

> Every common carrier by railroad while engaging in commerce between any of the states and territories, or between the District of Columbia and any of the states or territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier, in such commerce, or in case of death of such employee, to his or her personal representative for the benefit of the surviving widow or husband and children of such employee; and, if

> none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency due to its negligence in its cars, engines, appliances, machinery, track, road bed, works, boats, wharves, or other equipment.
>
> Any employee of a carrier, any part of whose duties as such employee shall be in the furtherance of interstate commerce; or shall, in any way, directly or closely and substantially, affect such commerce as above set forth shall, for the purposes of this Act be considered as being employed by such carrier, in such commerce, and shall be considered as entitled to the benefits of this Act and of an Act entitled "An Act related to the liability of common carriers by railroad to their employees in certain cases". (App'd April 22, 1908) [45 U.S.C. Secs. 51 et seq.] as the same has been or may hereafter be amended (emphasis added).

45 U.S.C. Sec. 51.

The FELA was enacted by the United States Congress in 1908. Congress and the United States Supreme Court have, over the years, consistently stated the purpose of the FELA is to protect and benefit railroad employees injured on the job. The FELA is to be liberally construed to allow railroad employees, such as Geoffrey Crowther, injured in the scope of their employment to recover from the railroad even where the railroad's negligence is minimal. *Rodriguez v. Deloroy Connecting Railroad Company,* 473 F. 2d 819 (6th Cir. 1973).

This duty to provide a safe place to work was non-delegable and could not be passed on by the railroad to any person, firm or corporation. *Bailey v. Central Vermont Railway Company,* 319 U.S. 350 (1943). Not only is this duty to provide a safe place to work a non-delegable one, but it is also an affirmative one. This means that Defendants CSX and Conrail had a positive obligation to provide Geoffrey Crowther with a safe place to work, including finding any defect or hazard which would normally be revealed within the work place. *Williams v. Atlantic Coastline Railroad Company,* 190 F. 2d 744 (5th Cir. 1951).

It has long been accepted doctrine that "the question of evidence required to establish liability in an FELA case is much less than an ordinary negligence action." *Harbin v. Burlington Northern Railroad Company,* 921 F. 2d 129 (7th Cir. 1990).  In *Hines v. Conrail*, 926 F. 2d 262 (3rd Cir. 1991), the Third Circuit reversed the grant of summary judgment in a toxic tort case which was predicated on the exclusion of plaintiff's expert witness.  The Court held that *the FELA relaxed standard of causation also relaxes the threshold of admissibility for the reception of expert testimony*.  Further, in an FELA case, the railroad employee is to be given every doubt before the Court.  *Ratigan v. New York Central Railroad Company*, 291 F. 2d 548 (2nd Cir. 1961), citing *Harris v. Pennsylvania Railroad*, 361 U.S. 15 (1959), *Moore v. Terminal Railroad Association,* 358 U.S. 31 (1958).

The test of a jury case, under the FELA, is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing injury for which damages are sought.  *Rogers v. Missouri P.R.Co.,* 352 U.S. 500, 1 L.Ed 2D 493, 77 S.Ct. 443 (1957).  Under the FELA, if a defendant railroad negligently causes further injury or aggravation to plaintiff's pre-existing injury or condition, the plaintiff is entitled to compensation for all of his damages caused by the railroad's negligence, including further injury or aggravation.  *Stevens v. Bangor and Aroostook R. Co.,* 97 F. 3d 594, 601 (C.A.1 (Me.), 1996).

In the instant matter before this Honorable Court, Defendants have moved to preclude the medical causation opinions of Plaintiff's treating physician and surgeon, R. Scott Cowan, M.D. Rule 702 of the Federal Rules of Evidence states:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

F.R.E. 702.

Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), for expert testimony to be admitted, the proposed testimony must be supported by appropriate validation based on what is known. The trial judge must make a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid, and of whether that reasoning or methodology properly can be applied to the facts in issue. *Daubert* at 593.

R. Scott Cowan, M.D., is a Board Certified Orthopedic Surgeon who has been practicing medicine for over fourteen years. Dr. Cowan is familiar with the medical literature and the risk factors for cervical disc herniation and for cervical degenerative arthritis, both work related and non-work related. Dr. Cowan is very familiar with occupational cervical injuries. It is important to note that Defendants do not challenge Dr. Cowan's qualifications as a medical expert generally. Rather, Defendants, in their Motion, challenge only Dr. Cowan's ability to provide a medical *causation* opinion concerning his own patient, Geoffrey Crowther.

So what is the methodology underlying Dr. R. Scott Cowan's conclusions and opinions? What does a treating physician do to determine the cause of his patient's injury? Differential diagnosis is a standard generally accepted methodology utilized by physicians to assess medical causation. Using his experience and expertise, Dr. Cowan utilized a differential diagnosis methodology to assess causation with regard to Geoffrey Crowther as all physicians do with their patients. Dr. Cowan examined his patient Geoffrey Crowther. Dr. Cowan took his patient's history, including personal and work history, and reviewed his medical records. Dr. Cowan conducted physical examinations, reviewed diagnostic tests, made diagnoses and recommended treatment and surgery. Dr. Cowan also reviewed additional information on Geoffrey Crowther's work including a CSX trackman job description, CSX welder job description, and Conrail trackman job description, that were provided by Plaintiff's counsel. As an orthopedic specialist,

Dr. Cowan is obviously familiar with the medical literature and the risk factors for cervical disc herniation, cervical stenosis, and cervical degenerative disc disease, both work related and non-work related. As Plaintiff's treating physician and surgeon, plainly aware of such things as Plaintiff's age, weight and his other medical conditions, Dr. Cowan has opined that Geoffrey Crowther's cervical disc herniations, cervical stenosis, and cervical degenerative disc disease, were contributed to by Geoffrey Crowther's work as a trackman for the railroad over 30 plus years. It is important to note that Dr. Cowan did not opine that the sole or primary cause of Geoffrey Crowther's cervical injuries was his work as a trackman. That is not what the FELA requires for purposes of proving causation. Rather, a contributing factor is sufficient to prove causation under the FELA. *Rogers v. Missouri P.R.Co.,* 352 U.S. 500, 1 L.Ed 2D 493, 77 S.Ct. 443 (1957); *Stevens v. Bangor and Aroostook R. Co.,* 97 F. 3d 594, 601 (C.A.1 (Me.), 1996).

In the case of *Hardyman v. Norfolk & Western Railway Company*, 243 F. 3d 255 (6th Cir. 2001), the Sixth Circuit considered an FELA carpal tunnel syndrome action in which the trial court precluded the plaintiff from offering expert causation testimony and erred in granting the railroad's motion for summary judgment on the ground that plaintiff failed to show that a genuine issue of fact exists as to whether the railroad's negligence was, in whole or in part, a cause or contributing factor of plaintiff's carpal tunnel syndrome. In *Hardyman*, the Sixth Circuit stated:

> (T)he district court held that unless the plaintiff could offer a scientific or epidemiological study specifically concerning carpal tunnel syndrome and railroad brakemen, the only way plaintiff could establish causation would be with the proffer of a known "dose/response relationship" or "threshold phenomenon". Not only does such a requirement ignore the alternative method of establishing causation through differential diagnosis, but it is contrary to the testimony of plaintiff's experts, i.e., that one simply could not quantify the level or dose of risk factors causative of CTS in a manner consistent with dose/response relationship or threshold level.
> …

> After careful review of the entire record, we are firmly convinced that the rationale of the district court did not justify exclusion of plaintiff's expert testimony.

*Hardyman* at 262, 267.

Dr. Cowan is Plaintiff's treating physician and surgeon, and is not a hired gun medical expert who never cared for Geoffrey Crowther. It is to be expected that a treating physician will customarily opine about his patient's history, diagnosis and causation of injuries, treatment, and prognosis.

In the case of *Fielden v. CSX Transportation, Inc.,* 482 F.3d 866 (6th Cir. 2007), the Sixth Circuit stated:

> The (Advisory Committee) Note to Rule 26 states that "[a] treating physician …can be deposed or called to testify at trial without any requirement for a written report." Fed.R.Civ.P. 26(a), cmt. 1993 Amendments, subdivision (a), para. (2). Under a straightforward reading of the rule and its advisory note, Fielden did not need to file an expert report from Dr. Fischer.
> This conclusion is supported by the obvious fact that doctors may need to determine the cause of an injury in order to treat it. Determining causation may therefore be an integral part of "treating" a patient. As a thoughtful U.S. Magistrate Judge reasoned in permitting causation testimony without a prior expert's report,
> It is within the normal range of duties for a health care provider to develop opinions regarding causation and prognosis during the ordinary course of an examination. To assume otherwise is a limiting perspective, which narrows the role of a treating physician. Instead, to properly treat and diagnose a patient, the doctor needs to understand the cause of a patient's injuries. See *McCloughan [v. City of Springfield]*, 208 F.R.D. [236'] 242 [(C.D.Ill.2002)] ("doctors do not operate in a vacuum … Thus the [c]ourt believes causation, diagnosis, and prognosis would be based on the treating physician's personal knowledge …").

*Fielden* at 869, 870.

Defendants challenge only Dr. Cowan's ability to provide a medical *causation* opinion concerning his own patient, Geoffrey Crowther, and *interestingly raise no challenge to Dr. Cowan's ability to provide opinions as to the diagnosis, treatment and prognosis of Geoffrey Crowther*. In reality, Defendants' issues with Dr. Cowan's causation opinions go not to their

admissibility, but rather go to the *weight of the evidence*. Dr. Cowan's differential diagnosis is a standard generally acceptable methodology utilized by treating physicians to assess causation. It should be up to the jury to determine what weight to give his expert testimony.

In *Primiano v. Yan Cook, et al.*, United States Court of Appeals for the Ninth Circuit, 06-15563 (March 2010), the Ninth Circuit recently considered the admissibility of medical testimony under *Daubert*. The District Court had excluded the testimony of a highly qualified expert because he could not say precisely why a product had failed, and because there was no peer-reviewed literature supporting his testimony. The Ninth Circuit held that his methodology was adequate, and the testimony relevant, and reversed the trial court. In *Primiano*, the Ninth Circuit stated:

> The question before us is whether excluding Primiano's expert's testimony was an abuse of discretion.
> …
> The district court granted defendants' motion to exclude Dr. Weiss's testimony as not meeting the *Daubert* standard and granted summary judgment. The court concluded that Dr. Weiss's testimony would not be helpful to the jury.
> …
> Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion.
> …
> Under *Daubert*, the district judge is a "gatekeeper, not a fact finder." When an expert meets the threshold established by Rule 702 as explained in *Daubert*, the expert may testify and the jury decides how much weight to give that testimony. Testimony by physicians may or may not be scientific evidence like the epidemiologic testimony at issue in *Daubert*.
> …
> '[M]edicine is not a science but a learned profession, deeply rooted in a number of sciences and charged with the obligation to apply them for man's benefit.' 'Evidence-based medicine' is 'the conscientious, explicit and judicious use of current best evidence in making decisions about the care of individual patients.' 'Despite the importance of evidence-based medicine, much of medical decision-making relies on judgment – a process that is difficult to quantify or even to assess quantitatively.'
> …
> 'A trial court should admit medical expert testimony if physicians would accept it as useful and reliable,' but it need not be conclusive because 'medical knowledge

> is often uncertain, and ethical concerns often prevent double-blind studies calculated to establish statistical proof.' Where the foundation is sufficient, the litigant is 'entitled to have the jury decide upon [the experts'] credibility, rather than the judge.'
> …
> Other circuits have taken similar approaches focusing especially on experience. The Sixth Circuit held that a district court abused its discretion by excluding a physician's testimony based upon extensive, relevant experience even though he had not cited medical literature supporting his view. *Dickenson v. Cardiac & Thoracic Surgery of E. Tenn.*, 388 F.3d 976, 982 (6th Cir. 2004). Likewise, the Third Circuit pointed out that a doctor's experience might be good reason to admit his testimony. *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 406-07 (3rd Cir. 2003).
> …
> Given that the judge is 'a gatekeeper, not a fact-finder,' the gate could not be closed to this relevant opinion offered with sufficient foundation by one qualified to give it.

*Primiano v. Yan Cook, et al.*, United States Court of Appeals for the Ninth Circuit, 06-15563 (March 2010), page 3805-3817.

Defendants' assertions that there is no scientific basis to Dr. Cowan's opinions with regard to the medical causation of his own patient's injuries are misleading. Dr. Cowan should not be required to go to a job site and actually observe an employee work before he can offer a causation opinion. If that were the case, then no doctor could ever provide any causation opinion in any traumatic injury case when the doctor had not witnessed the actual accident when it occurred. That is absurd. Geoffrey Crowther's history and job description suffice. A plaintiff's history is generally what a medical doctor relies upon for the foundation of his causation opinion in any FELA trauma or cumulative-trauma injury case. The history may come from Plaintiff, Plaintiff's attorney, and/or the job description.

Dr. Cowan's medical causation opinions should not be excluded. It should be up to the jury to determine what weight to give his expert testimony. The jury should decide if Geoffrey Crowther's cervical injuries were caused and/or contributed to and/or aggravated, worsened and

exacerbated, in whole or in part, by his work for Defendants, CSX and Conrail. FELA cases are supposed to be determined by the jury.

## IV.    CONCLUSION:

Defendants CSX and Conrail do not challenge Dr. Cowan's qualifications as an orthopedic surgeon. R. Scott Cowan, M.D., is a qualified medical expert who employs the same methodology in diagnosing every one of his patients and determining the cause of their conditions. Using his experience and expertise, Dr. Cowan reviewed his patient Geoffrey Crowther's history, including his job description, as well as his records, examinations, diagnostic tests and surgery reports. Dr. Cowan's methodology is sound and scientifically valid, and his opinions are supported by ample evidence. Dr. Cowan's opinions are obviously not "mere speculation". Dr. Cowan's testimony will most certainly properly assist the jury to understand critical evidence in this FELA occupational injury action. As such, Defendants' arguments are without merit.

WHEREFORE, Plaintiff respectfully requests Defendants' Motion in Limine to Preclude R. Scott Cowan, M.D. be Denied, and that R. Scott Cowan, M.D. be permitted to testify as Plaintiff's medical expert at trial in this matter.

Respectfully submitted,

/s/Thomas J. Joyce, III
THOMAS J. JOYCE, III
Law Office of Thomas J. Joyce, III
801 Centerton Road
Mount Laurel, NJ 08054
(856) 914-0220
Attorney for Plaintiff

/s/*Michael J. McDevitt*
MICHAEL J. McDEVITT
Lawson & Weitzen
88 Black Falcon Avenue, Suite 345
Boston, MA 02110
(617) 439-4990
Attorney for Plaintiff

DATED: December 3, 2010

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| GEOFFREY CROWTHER | : | Civil Action No. 09-10334-MAP and |
| | : | 09-11467-MAP |
| Plaintiff | : | |
| v. | : | |
| CSX TRANSPORTATION, INC. and CONSOLIDATED RAIL CORP. | : | |
| Defendants | : | |

CERTIFICATE OF SERVICE

I, THOMAS J. JOYCE, III, hereby certify that on December 3, 2010, I electronically filed: Plaintiff's Response and Memorandum of Law in Opposition to Defendants' Motion in Limine to Preclude R. Scott Cowan, M.D.; Plaintiff's Exhibits; and Plaintiff's Proposed Order, with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following counsel of record for the Defendants:

Heather M. Gamache, Esquire
Flynn & Wirkus
400 Crown Colony Drive, Suite 200
Quincy, MA 02169

*/s/Thomas J. Joyce, III*
Thomas J. Joyce, III