IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| GEOFFREY CROWTHER | : | Civil Action No. 09-10334-MAP and |
| | : | 09-11467-MAP |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| CSX TRANSPORTATION, INC. | : | <u>ORAL ARGUMENT REQUESTED</u> |
| and | : | |
| CONSOLIDATED RAIL CORP. | : | |
| | : | |
| Defendants | : | |

<u>PLAINTIFF'S RESPONSE AND MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANTS' MOTION IN LIMINE TO
PRECLUDE ANY EVIDENCE RELATED TO BALLAST</u>

COMES NOW the Plaintiff, Geoffrey Crowther, by and through his attorneys, Thomas J. Joyce, III, and Michael J. McDevitt, and hereby responds in Opposition to Defendants' Motion in Limine to Preclude Any Evidence Related to Ballast (Document 73), as follows:

I.   <u>BACKGROUND</u>:

This is an occupational injury action brought pursuant to an Act of Congress known as the Federal Employers' Liability Act (FELA), 45 U.S.C. Section 51, et seq.  Plaintiff, Geoffrey Crowther, is presently age 59.  Geoffrey Crowther worked as a track laborer, track welder, track foreman, and track inspector (trackman) for the railroad from 1975 through December 2006, when he became disabled (at age 55).  As a trackman, Geoffrey Crowther 's work tasks required an extreme amount of heavy repetitive work, utilizing certain track tools and equipment such as torches, electric and gas welding equipment, grinders, chipping guns, track chisels, sledge hammers, claw bars, spiking mauls, needle guns, air impact hammers and saws.  He was also required to lift and carry heavy objects, and was exposed to excessive and harmful vibration.

Geoffrey Crowther's job duties further required prolonged use of his arms in awkward and extended positions, working in poor ground conditions, and walking on improper and/or poorly maintained ballast. Many times he was required to perform his tasks without adequate tools and equipment and/or adequate manpower.

Geoffrey Crowther claims occupational neck, bilateral knee, left elbow, and left thumb injuries, which were caused and/or contributed to and/or aggravated, worsened and exacerbated, in whole or in part, by his employment as a trackman with Defendants, CSX Transportation, Inc. (CSX) and Consolidated Rail Corp. (Conrail), and for which he underwent multiple surgeries.

Defendants CSX and Conrail filed a Motion in Limine to Preclude Any Evidence Related to Ballast, alleging that Plaintiff's claims in regard to Defendant's ballast are preempted by the Federal Railroad Safety Act (FRSA), 45 U.S.C. Sec. 20101, et seq., and that *any* evidence related to Defendants' ballast must be precluded. For the reasons stated herein, Defendants' Motion in Limine to Preclude Any Evidence Related to Ballast should be denied.

II.     FACTS:

Plaintiff Geoffrey Crowther testified at a discovery deposition on November 18, 2008, in pertinent part, as follows:

> Q   And you would agree, sir, that you can't use walking stone to support the track? Would you agree with that?
>
> A   Right. You can't, no.
> …
> Q   Okay. Is there anything that you could have done to prevent you from having to walk on the ballast in performing your job duties?
>
> A   No. Nothing could have, no.
> …
> Q   Okay. And in your estimation, there isn't anything the railroad could have done to

prevent that? Is that fair to say?

A   Well, they could do a better job, you know, like cleaning up the rights-of-way and stuff where they don't need the ballast. Sometimes they put way too much out and it gets -- when they smooth the track and cut the shoulders, and, you know, make it look nice and uniform, all that extra stone goes out in the right-of-way. You know what the right-of-way is?

Q   Yes.

A   So all that stone goes out in the right-of-way.
…

Q   Okay. So if you're working on the track and you're walking on the track, you're walking inside the gauge where the ties are, correct?

A   Yeah, if you can and it's permissible because of your work conditions, you can either walk in the right-of-way or walk in the bank of the track.

Q   Okay.

A   But a lot of times when you're working, you're working on the shoulder, on that incline, and your feet just slip out from under you. You can't get purchase because the stone just -- you're just scooping the stone out with your feet the whole time so you never have a good, solid -- if you're doing anything, you know, you can't do the work from inside the gauge. You have to be outside the gauge, so you're usually standing like one way or another, like this. (Indicating.) And you're walking in stuff that just moves out from under you. It just slides out.

Q   How much time on a particular day might you spend in that part of the track on that type of ballast?

A   Well, depends. In my early days I would spend, you know, 10 or 12 hours a day, four or five days a week, you know, not counting overtime, but when I was a young man I worked in those large gangs and was constantly in fresh ballast.

Q   Okay. How about like, say, the last 10 years of your career? You know, you were at CSX from '99 to '06, so roughly five years, and then say 1995 to 2006, that time period, how much of the percentage of the time would you be spending in that part of the ballast that we just talked about, the bad area?

A   The bad area?

Q   If that's a proper characterization.

A   Yeah, on the slope.

Q   An area you didn't necessarily desire?

Q   Can you give me an idea in terms of an eight-hour shift?

A   Well, field welding. That's where you spend your time, you know, field welding. You have an argument with your partner on who gets that side of the track. You know, if you're electric welding you're carrying stuff up that, and, you know, you're constantly going up and down to the truck, walking up and down, you know, because you need stuff. So, I would say -- you gave me a 10-year window?

Q   Yeah. You said, "In my early days."

A   I would say half -- I would say like half the time, I would say. I'd say at least half the time.

Q   So approximately four hours out of an eight-hour shift?

A   Yeah, sure.

Q   And that's when you were welding?

A   Welding or inspecting track or, you know, like gauging the track. You're gauging it. Any of the jobs, you're constantly -- I mean, have you been around a class one railroad?

Q   Yeah.

A   I mean, it's not like this railroad out here. This is the Manchester Secondary. I mean, we're talking about a shoulder that -- I mean, this is where the track is, like here. (Indicating.) Okay? I hope you understand. I'm like five and a half to six feet in the air, would be the track. So you would start walking up from way back. If I wanted to get to Karen, I would have to start -- I would be going uphill right here on this stuff, that stuff, you know, going like this, (indicating,) trying to get up it. You know, that's what a class one railroad looks like.

Q   As soon as you got up there, you weren't dealing with the incline or slope, right?

A   Yeah. Then you'd have to go back down to get material, and you're going up and down, up and down, all the time.

Q   I understand that.

A   Or if your job is to plug or something, you've got -- you know, you've got one foot --

> you can't do the work from the gauge is what I'm saying. Some of it you can, but a lot of it, you've got one foot on whatever side, whatever rail you're working on. You're straddling the rail and that outside foot is in this loose ballast.
>
> …
>
> Q   Okay. You're provided training on trip and falls, right?
>
> A   Oh, yeah. Oh, yes.
>
> Q   And you didn't have any problems with debris or anything like that, did you, where you've tripped and fell over it that contributed to your injury?
>
> A   Oh, yeah, you trip and fall all the time, Steve. I mean, you know -- I mean, it's just every --
>
> Q   I'm just asking if you tripped and fell on debris or did you try to avoid that?
>
> A   You trip over welding lines, cords. You trip over tools. You trip over the rail. You think you've got your foot up high enough but you're tired and your pants are stuck to your legs because you're sweaty and your foot doesn't come up high enough, and you trip. You go fall right across the track. That happens all the time.

(Please see Plaintiff's 2008 Deposition, attached as Exhibit 1, at page 142-150).

Geoffrey Crowther has disclosed his treating physician and surgeon, Andrew P. Lehman, M.D., as Plaintiff's medical expert with regard to his bilateral knee injuries in this matter. Dr. Lehman is a highly qualified medical professional with expertise and knowledge as to orthopedic surgery who regularly treats patients with knee injuries including bilateral knee osteoarthritis. (Please see CV of Dr. Andrew P. Lehman, attached as Exhibit 2). Dr. Lehman will be called to testify on behalf of Geoffrey Crowther as to the history, physical examinations, diagnostic tests, diagnosis, treatment, surgery, cause and prognosis of Plaintiff's bilateral knee injuries.

On or about November 24, 2008, Dr. Lehman authored a narrative medical report regarding his patient, Geoffrey Crowther. In his detailed narrative medical report, Dr. Lehman states, in pertinent part:

> As you know, he is claiming that his work as a track laborer, welder, foreman and

>   inspector has contributed to the development of the osteoarthritis in both of his knees.
>   …
>   I understand that he has done a lot of heavy lifting and repetitive strenuous motion in regards to his knees.  I also understand that he was exposed to a lot of vibratory stress and overall hard work in his 30 years working on the railroad.
>   …
>   Thus, it is my medical opinion that it is more likely than not that his work conditions have aggravated the symptoms of his osteoarthritis, but his osteoarthritis was caused by his original injuries back in the early 1970s.

(Please see Medical Report of Dr. Lehman, attached as Exhibit 3).

On December 15, 2008, Dr. Andrew P. Lehman was deposed by Defendants.  Dr. Lehman testified in his discovery deposition, in pertinent part, as follows:

>   Q.   Okay.  And so, when you were just talking about work being a contributor, you were talking about that 1986 accident –
>
>   MR. JOYCE:  Objection.
>
>   Q.   (By Mr. Hall)  -- is that correct?
>
>   A.   That's not correct, no.  I think that the repetitive stress of being at the railroad exacerbated his pre-existing condition of arthritis.
>
>   Q.   And when you say, "exacerbated his condition," you mean his symptoms got worse?
>
>   A.   Yes.
>
>   Q.   You're not saying, within a reasonable degree of medical certainty, that his job at the Railroad caused or contributed to an actual acceleration of the disease process, are you?
>
>   MR. JOYCE:  Objection.
>
>   THE WITNESS:  Well, I think it's unclear whether that is the case or not.  I mean, there's no –
>
>   Q.   (By Mr. Hall)  I'm sorry.  That's unclear?
>
>   A.   It's unclear.  I mean, I think, with a reasonable degree of medical certainty, if someone's lifting fifty pounds a day, I think that would accelerate the amount of osteoarthritis you have.  I don't think it necessarily initiated the osteoarthritis, but it

   certainly accelerated it.

…

Q. Okay.  So - - and you've never reviewed his job duties, have you?

A. Well, I think it did mention that, in Attorney Joyce's note, that he had - - as a track laborer, track welder, track foreman, track inspector, and welder foreman, that his tasks included operating all types of equipment such as hand and power tools including torches, electric and gas welding equipment, grinders, chipping guns, track chisels, sledge hammers, claw bars, spiking mauls, needle guns, air impact hammers and saws.  His tasks required him to stoop, bend, and kneel while welding and repairing railroad track.  These tasks also exposed him to an extreme amount of repetitive strenuous motion, vibration, force and awkward postures, heavy lifting and carrying *along with excessive walking on uneven ballast.*  So that's the job description that I was privy to.

Q. Okay.  So the job description that - - did you rely on anything else in coming up with the idea that his work may have played a role in his problem, other than what you were provided by Mr. Joyce?

A. Common sense.

Q. Okay.  Well let me ask you this:  Did you ask Mr. Crowther about his job?

A. When I last saw him yes, probably in April, April of 2007, I believe.  Or was it February?

Q. And what did he tell you then?

A. He said he worked on the railroad for upwards of thirty years and did a lot of heavy work for it.  I didn't get the actual job description at that time because I did not believe he was filing this under Workers' Compensation.

…

Q. And would you agree you don't have a firm, factual foundation of Mr. Crowther's actual job duties –

A. No.

Q. -- and exposure?

 MR. JOYCE:  Objection.

 THE WITNESS:  I think it says pretty clearly what he does here, and it seems like it's pretty heavy work.  I think I have a fair judgment of what he's doing.

(Please see Deposition of Dr. Lehman, attached as Exhibit 4, at page 21-27). (emphasis added).

(Please see CSX Job Description for Trackman, attached as Exhibit 5).

III.     LEGAL ARGUMENT:

This occupational injury action was brought pursuant to an Act of Congress known as the Federal Employers' Liability Act (FELA), 45 U.S.C. Sec. 51, et seq. Specifically, the FELA states, in pertinent part:

> Every common carrier by railroad while engaging in commerce between any of the states and territories, or between the District of Columbia and any of the states or territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier, in such commerce, or in case of death of such employee, to his or her personal representative for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency due to its negligence in its cars, engines, appliances, machinery, track, road bed, works, boats, wharves, or other equipment.
>
> Any employee of a carrier, any part of whose duties as such employee shall be in the furtherance of interstate commerce; or shall, in any way, directly or closely and substantially, affect such commerce as above set forth shall, for the purposes of this Act be considered as being employed by such carrier, in such commerce, and shall be considered as entitled to the benefits of this Act and of an Act entitled "An Act related to the liability of common carriers by railroad to their employees in certain cases".  (App'd April 22, 1908) [45 U.S.C. Secs. 51 et seq.] as the same has been or may hereafter be amended (emphasis added).

45 U.S.C. Sec. 51.

The FELA was enacted by the United States Congress in 1908.  Congress and the United States Supreme Court have, over the years, consistently stated the purpose of the FELA is to protect and benefit railroad employees injured on the job.  The FELA is to be liberally construed

to allow railroad employees, such as Geoffrey Crowther, injured in the scope of their employment to recover from the railroad even where the railroad's negligence is minimal. *Rodriguez v. Deloroy Connecting Railroad Company,* 473 F. 2d 819 (6th Cir. 1973).

This duty to provide a safe place to work was non-delegable and could not be passed on by the railroad to any person, firm or corporation. *Bailey v. Central Vermont Railway Company,* 319 U.S. 350 (1943). Not only is this duty to provide a safe place to work a non-delegable one, but it is also an affirmative one. This means that the Defendants CSX and Conrail had a positive obligation to provide Geoffrey Crowther with a safe place to work, including finding any defect or hazard which would normally be revealed within the work place. *Williams v. Atlantic Coastline Railroad Company*, 190 F. 2d 744 (5th Cir. 1951).

It has long been accepted doctrine that "the question of evidence required to establish liability in an FELA case is much less than an ordinary negligence action." *Harbin v. Burlington Northern Railroad Company,* 921 F. 2d 129 (7th Cir. 1990). In *Hines v. Conrail*, 926 F. 2d 262 (3rd Cir. 1991), the Third Circuit reversed the grant of summary judgment in a toxic tort case which was predicated on the exclusion of plaintiff's expert witness. The Court held that the FELA relaxed standard of causation also relaxes the threshold of admissibility for the reception of expert testimony. Further, in an FELA case, the railroad employee is to be given every doubt before the Court. *Ratigan v. New York Central Railroad Company*, 291 F. 2d 548 (2nd Cir. 1961), citing *Harris v. Pennsylvania Railroad*, 361 U.S. 15 (1959), *Moore v. Terminal Railroad Association,* 358 U.S. 31 (1958). The obvious purpose of the FELA is to enlarge the remedy of railroad employees injured as a result of the hazards in their work place. *Metropolitan Coal Company v. Johnson*, 265 F. 2d 173 (1st Cir. 1959).

In the instant matter before this Honorable Court, Defendants allege that they have immunity from liability for injuries to their employees caused by walking on ballast. Defendants essentially seek to convince the Court that, pursuant to the FRSA (Federal Railroad Safety Act), the FRA (Federal Railroad Administration) exercises jurisdiction over *employee safety* as it relates to track structure to such a degree that further regulation by states or other federal agencies is prohibited. Defendants are in error, however, as several courts have properly held that the FRSA does *not regulate walkway requirements for employees* in that 49 C.F.R. 213.1, et seq. deals with *train safety* as it relates to track structure, not *employee safety*.

In *Grimes v. Norfolk Southern Railway Company*, 116 F.Supp.2d 995 (N.D. Ind. 2000), the plaintiff Vernon Grimes was a conductor on defendant's train and was injured while walking along the track to conduct an inspection of the train. Just as Defendants CSX and Conrail now argue in Geoffrey Crowther's case before this Honorable Court, the defendant railroad in *Grimes* argued that FRSA regulations superseded the FELA basis for plaintiff's claim against the railroad and precluded recovery. In *Grimes*, the Court recognized:

> To facilitate the goal of national uniformity, the FRSA has a preemption clause specifically relating to state law which provides that states may regulate railroad safety "until the Secretary of Transportation prescribes a regulation or issues an order covering the subject matter of the State requirement." 49 U.S.C. Sec. 20106.

*Grimes* at 1000.

The court in *Grimes* then held:

> Every circuit that has considered the issue of walkways has concluded that the FRSA is silent on the question of walkways. The regulations are directed toward creating a safe roadbed for trains, not a safe walkway for railroad employees who must inspect the trains. In view of the fact that this railroad requires its employees to perform numerous trackside inspections of its trains for various reasons, this Court declines to find anything in the regulations cited by the Defendant that

> precludes this Plaintiff from asserting that the railroad was negligent for failing to provide a safe place to work.
>
> There is also nothing in the language or legislative history of any enactment, including FRSA, that indicates the serious purpose of undermining the basic core of FELA and its essential purpose. … The Supreme Court has never ruled on the effect of FRSA on negligence claims under FELA, and the Circuits that have considered the issue are split.
>
> …
>
> The defendant NSRC has asked this Court to extend *Waymire* well beyond its holding to preclude a negligence claim under FELA for any conduct by the railroad even remotely covered by a regulation enacted under FRSA. This Court declines the invitation to do so.

*Grimes* at 1002-1003.

In *CSX Transportation, Inc. v. Miller*, 159 Md.App. 123, 858 A.2d 1025 (2004), Donald Miller had brought an action against CSX Transportation, Inc., seeking recovery for bilateral osteoarthritis of the knees caused by cumulative-trauma occurring over the period of his employment with defendant. The jury returned a verdict in favor of Miller. On appeal, defendant CSX claimed the trial court was in error for having denied defendant's summary motion on the issue of preemption. In affirming the judgment of the lower court, the appellate court in *Miller* noted:

> Even a surface glance at the FRSA regulation relied on by CSX persuades us that it does not touch, let alone pervasively cover, the railroad yard conditions that allegedly fell short of the safe and healthy workplace environment that CSX was obligated to provide for its employees. The regulation is concerned with the track and its immediately adjoining area and not with railroad yards. The obvious concern, moreover, is with the safety of the train, the prevention of derailments, and not the quality of the work place provided for employees. That important distinction was noted in *Southern Pacific Transp. Co. v. Public Utilities Comm'n*, 647 F. Supp. 1220, 1225 (N.D. Cal. 1986), aff'd, 820 F.2d 1111 (9th Cir. 1987):

>The ballast regulations … are designed to insure that tracks have adequate support … No FRA regulation addresses the concern that employees have a safe working environment near railroad tracks.
>
>*Elston v. Union Pacific*, supra, 74 P.3d at 488, noted that, even with respect to walkways alongside the track:
>
>[t]hese standards are directed at promoting a safe roadbed for trains, but offer no indication whether a railroad has a duty to provide safe walkways for employees alongside its tracks.

*Miller* at 1039.

In *Hendrix v. Port Terminal Railroad Association*, 196 S.W. 3d 188 (Tex. App. 2006), plaintiff Travis Hendrix, a railroad switchman, claimed injuries sustained while walking on ballast of an unsafe size. The trial court granted defendant railroad's summary judgment motion on the issue of preemption. The appellate court in *Hendrix* aptly held as follows:

>…the FRSA does not preclude, as a matter of law, any and all employee FELA claims that relate to or touch upon walkway conditions and the size of rail yard ballast. Accordingly, we hold that the trial court erred in granting summary judgment on the ground that Hendrix's FELA claims are precluded by the FRSA.

*Hendrix* at 201.

In *Wilcox v. CSX Transportation, Inc.*, Cause No. 05-cv-107 in the United States District Court for the Northern District of Indiana, defendant CSX filed yet another motion for summary judgment on the issue of preemption. United States District Judge William C. Lee's Memorandum of Opinion and Order dated May 30, 2007, in *Wilcox*, prophetically reads as follows:

>While CSX is obviously correct in stating that the state court holdings in *Norris* and *Haug* are at odds with this court's holdings in *DeGrasse* and *Grimes* (as well as other federal court decisions as discussed by Judge Sharp in *Grimes*), the court is not persuaded by CSX's argument that it should now reverse course on this issue. Once again, the plain language of Sec. 213.103 does not state, expressly or

> by implication, that the regulation was intended to provide for the safety of railroad employees, or that it was promulgated by the FRA with a clear "intent to occupy the field of safety regulation of ballast completely[,]" as CSX contends. The current "split of authority" on this issue is one that properly should be resolved by Congress and/or the FRA, by amending the language of Sec. 213.103 to clarify its scope and intent. For purposes of this case, however, CSX's arguments are rejected and its motion for summary judgment is DENIED.

*Wilcox*, Memorandum of Opinion and Order, at page 13.

On August 3, 2007, new federal legislation was indeed enacted to preserve injury and death actions, preventing railroads from continuing to use the FRSA to erode railroad safety. Congress *legislatively reversed* many federal court decisions over the last several years which had immunized railroads from liability, and *clarified* that the FRSA *does not preempt all state injury lawsuits*. The actual text of the law reads as follows:

> SEC. 1528. RAILROAD PREEMPTION CLARIFICATION.
> Section 20106 of title 49, United States Code, is amended to read as follows:
>     …
> (b) Clarification Regarding State Law Causes of Action –
> (1) Nothing in this section shall be construed to preempt an action under state law seeking damages for personal injury, death, or property damages alleging that a party --
> (A) has failed to comply with the federal standard of care established by a regulation or order issued by the Secretary of Transportation …;
> (B) has failed to comply with its own plan, rule or standard that it created pursuant to a regulation or order issued by either of the Secretaries; or
> (C) has failed to comply with a state law, regulation or order that is not incompatible with subsection (a)(2).
> (2) This subsection shall apply to all pending state law causes of action arising from events or activities occurring on or after January 18, 2002.

Public Law 110-53, Section 1528.

In their instant Motion, Defendants CSX and Conrail point to some cases that notably predate this new federal legislation. Defendants' sweeping argument is really based then on just one case, *Nickels v. Grand Trunk Western Railroad, Inc.*, 560 F. 3d 426 (6th Cir. 2009), argued before a panel of three Circuit Judges and decided with one dissent last year in the Sixth Circuit

Court of Appeals. However, the Court of Appeals in *Nickels* did not give appropriate consideration to the new legislation implemented by the federal government on August 3, 2007, as evidenced by the dissenting opinion of Circuit Judge John M. Rogers in the case. In his dissenting opinion, Circuit Judge Rogers properly recognized as follows:

> This case then is no different from one in which a railroad worker brings an FELA suit for being injured by debris when ballast is carelessly unloaded into place, or an FELA suit for injury from worker contact with a carcinogenic herbicide used to keep plants from growing on ballast. Nothing in the ballast-support regulations contemplates that there can categorically be no negligence with respect to a railroad's construction or maintenance of ballast.
> A number of courts have accordingly held that FRSA regulations do not preclude FELA suits based on ballast walkways. *See Wilcox v. CSX Transp., Inc.*, No. 1:05-CV-107, 2007 WL 1576708 (N.D. Ind. May 30, 2007); *Grimes v. Norfolk S. Ry. Co.*, 116 F.Supp.2d 995 (N.D. Ind. 2000); *Elston v. Union Pac. R.R. Co.*, 74 P.3d 478 (Colo. Ct. App. 2003);**3** *see also S. Pac. Transp. Co. v. Pub. Utils. Comm'n*, 647 F. Supp. 1220 (N.D. Cal. 1986), *aff'd per curiam*, 820 F.2d 1111 (9th Cir. 1987).
> This of course is not to say that a jury may require an action that violates the FRSA regulation. If, for instance, a successful FELA claim effectively created "a walkway requirement or other safety regulation that hindered or prevented a railroad from complying simultaneously with an FRA regulation designed to enhance safety in a different area," *Missouri Pacific Railroad Co. v. Railroad Commission of Texas*, 833 F.2d 570, 574 (5th Cir. 1987), FELA relief would clearly be precluded on that ground. A jury verdict for the plaintiff cannot impose "'different or higher standards' of track construction by superimposing the walkway requirement on federal track . . . structure regulations." *See id.* at 575. In that instance, the railroad could not comply both with the judgment against it on the FELA claim and with the FRSA regulation.
> But nothing like that has yet been shown by defendants in this case. Unlike the regulation at issue in *Easterwood*, the FRSA regulation is a floor that guarantees a minimum level of safety and there are many ways that the railroad can meet the standard. The manner in which the railroad complies with the standard may involve using ballast that is more or less conducive to creating safe walkways for railroad employees. While compliance with the FRSA regulation is evidence of due care, it "does *not* preclude finding negligence if *reasonable* railroads would have taken additional precautions to prevent injury to their employees." *Lane*, 241 F.3d at 442.
> Because defendants have not shown that the regulation would preempt state actions under *Easterwood*'s standard, it similarly does not preclude FELA relief.

*Nickels* at 433-436.

In contrast to *Nickels*, the Seventh Circuit in the recent decision in *Norfolk Southern Railway Co. v. Box,* 556 F.3d 571 (7th Cir. 2009), held that the rules of track construction and maintenance set forth in C.F.R. Sec. 213, et seq., do not cover and preempt the subject of adjacent walkways to railroad tracks. In *Box*, the Court of Appeals affirmed the holdings of the district court which determined that the FRA had not adopted any regulations covering the subject matter of paths adjoining railroad tracks and that the Illinois statute requiring walkways did not conflict with any federal objective, and was therefore consistent with *Grimes, Miller*, *Hendrix* and *Wilcox*, supra.

In the matter before this Honorable Court, Defendants' arguments are without merit. Evidence of Defendants' ballast in this matter should not be summarily excluded, especially in the context of walkway ballast as opposed to mainline track support ballast, which differ in size and purpose. Further, as *Nickels* only dealt with ballast *size*, evidence that Plaintiff walked/ worked on any ballast at all, as well as other evidence of the poor ground conditions where Plaintiff worked, should not be excluded. The jury should be permitted to decide if Geoffrey Crowther's injuries, in whole or in part, were caused and/or contributed to and/or aggravated, worsened and exacerbated by working in poor ground conditions and/or walking on improper and/or poorly maintained ballast while working for the Defendants, as well as by other negligence of Defendants, including Defendants' negligent failure to provide adequate manpower, and/or adequate tools and equipment, and/or a timely and adequate ergonomic safety program, under the FELA.

As stated above, it is important to note that Plaintiff asserts theories of liability against Defendants besides improper and/or poorly maintained ballast and/or poor ground conditions. In

the report of Plaintiff's ergonomic expert, Michael D. Shinnick, Ed.D. dated November 28, 2008, Michael Shinnick states in his conclusion, in pertinent part:

> CSXT and Conrail did not meet industry standards with an adequate ergonomic program in regards to Mr. Crowther because: a) Conrail and CSXT did not do any systematic work task analysis of Mr. Crowther's job to see if performing his job duties posed any risk of injury; b) Conrail and CSXT did not implement any hazard prevention and control measures in Mr. Crowther's job to reduce his exposure to the above-cited risk factors for the development of WMSDs, despite their awareness of companywide injury claims, some with the same job duties and work tasks as Mr. Crowther; c) Conrail and CSXT failed to implement medical management programs to identify and monitor workers at risk for injury. I found no Conrail or CSXT medical management program under which they examined possible modification of Mr. Crowther's work tasks that may have reduced or prevented the development of his symptoms; d) Finally, Conrail and CSXT failed to train and educate Mr. Crowther about the risk factors for developing WMSDs; instead they left Mr. Crowther unable to participate in his own protection.

(Please see Michael Shinnick's Applied Ergonomic Report attached hereto as Exhibit 6).

IV.     CONCLUSION:

Defendants CSX Transportation, Inc. and Consolidated Rail Corp. were negligent under the FELA in failing to provide Geoffrey Crowther with a reasonably safe place to work. The railroad failed to adequately warn Plaintiff of the risks, dangers and harm associated with exposure to cumulative-trauma, and failed to provide adequate walking surfaces, among other failures, including inadequate manpower and inadequate ergonomic safety program.

The case law demonstrates that the FRSA does not summarily preclude Plaintiff's claims as to the nature, condition and/or size of Defendants' ballast in Geoffrey Crowther's FELA occupational injury action. Plaintiff's claims as to the nature, condition and/or size of Defendants' ballast should properly be presented to the trier of fact in this FELA action.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter an Order denying Defendants' Motion in Limine to Preclude Any Evidence Related to Ballast.

                                            Respectfully submitted,

                                            */s/Thomas J. Joyce, III*
                                            THOMAS J. JOYCE, III
                                            Law Office of Thomas J. Joyce, III
                                            801 Centerton Road
                                            Mount Laurel, NJ 08054
                                            (856) 914-0220
                                            Attorney for Plaintiff


                                            */s/Michael J. McDevitt*
                                            MICHAEL J. McDEVITT
                                            Lawson & Weitzen
                                            88 Black Falcon Avenue, Suite 345
                                            Boston, MA 02110
                                            (617) 439-4990
                                            Attorney for Plaintiff

DATED: December 3, 2010

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| GEOFFREY CROWTHER | : | Civil Action No. 09-10334-MAP and |
| | : | 09-11467-MAP |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| CSX TRANSPORTATION, INC. | : | |
| and | | |
| CONSOLIDATED RAIL CORP. | : | |
| | : | |
| Defendants | : | |

## CERTIFICATE OF SERVICE

I, THOMAS J. JOYCE, III, hereby certify that on December 3, 2010, I electronically filed: Plaintiff's Response and Memorandum of Law in Opposition to Defendants' Motion in Limine to Preclude Any Evidence Related to Ballast; Plaintiff's Exhibits; and Plaintiff's Proposed Order, with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following counsel of record for the Defendants:

Heather M. Gamache, Esquire
Flynn & Wirkus
400 Crown Colony Drive, Suite 200
Quincy, MA 02169

*/s/Thomas J. Joyce, III*
Thomas J. Joyce, III