UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
SPRINGFIELD DIVISION

| | |
|---|---|
| GEOFFREY CROWTHER,<br>           Plaintiff,<br>      v.<br><br>CSX TRANSPORATION, INC. and<br>CONSOLIDATED RAIL CORP,<br>           Defendant<br><br>AND<br><br>GEOFFREY CROWTHER,<br>           Plaintiff,<br>      v.<br><br>CSX TRANSPORTATION, INC. | 3:09-cv-10334-MAP<br><br><br><br><br><br><br><br><br><br>3:09-cv-11467-MAP |

**<u>DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION IN LIMINE TO
PRECLUDE PLAINTIFF'S MEDICAL EXPERT, ROBERT SCOTT COWAN, M.D.,
FROM TESTIFYING AT TRIAL</u>**

Defendants CSX Transportation, Inc. ("CSXT") and Consolidated Rail Corporation ("Conrail") submit this Reply in support of their Motion in Limine to Preclude Plaintiff's Medical Expert, Robert Scott Cowan, M.D., from Testifying at Trial. In support thereof, Defendants state as follows:

On November 30, 2010, the parties conducted Dr. Cowan's videotaped trial deposition. (<u>See</u> Dep. of Robert Scott Cowan, M.D., dated Nov. 30, 2010, copy of which is attached as Exhibit A.) As such, this Court has the luxury of previewing Dr. Cowan's testimony in advance of trial to determine its admissibility. Once reviewed, it is doubtful that this Honorable Court will permit Dr. Cowan to testify. Indeed, in further support of their Motion, Defendants are compelled to bring to this Honorable Court's attention several admissions Dr. Cowan made at his

recent trial deposition which clearly demonstrate that his causation opinion was not properly disclosed, and, in any event, is unreliable and inadmissible.

A.  **Dr. Cowan's Causation Opinion Was Not Disclosed and in Fact Was Changed on The Same Day That This Honorable Court Affirmed Summary Judgment on Plaintiff's Neck "Aggravation" Claim**

First and foremost, Dr. Cowan rendered an opinion on causation which had not previously been disclosed, in violation of this Court's Scheduling Order and Rule 26(a)(2)(c) of the Fed. R. Civ. P.  Dr. Cowan himself admitted that his trial opinion was entirely different from his previously disclosed opinion, and that defense counsel was not previously notified of this changed opinion.

In a discovery deposition taken on December 16, 2008, Dr. Cowan stated that, in his opinion, Plaintiff's underlying cervical arthritis (degenerative disc disease – "DDD") was caused by genetic, non-railroad related factors (the aging process) and **not caused by** Plaintiff's railroad work activities.  (See Dep. Of Robert Scott Cowan, M.D., dated December 16, 2008, a copy of the relevant portions of which are attached as Exhibit B, at 38-45, 76-77; see also Ex. A at 78-83, 91-94.)  Dr. Cowan also testified at his discovery deposition that in his opinion Plaintiff's underlying, pre-existing, non-railroad related cervical DDD was merely aggravated by Plaintiff's railroad work activities (i.e., Plaintiff had become symptomatic after working on the railroad for some 30 years). Id.

In its October 5, 2010 Memorandum and Order Regarding Defendants' Motion for Summary Judgment this Honorable Court granted summary judgment "as to Plaintiff's claim of **aggravation to his neck"** on the grounds that Plaintiff's neck aggravation claim was time-barred.  (Doc. No. 45 at 9.)  More recently, on November 30, 2010 (i.e. the very day on which Dr. Cowan's trial deposition was taken) this Honorable Court denied Plaintiff's Motion for

Reconsideration of its prior ruling, affirming that Plaintiff's claim of aggravation of his underlying neck DDD was properly dismissed.  (See Memorandum and Order Regarding Plaintiff's Request for Reconsideration, Doc. No. 93).

Thus, by the time Dr. Cowan's trial deposition began, Plaintiff's counsel was well aware that he was not going to be allowed to put the neck aggravation claim before the jury.  As a result, Plaintiff was faced with a dilemma – Dr. Cowan, as noted, had already rendered an opinion, confirmed by the doctor's deposition testimony, that Plaintiff's railroad activities **did not cause** his neck DDD but merely **aggravated** the pre-existing condition.  In other words, Dr. Cowan's original opinion supported only the time-barred claim, and actually served to contradict the claim which has not been time-barred.

Neither Plaintiff nor Dr. Cowan did anything after the December 2008 discovery deposition to notify Defendants that Dr. Cowan's causation opinion had changed, or that he planned to give a different opinion at trial.  Despite the lack of disclosure, at his trial deposition on November 30, 2010, Dr. Cowan testified, in response to questions posed by Plaintiff's counsel (and over objection), that Plaintiff's railroad work activities actually contributed to cause the DDD itself.  (Ex. A at 35-55.)[1]

Dr. Cowan admitted that the causation opinion he expressed at his trial deposition was different from the causation opinion he had originally expressed in both his report and December 16, 2008 discovery deposition, and that the defendants had never been notified of his changed opinion:

> Q. …Doctor, also, if you would refer to page 76 of your deposition. … He also asked the question, "So your opinion is solely that there was an aggravation of a preexisting non-work related condition; is that correct?"
> "ANSWER:  That's correct."

---

[1] Defendants note that Dr. Cowan first uttered his "new" opinion in the early evening of November 30, 2010, merely a few hours after this Honorable Court issued its reconsideration order.

>    That was your opinion back then?
> A. That's correct.
>
> Q. Is that still your opinion or is your opinion changed? . . .
>
> A. **It doesn't really represent my opinion**. I didn't think it did then.
>
> Q. Let me explore that a little bit. First question, the part that I just read which says that your opinion -- let me read it again.
> "QUESTION: Your opinion is solely that there was an aggravation of a preexisting non-work related condition; is that correct?
> "ANSWER: That's correct."
> Did I read that correctly?
>
> A. Yes you did. You read it perfectly.
>
> Q. Then there is a follow-up question.
> "We talked about aggravation and worsening and we agreed that there are two concepts that are involved here, the worsening or aggravation symptoms versus aggravation and worsening of the actual disease process, correct?"
> And your answer was: "Correct," right?
>
> A. Yes.
>
> Q. So this is at least the second part in the deposition where you are asked what your opinions were, correct?
>
> A. Yes. …
>
> Q. The opinion that you were asked is it solely an aggravation of a preexisting non-work related condition, is that still your opinion today or do you have a different one? …
>
> A. My opinion is I would adjust it slightly in that we have the word "aggravation" or the phrase "aggravation of symptoms versus aggravation of actual disease process" and then the follow-up question in my opinion today would be that we have an aggravation of the actual disease process as opposed to just symptomatology.
>
> Q. That was something different than what we (sic) said back in the deposition.
>
> A. **It is different. It's just my opinion has changed over the time**.
>
> Q. Just so the record is clear, as I am sitting here today, how would I have known that your opinion had changed?

4

      A.      You wouldn't.
      Q.      I wouldn't, would I?  Nobody has ever provided me any notice that your opinion has changed, correct?

      A.      Correct.

(Ex. A at 90-94.) (Emphasis supplied.)

This Court's Scheduling Order and Rule 26(c) both require the timely disclosure of expert opinions.[2]  Here, it is clear that the causation opinion that Dr. Cowan gave at his trial deposition had never before been disclosed.  In fact, the causation opinion Dr. Cowan was asked to give at trial was markedly different – in fact, the polar opposite – from the causation opinion which had actually been disclosed.  Making this error even more egregious is that the change in his opinion pertains to the very issue – aggravation v. direct causation of Plaintiff's cervical DDD – on which this Honorable Court has granted Defendants' summary judgment.  Indeed, the temporality between the changed opinion and the Court's order affirming summary judgment on the aggravation claim (i.e. the only claim Dr. Cowan's original opinion served to support) leaves at least the suggestion that Dr. Cowan changed his opinion in order to create a factual issue for trial.[3]

In addition, Dr. Cowan's causation testimony as presented in his trial/video deposition should be precluded because it differs from that he provided in the discovery deposition.  Dr. Cowan's conduct in completely altering his testimony falls within the "sham affidavit" doctrine and is inadmissible.  See <u>Colantuoni v.Alfred Calcagni & Sons Inc.</u>, 44 F.3d 1, 5 (1st Cir. 1994).  Under the "sham affidavit" doctrine, the First Circuit has held that an interested party may not

---

[2] The Scheduling Order required that experts be disclosed no later than April 30, 2010.  (Doc. No. 34).  Rule 26(a)(2)(C) requires that, absent a stipulation or court order, expert disclosures must be made at least 90 days prior to trial.

[3] Defendants note that although Dr. Cowan met with Plaintiff's counsel just prior to his trial deposition, and that they discussed "what his testimony would be," he also testified that he was unaware of the Court's reconsideration order. (Ex. A at 71 – 72.).

alter his prior testimony without justification or providing a "satisfactory explanation of why the testimony changed." Iorio v. Aramark Servicemaster, 2005 U.S. Dist. LEXIS 40290 (D. Mass. 2005) (disregarding portion of testimony conflicting prior testimony), citing Colantuoni, 44 F.3d 4-5. When an interested witnesses has clearly answered unambiguous questions at a deposition, he should not be permitted to diametrically alter this unequivocal testimony without there have been any reasons therefor. Torres v.E.I. Dupont de Nemours & Co., 219 F.3d 13, 20 (1st Cir. 2000). However, where there is a lapse of memory, new sources of information or other events, differing testimony may be allowed as evidence. Jimenez v. Island Oasis Frozen Cocktail Co., No.1760, 2010 U.S. Dist. LEXIS 95984, (D.P.R. 2010), citing Hernandez-Loring v. Universidad Metropolitana, 233 F.3d 49, 54 (1st Cir. 2000). Thus, "[i]t is bedrock law in this Circuit that a party cannot vary his deposition testimony with an affidavit unless there is an explanation for the variance."[4] Spilman v. Mosby-Yearbook, Inc., 115 F. Supp. 2d 148, 155 (D. Mass. 2000).

Although the "sham affidavit" doctrine arose in the context of summary judgment, there is no reason why it should not apply with equal force to the circumstances of this case. Here, Dr. Cowan is an interested witness as he has been retained by Plaintiff to provide testimony supporting his negligence case against CSXT. Moreover, Dr. Cowan completely altered his medical causation testimony. In fact, he may have done so only to rescue Plaintiff's direct cause neck allegations after this Court ruled that the statute of limitations had run out on any aggravation claims. More importantly, Dr. Cowan has provided no reasons to explain his change of opinion and testimony. Indeed, he cannot provide any explanation because no new facts have surfaced that would alter a physician's medical opinion with respect to Plaintiff's neck claims.

---

[4] This same rule has been recognized by the state courts of Massachusetts as well as other federal circuits. See Ng Bros v. Cranney, 436 Mass. 638, 647-648 (2002); see also Yahnke v.Carson, 2000 WI 74 (Wis. 2000) (citing various federal circuits).

Therefore, in the interest of justice and to preserve the integrity of this litigation, this Court should not allow Dr. Cowan to provide any causation testimony.

The Court simply cannot countenance such clear-cut violations of the expert disclosure requirements. Moreover, Dr. Cowan's trial opinion completely contradicts his previously disclosed opinion, a flip-flop which (whether calculated or not) shifts his testimony from contradicting to supporting Plaintiff's only remaining viable neck claim. No defendant should be prejudiced to this extent, left to defend at trial a moving target of claims and opinions. As a result, Dr. Cowan's opinions on direct causation must be precluded.

**B.    Dr. Cowan's "Aggravation" Opinion Has Been Rendered Irrelevant by This Honorable Court's Summary Judgment Order**

Assuming Dr. Cowan's testimony about his previously non-disclosed "direct" causation opinion is stricken, he will be left with only his "aggravation" opinion. But, as noted, this Honorable Court has already ruled that Plaintiff is not allowed to present the neck aggravation claim to the jury as it is time-barred. Thus, the only testimony that Dr. Cowan properly disclosed (pertaining to aggravation) is simply not relevant, and it should therefore be precluded. As a result, Dr. Cowan should be altogether precluded from testifying.

**C.    Dr. Cowan's Admission That Plaintiff's Condition Has Not Changed Since at Least 2002 Requires This Honorable Court to Now Grant Summary Judgment on Plaintiff's Neck Claim, Thereby Making Dr. Cowan's Testimony Irrelevant**

In its October 5, 2010 Order, this Honorable Court ruled that Plaintiff's direct-cause neck claim was not time-barred, based on the following rationale:

> The primary dispute concerns whether the post-2004 injuries alleged in the complaint are the same as the pre-2004 injuries documented in Plaintiff's medical records. Plaintiff claims that the earlier diagnoses are completely different and that all of the prior injuries resolved following surgery and other treatment. Thus, Plaintiff's post-2004 injuries, while they may affect the same body parts, are <u>new</u> and fall within the statute of limitations. …

> Viewed in the light most favorable to Plaintiff, even if some evidence supports Defendants' contention that some of Plaintiff's work-related injuries occurred before 2004, the evidence is far from conclusive that the later injuries were the same as the former injuries. …
>
> Turning to the claims based on Plaintiff's…neck, Defendants have provided no evidence linking Plaintiff's pre-2004 injuries to those alleged in his complaint. Therefore, this court finds that none of Plaintiff's claims of injury to these parts of his body are time barred by the statute of limitations.

(Doc. No. 45 at 6-8). Contrary to the expressed factual bases of the Court's ruling, Dr. Cowan testified at his trial deposition that all of the findings pertaining to Plaintiff's neck condition are considered DDD, all of these findings were present at least as far back as 2002 and the symptoms associated with this condition have been present at least that long. In sum, there is nothing to support the Court's assumption that Plaintiff suffered any "new" neck injury after 2004. Indeed, the only expert Plaintiff identified on this issue (Dr. Cowan) actually provided countervailing testimony.

At his trial deposition, Dr. Cowan testified that an x-ray which was ordered by his office in 2005, and an MRI that he ordered in February 2006, both showed disc herniations and bulges, ostephytes (bone spurs), neuroforaminal narrowing and stenosis, all of which are evidence of cervical DDD. (Ex. A at 66-70). When shown a report of an x-ray which had been conducted by another doctor in October 2002, Dr. Cowan admitted that the x-ray showed the exact same findings (i.e., DDD throughout the cervical spine). (Id. at 98-100.) He also admitted that these findings were all caused by the aging process. (Id. at 100-105.)

Dr. Cowan also testified that the symptoms he associated with Plaintiff's cervical DDD were radicular numbness, pain and tingling down into his left hand and arm. (Id. at 106-107.) He noted that by the time he saw Plaintiff in January 2006 these symptoms had been present for "years." (Id.) Dr. Cowan also acknowledged that Plaintiff had documented complaints of these

very same symptoms, and cervical DDD, going back to at least 2002. (Id. at 109-110.) Ultimately, Dr. Cowan admitted that Plaintiff had already developed both the underlying cervical DDD and the symptoms associated with it (i.e., the very same condition he started treating in 2006) all the way back at least as far as 2002. (Id. at 110-113.)

Noting once again that Plaintiff bears the burden of proving he complied with the FELA's statute of limitations, Dr. Cowan's trial testimony makes it unequivocally clear that, at least with respect to Plaintiff's cervical DDD, his diagnosis was no different from what had been present prior to 2004. Not only did the condition that Dr. Cowan treated affect the same body part as was treated and diagnosed in 2002 (i.e. the cervical spine and associated structures) but his testimony demonstrates that nothing new developed post-2004.[5] Contrary to the Court's October 5, 2010 ruling, then, the evidence indeed is now conclusive that there were no "later injuries" (at least with respect to the neck) and that the post-2004 diagnosis, "injury" and condition is the same thing that existed back as far as 2002. In short, Dr. Cowan's testimony now provides conclusive, undisputed "evidence linking Plaintiff's pre-2004 injuries to those alleged in his complaint," the very factor that (in this Court's analysis) was missing at the summary judgment stage.

As such, summary judgment is now appropriate on plaintiff's neck claims, because they are clearly time-barred. Consequently, even if the Court rejects Defendants' other challenges to Dr. Cowan, his testimony is in any event not relevant because the entire neck claim should now be dismissed.

---

[5] Defendants also note that Plaintiff did not have any surgery on his neck between the time of the first x-ray (October 2002) and January 2006 (when he first treated with Dr. Cowan).

**D.    Dr. Cowan's Opinions are Based Neither on any Scientific Principles, Nor any Facts or Data Which Have Been Reliably Applied to The Facts of This Case**

Dr. Cowan's trial testimony ALSO now establishes that his opinions are entirely unreliable because they lack the necessary factual foundation and the requisite scientific support required by Fed. R. Evid. 702 and Daubert v. Merrell Dow Pharm., 509 U.S. 579, 589-591 (1993). That is, Dr. Cowan did not apply any scientific analyses, principles or methods to this case. Instead, his trial testimony bears out that his opinions rest on the mere fact that a temporal relationship existed between Plaintiff's job duties and the onset of his neck symptoms. As this Court well-knows, however, the existence of a temporal relationship is entirely insufficient to pass muster under Daubert. In short, Dr. Cowan's reasoning is as follows:

- Plaintiff developed cervical DDD as early as 2002;

- Plaintiff worked for the railroad for approximately thirty years;

- Toward the end of his career, he developed neck-related symptoms;

- Thus, because Plaintiff worked for the railroad for thirty years, it must have been his railroad work activities that caused his neck condition.

(Ex. A at 133-134).[6] Dr. Cowan's reasoning is precisely the type of *post hoc ergo propter hoc* testimony that Daubert and its progeny protects against. It is clear that his opinions are based

---

[6]More specifically, Dr. Cowan testified as follows:

> Q.   So the basis of your opinion that it happened to this man is what?
> A.   The basis of my opinion is taking him in as a whole patient, reviewing the extent to which he was exposed to neck stress by what he did and the development of his symptoms, his MRI, which were consistent with a degenerative disk process but a degenerative disk process that I think was attributed to what he did over 30 years time or perhaps 27 years down.
> Q.   So if I can boil it down, the man had degenerative disk disease as a result of the ageing process, right?
> A.   Correct.
> Q.   That is confirmed on an MRI, correct?
> A.   Correct.
> Q.   It was confirmed in an x-ray four years earlier back in '02, correct?
> A.   Correct.
> Q.   And simply because he also worked at the railroad, you put the two together and have developed your opinion? . . .

exclusively on his own subjective belief and speculation, and not on any reliable scientific principles or methods. Accordingly, this Honorable Court should preclude Dr. Cowan from testifying at trial.

Dr. Cowan admitted that there are no peer-reviewed, published, scientific studies that demonstrate a causal, dose-response relationship between railroad-related work activities (indeed, any activities) and the development of cervical DDD. (Ex. A at 130-131, 133). There are also no studies that establish any threshold levels of movements, postures, vibrations or any other exposures that are known to cause cervical DDD. (Id. at 133.) He did not rely on scientific studies in forming his opinions. (Id. at 131.) Dr. Cowan also admitted that he is not aware of any scientific evidence at all that the job activities plaintiff was performing could have caused his cervical DDD or its related symptoms. (Id.)

Dr. Cowan does not typically perform forensic cause analyses as part of his practice. (Id. at 132.) He has never even attempted to perform a forensic causation analysis of any railroad worker's injuries. Id.  In fact, Plaintiff was the first railroad worker he had treated, and he has no independent knowledge of railroad operations. Id. at 132-133.

Dr. Cowan based his opinion exclusively on a self-serving description of Plaintiff's job activities as a trackman and welder that had been provided by Plaintiff's counsel. (Ex. A at 135). Even more surprising than the fact that Dr. Cowan only relied on the job description authored by Plaintiff's counsel to form his opinion, is the fact that the job description is completely and utterly inapplicable. During the last five years of his career, from 2002 to 2006, (and

---

      A.    I looked over what he did at the railroad and the symptoms he developed and his disk disease and, yes, it was my opinion.
      Q.    Without any basis or scientific studies, correct? . . .
      A.    There are no scientific studies, as you said, that support the dose-response relationship.

(Ex. A at 133-134).

immediately prior to treating with Dr. Cowan) Plaintiff was not employed as a trackman, but rather served as a flagman 50% of the time, a track inspector 40% of the time, and as a welder only 10% of the time.[7]  Plaintiff's counsel, however, never provided Dr. Cowan with the job description of a flagman or track inspector.  Thus, in addition to basing his opinion on a self-serving job description authored by Plaintiff's counsel, Dr. Cowan admittedly based his opinion on the invalid assumption that plaintiff worked primarily as a trackman between 2002 and 2006. (Ex. A at 117-118, 121-122).

In the absence of any scientific bases for his opinion, and without any background knowledge of what activities the Plaintiff actually performed at work, Dr. Cowan essentially made up his own dose-response relationship.  He testified that movement of the neck 4 to 5 times a minute (4800 times a day), over a course of years, could "potentially I suppose" cause cervical DDD symptomatology.  (Id. at 125-126.)  But even the job description Dr. Cowan was provided did not say that Plaintiff moved his neck at this, or any other, rate of frequency.  (Id. at 126-127.) In fact, Dr. Cowan admitted that the job description Moreover, Dr. Cowan admitted that the job description on which he relied contained no quantitative data whatsoever, and also that he has no specific information as to the actual movements or specific activities Plaintiff was performing at work.  (Id. at 126-128, 135.)  Ultimately, Dr. Cowan was forced to admit that he was not even sure exactly what provided the basis for the 4 to 5 movement per minute idea he came up with. (Id.  at 128.)

Finally, Dr. Cowan was unable to distinguish, as a causative "risk factor," Plaintiff's railroad work activities from those associated with any other job, or even any other activity. Railroad.  (Id. at 83-84, 88-90, 126-127.)  As far as Dr. Cowan is concerned, any neck activity, including biking and walking (both of which Plaintiff was actively engaged in), could have

---

[7] It is undisputed that Plaintiff stopped working for the railroad in December 2006.

caused cervical DDD symptoms.  (Id.)  Dr. Cowan also testified that Plaintiff was going to develop cervical DDD no matter what he did for a living, and that it was just a matter of time before he did.  Id. at 84, 88-89.

Dr. Cowan's opinion is clearly based exclusively on his own subjective belief and speculation, and not on any reliable scientific analyses or methods, or any facts or data which have been applied reliably to the facts of this case.

WHEREFORE, for all the above-stated reasons, Defendants' Motion should be **ALLOWED**.

|  |  |
|---|---|
|  | Respectfully submitted,<br>CSX Transportation, Inc.,<br>by its attorneys, |
|  | /s/  Heather M. Gamache<br>Michael B. Flynn, BBO# 559023<br>mflynn@flynnwirkus.com<br>Heather M. Gamache, BBO# 671898<br>hgamache@flynnwirkus.com<br>FLYNN & WIRKUS, P.C.<br>400 Crown Colony Drive, Suite 200<br>P.O. Box 699242<br>Quincy, MA 02269<br>T: (617) 773-5500 |
| Dated:  December 17, 2010 | F: (617) 773-5510 |

G:\F & A\CASE FILES\CSX OCCUPATIONAL\Worn\Crowther - WORN - 61-123\Trial\Motions in Limine\MIL to Preclude Cowan\12.16.10 Reply Brief.doc

## **CERTIFICATE OF SERVICE**

I, Heather M. Gamache, attorney for Defendants hereby certify that I have served true and correct copies of the foregoing upon all counsel of record electronically via *CM/ECF* this 15th day of December, 2010.

/s/ Heather M. Gamache\_\_\_\_
Heather M. Gamache, Esq.