UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
SPRINGFIELD DIVISION

| | |
|---|---|
| GEOFFREY CROWTHER,<br>          Plaintiff,<br>          v.<br><br>CSX TRANSPORATION, INC. and<br>CONSOLIDATED RAIL CORP,<br>          Defendant<br><br>AND<br><br>GEOFFREY CROWTHER,<br>          Plaintiff,<br>          v.<br><br>CSX TRANSPORTATION, INC. | 3:09-cv-10334-MAP<br><br><br><br><br><br><br><br>3:09-cv-11467-MAP |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION IN LIMINE TO
PRECLUDE PLAINTIFF'S MEDICAL EXPERT, MARTIN J. LUBER, M.D., FROM
TESTIFYING AT TRIAL**

Defendants CSX Transportation, Inc. ("CSXT") and Consolidated Rail Corporation ("Conrail") submit this Reply in support of their Motion in Limine to Preclude Plaintiff's Medical Expert, Martin J. Luber, M.D., from Testifying at Trial. In support thereof, Defendants state as follows:

On December 1, 2010, the parties conducted Dr. Luber's videotaped trial deposition. (See Dep. of Martin J. Luber, M.D., dated Dec. 1, 2010, a copy of which is attached as Exhibit A.) As such, this Court has the luxury of previewing Dr. Luber's testimony in advance of trial to determine its admissibility. Once reviewed, it is doubtful that this Honorable Court will permit Dr. Luber to testify. Indeed, in further support of their Motion, Defendants are compelled to

bring to this Honorable Court's attention several admissions Dr. Luber made at his recent trial deposition which clearly demonstrate that Dr. Luber's opinions are unreliable and inadmissible.

**A.     Dr. Luber's Opinions Are Wholly Insufficient to Establish Causation Under The FELA**

At best, Dr. Luber has merely offered a qualified opinion here.  On direct examination at his trial deposition, Dr. Luber offered the opinion that Plaintiff's left elbow osteoarthropathy "appeared to be related to repetitive heavy use of his left elbow."  (Ex. A at 33:5-8.)  Dr. Luber also opined, however, that "[i]t may have been contributed to by an osteochondritis lesion."[1] (Id.)  On cross-examination, Dr. Luber conceded that it ***is impossible to determine*** the actual cause of Plaintiff's left elbow osteoarthritis.  (Ex. A at 69:24-25, 70:2-4.)  In fact, Dr. Luber testified that scientific studies support the causal link between OCD lesions and the development of osteoarthropathy and loose bodies, the very conditions he treated Plaintiff for.  (Id. at 64:15-25, 65:2.)  Indeed, OCD lesions are a well-known cause of degenerative osteoarthropathy.  (Id. at 58:17-20.)  Dr. Luber conceded, however, that there are absolutely no scientific studies that support a causal link between railroad activity and the development of osteoarthropathy and loose bodies.  (Id. at 67:16-25.)

Based on Dr. Luber's admissions, that is: (1) that it is impossible to determine the cause of Plaintiff's arthritis; (2) that the OCD lesion is the likely cause of Plaintiff's left elbow osteoarthropathy; and (3) that scientific studies support the conclusion that OCD lesions directly cause osteoarthropathy, he cannot now offer the opinion that, to a reasonable degree of medical certainty, Plaintiff's work activities with the railroad caused his underlying left elbow

---

[1] It is undisputed that Plaintiff's 2007 CT scan revealed a probable osteochondral defect involving the capitellum.  See March 8, 2007 MRI Report, a copy of which is attached as Exhibit B.  According to Dr. Luber an osteochondritis dissecans is a problem that develops in the joints and is "an injury to the blood supply of a growth plate that leads to a disruption of that blood supply, and then a resulting injury to the underlying bone that supports the cartilage."  (See Dep. of Martin J. Luber, M.D. dated May 24, 2010 at 37, relevant portions of which are attached as Exhibit C.)

degenerative osteoarthropathy.  Dr. Luber's opinion is entirely insufficient to establish causation and, if presented to the jury, will only serve to confuse the jurors and greatly prejudice Defendants.  Accordingly, this Honorable Court should preclude Dr. Luber from testifying as an expert at trial.

Moreover, to the extent Dr. Luber opines that Plaintiff's work activities with the railroad aggravated his underlying left elbow osteoarthropathy, his opinion is baseless.  Plaintiff had absolutely no complaints of mechanical locking episodes, the very condition Dr. Luber treated him for, until 2009.  (Ex. A at 104:18-23.)  In fact, at Plaintiff's first and second office visits with Dr. Luber, he admittedly had no symptoms.  (Id. at 104:13-17.)  Interestingly, when Plaintiff presented to Dr. Luber in 2009 with complaints of mechanical locking episodes, he had not performed manual labor in over seven years, and had not worked for the railroad in over two years.  (Id. at 115:4-13.)  Dr. Luber, however, testified that he was not aware of the fact that Plaintiff had stopped working in December 2006.  (Id. at 113:21-24.)  Perhaps of even greater significance is the fact that between 2002 and 2009, despite presenting to countless physicians and undergoing numerous physical examinations, Plaintiff made no complaints of mechanical locking episodes.  (Id. at 107-115.)  Ultimately, when pressed on his opinion that Plaintiff's underlying left elbow osteoarthropathy was aggravated by his work activities on the railroad, Dr. Luber changes the opinion he provided on direct examination and merely offers, "I don't know that you can say with certainty."  (Id. at 117:22-23.)  Again, Dr. Luber's opinion is entirely insufficient to establish that Plaintiff's work activities aggravated his underlying left elbow osteoarthropathy and, if presented to the jury, will only serve to confuse the jurors and greatly prejudice Defendants.

**B.      Dr. Luber's Opinions Are Not Based on any Scientific Principles or any Facts or Data Which Have Been Reliably Applied to The Facts of This Case**

Dr. Luber's opinions, to the extent he offers any, are entirely unreliable because they lack the necessary factual foundation and the requisite scientific support required under <u>Daubert v. Merrell Dow Pharm.</u>, 509 U.S. 579, 589-591 (1993).  That is, Dr. Luber did not apply any scientific facts to this case.  Instead, Dr. Luber's trial testimony bears out that his opinions rest on the mere fact that a temporal relationship existed between Plaintiff's job duties and the onset of his left elbow osteoarthropathy.  As this Court well-knows, however, the existence of a temporal relationship is entirely insufficient to pass muster under <u>Daubert</u>.  In short, Dr. Luber's admitted reasoning is as follows:

- In 2007, a CT scan revealed that Plaintiff had degenerative osteoarthropathy of his left elbow, among other conditions; (Ex. A at 16:6-15.)

- Plaintiff worked for the railroad for approximately thirty years;

- Thus, because Plaintiff worked for the railroad for thirty years, it must have been the railroad activities that contributed to the development of Plaintiff's left elbow osteoarthropathy.

(Ex. A at 70:11-22.)  In fact, Dr. Luber admitted that the basis of his opinion is the existence of a temporal relationship between Plaintiff's work and degenerative condition.  (<u>Id.</u> at 71:5-11.)  Dr. Luber's reasoning is precisely the type of *post hoc ergo propter hoc* testimony that <u>Daubert</u> and its progeny protects against.  Accordingly, this Honorable Court should preclude Dr. Luber from testifying at trial.

Moreover, Dr. Luber's opinions lack the reliability required by <u>Daubert</u> and its progeny because, at the time he authored his report as well as at his recent deposition, Dr. Luber had absolutely no knowledge whatsoever of Plaintiff's actual job duties with Defendants.  Dr. Luber admitted: (1) that he never had a single conversation with Plaintiff regarding his work activities

4

Defendants entailed; (2) that he is not familiar with railroad work; (3) that he never performed any scientific analysis of the activities Plaintiff had to perform at work; (4) that he never performed any scientific analysis of any exposure Plaintiff had in the workplace.; and (5) that he relied on vague and inapplicable job descriptions to reach his opinions.   The following exchanges took place at Dr. Luber's deposition:

Q.    You never worked at the railroad, did you?

A.    I did not.

Q.    You have never studied railroad work activities, have you?

A.    No.

***

Q.    You've never spoken with Mr. Crowther about his tools that he used in the workplace, correct?

A.    I have not.

***

Q.    Now, do you have any idea how frequently Mr. Crowther at any point in his railroad career was required to do any of the activities that you pointed to?

A.    No.

Q.    Do you have any idea what amount of force was required to do any of those activities?

A.    No.

Q.    Any idea what the angle of his elbow was when he was doing those postures or doing those activities?

A.    No.

Q.    Any idea of what any of the postures were when he was performing the activities with the tools?

A.    No.

Q.      Do you know the weight that the tools weighed?

A.      No.

Q.      You've never studied that, have you?

A.      No.

Q.      And you don't have any data that has been made available to you as to those specific issues, have you?

A.      No.

Q.      So you simply don't know how many times he had to use any of these tools on any given day at any point in time during his career?

A.      I do not.

Q.      You don't know how much downtime he had during the course of the day?

A.      I don't.

Q.      How much rest time?

A.      I do not.

Q.      How many breaks?

A.      Correct.

Q.      How many days a week he worked?

A.      Correct.

Q.      Whether or not he was furloughed?

A.      Correct.

(Ex. A at 74:7-12, 77:7-11, 79:24-25, 80, 81:2-17.)

Perhaps of even greater significance is that, despite Dr. Luber's admitted ignorance of Plaintiff job activities, he nonetheless made a baseless assumption as to the "repetitiveness" and "excessiveness" of Plaintiff's work activities.   Indeed, Dr. Luber opined that Plaintiff's left

elbow condition "appeared to be related to ***repetitive heavy use*** of his left elbow[.]"  (Id. at 33:5-6.) (Emphasis added.)  Dr. Luber further opined that "***excessive repetitive motion***" contributed to the development of Plaintiff's left elbow condition.   (Id. at 33:20-25.) (Emphasis added.)  Dr. Luber's opinions are clearly based on unqualified, non-specific and undefined (and obviously one-sided and prejudicial) adjectives including "***excessive***," "***repetitive***," and "***heavy***," to name a few, to describe Plaintiff's purported job activities.  As noted, however, Dr. Luber has absolutely no idea how often Plaintiff performed any given activity, how heavy his tools were, or the force required to perform any activity.  (Id. at 80.)  Again, it is entirely unclear to Defendants how Dr. Luber reached his opinions when, aside from a brief job description he read, he admittedly has no idea what Plaintiff's work activities involved.  Dr. Luber's opinions are clearly nothing more than baseless conjecture.

In fact, Dr. Luber admitted that Plaintiff could have been performing any activity, not necessarily railroad activity, and developed left elbow osteoarthropathy.  (Id. at 71:12-14.)  Dr. Luber opined that Plaintiff could have developed his left elbow condition if he worked as a carpenter, plumber or a police officer – anything that involved repetitive motion of his left arm, in Dr. Luber's opinion, could have caused or contributed to Plaintiff's condition.  (Id. at 71:15-22, 72:77-12.)

It is also of particular importance that Dr. Luber relied on the job descriptions of a trackman and welder, which were provided by Plaintiff's counsel, to base his opinions.[2]  By Plaintiff's own testimony, however, between 2002 and 2006, he did not work as a trackman and

---

[2] It is of particular importance that Dr. Luber also testified that he based his opinion on his treatment of Plaintiff, but then admittedly never had a conversation with Plaintiff about his job activities.  Defendants are at a loss as to how Dr. Luber expects to offer the opinion that Plaintiff's work activities contributed to his left elbow osteoarthropathy when he never even spoke to Plaintiff about his job activities and admittedly has no knowledge of railroad activities, the tools Plaintiff used and with what frequency Plaintiff performed any given task.  (Ex. A at 68, 75, 80.)

only worked as a welder 10% of the time.  Rather, for the last six years of railroad career, and

nearly eight years before he became symptomatic, Plaintiff worked primarily as a flagman and

track inspector.  Dr. Luber admitted that he has never even heard of the job of flagman or track

inspector, and was definitely never provided with a job description for either position.  Indeed,

the following exchange took place at Dr. Luber's trial deposition:

> Q.      You've never heard of the jobs of flagman or track inspector, have you?
>
> A.     I have not.
>
> Q.     And you've given your opinions today in terms of the cause and all of that based on the job descriptions that Mr. Joyce gave you?
>
> A.     Yes.
>
> Q.     Which are the job descriptions of trackman and welder, correct?
>
> A.     Yes.
>
> Q.     Not track inspector or flagman, correct?
>
> A.     I have not seen those job descriptions.

(Ex. A at 45:9-23.)

Dr. Luber's opinion also lacks the reliability required by Daubert because it is not based

on any scientific evidence.  As noted, Dr. Luber offered the medical causation opinion that

Plaintiff's work activities contributed to the development of his left elbow osteoarthropathy.  Dr.

Luber admitted, however, that he is completely unaware of any scientific literature that supports

his opinion.  The following exchanges took place at Dr. Luber's trial deposition:

> Q.     We will not find an article which says that a person that works on the railroad like Mr. Crowther did can develop osteoarthritis in the elbow, will we?
>
> A.     I don't know that specifically.
>
> Q.     You've never gone and looked for one, have you?

A.      I have not.

Q.      And you have not based your opinion on any such study, have you?

A.      I have not.

Q.      As a matter of fact, you have not based your opinion on any objective scientific evidence, have you?

A.      I have based my opinion on my treatment of Mr. Crowther.

Q.      Okay, your treatment of Mr. Crowther.  But not on any objective scientific evidence correct?

A.      Correct.

Q.      You have not based your opinion on any article, any study in a scholarly journal, medical journal, which supports your opinion that you can actually -- that a person can actually develop osteoarthritis in his elbow as a result of railroad activities?

A.      Correct.

(Ex. A at 67:16-25, 68:2-21.)

Dr. Luber further testified that there are absolutely no scientific studies that suggest a dose-response relationship exists between railroad activity, such as the activities Plaintiff performed, and left elbow osteoarthropathy.  (Id. at 83:13-22.)  Indeed, Dr. Luber testified:

Q.      There are not any studies that you know of that say Mr. Crowther swung a hammer X amount of times that that was going to cause him to have arthritis?

A.      No.

Q.      There aren't any studies out there which would show any minimum thresholds of activity are known to cause arthritis of the elbow?

A.      Not that I am aware of.

(Id.)  Dr. Luber also admittedly performed no scientific analysis of Plaintiff's job activities or his alleged exposures before offering his opinions.  (Id. at 83:23-25, 84:2-4.)

Dr. Luber's opinions are clearly based exclusively on his own subjective belief and speculation, and not on any reliable scientific analyses or methods, or any facts or data which have been applied reliably to the facts of this case.

WHEREFORE, for all the above-stated reasons, Defendants' Motion should be **<u>ALLOWED</u>**.

Respectfully submitted,
CSX Transportation, Inc.,
by its attorneys,


 /s/  Heather M. Gamache
Michael B. Flynn, BBO# 559023
mflynn@flynnwirkus.com
Heather M. Gamache, BBO# 671898
hgamache@flynnwirkus.com
FLYNN & WIRKUS, P.C.
400 Crown Colony Drive, Suite 200
P.O. Box 699242
Quincy, MA 02269
T: (617) 773-5500
Dated:  December 20, 2010          F: (617) 773-5510

## <u>CERTIFICATE OF SERVICE</u>

I, Heather M. Gamache, attorney for Defendants hereby certify that I have served true and correct copies of the foregoing upon all counsel of record electronically via *CM/ECF* this 20th day of December, 2010.

/s/ Heather M. Gamache
Heather M. Gamache, Esq.