UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
SPRINGFIELD DIVISION

| | |
|---|---|
| GEOFFREY CROWTHER,<br>        Plaintiff,<br>    v.<br><br>CSX TRANSPORATION, INC. and<br>CONSOLIDATED RAIL CORP,<br>        Defendant<br><br>AND<br><br>GEOFFREY CROWTHER,<br>        Plaintiff,<br>    v.<br><br>CSX TRANSPORTATION, INC. | 3:09-cv-10334-MAP<br><br><br><br><br><br><br><br><br>3:09-cv-11467-MAP |

## DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO RULE 50(a) OF THE FEDERAL RULES OF CIVIL PROCEDURE

Defendants CSX Transportation, Inc. ("CSXT") and Consolidated Rail Corporation ("Conrail") (hereinafter referred to collectively as "Defendants") submit this Motion for Judgment as a Matter of Law and in support thereof state as follows:

## I.        INTRODUCTION

Plaintiff has not met his burden of proving, by a fair preponderance of the evidence:

1.        That Conrail negligently failed to provide Plaintiff with a reasonably safe place to work;

2.        That CSXT negligently failed to provide Plaintiff with a reasonably safe place to work;

3.        That it was reasonably foreseeable to Conrail that Plaintiff would develop arthritis as a result of his work activities;

4.        That it was reasonably foreseeable to CSXT that Plaintiff would develop arthritis as a result of his work activities;

5.      That Conrail negligently failed to provide Plaintiff with an ergonomic program or that Conrail otherwise negligently exposed Plaintiff to risk factors for the development of arthritis;

6.      That CSXT negligently failed to provide Plaintiff with an ergonomic program or that CSXT otherwise negligently exposed Plaintiff to risk factors for the development of arthritis;

7.      That Plaintiff's arthritic conditions were caused by his work activities, and/or Conrail's negligent failure to provide a reasonably safe workplace.

8.      That Plaintiff's arthritic conditions were caused by his work activities, and/or CSXT's negligent failure to provide a reasonably safe workplace;

9.      That Plaintiff's arthritic conditions were aggravated by his work activities and/or Conrail's negligent failure to provide a reasonably safe workplace; or

10.     That Plaintiff's arthritic conditions were aggravated by his work activities and/or CSXT's negligent failure to provide a reasonably safe workplace.

Defendants also contend that Plaintiff has failed to meet, by a fair preponderance of the evidence, his burden of proving that he complied with the FELA three-year statute of limitations in that he has failed to demonstrate that he neither knew nor should have known that he had developed arthritis and that it was potentially related to his work activities, less than three years prior to September 21, 2007.

Plaintiff has also failed to meet, by a fair preponderance of the evidence, his burden of proving that he complied with the FELA three-year statute of limitations in that he has failed to demonstrate that he neither knew nor should have known that his arthritic conditions were aggravated and that the aggravation was potentially related to his work activities, less than three years prior to March 5, 2009.  Instead, with respect to the statute of limitations, the evidence actually demonstrates that Plaintiff was well-aware of his arthritic conditions and their potential

2

work-relatedness prior to September 21, 2004, and certainly prior to March 5, 2006, and no rational jury, based on the evidence Plaintiff has presented, could reach any different conclusion.

## II.   DISCUSSION OF LAW

### A.   Standard of Review

Pursuant to Rule 50(a) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may . . . resolve the issue against the party; and . . . grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. Rule 50(a).

### B.   Plaintiff Has Failed to Present A Scintilla of Evidence That His Work Activities Caused The Arthritic Conditions of His Bilateral Knees, Neck, Left Thumb or Left Elbow and Defendants are Entitled to Judgment as A Matter of Law

Based on the evidence before the Court, no reasonable juror could find that Plaintiff's work activities caused his underlying bilateral knee, neck, left thumb or left elbow conditions. Indeed, all of Plaintiff's medical experts clearly and unequivocally opined that Plaintiff's respective condition *was not caused* by his work activities. Defendants successfully elicited this testimony through cross-examination of Plaintiff's medical expert witnesses and not merely through impeachment testimony. To the extent Plaintiff relies on any opinions the doctors offered on direct examination, the opinions were merely offered in response to impermissibly confusing and misleading questions which blended together concepts of direct cause, contribution and aggravation. Indeed, on direct examination, each doctor offered an opinion in response to the same compound and misleading question, that is, for example, "[i]n your opinion did the excessive bending, stooping, crouching, kneeling, lifting and carrying as a trackman on

the railroad *contribute to the development of* [Plaintiff's arthritic condition.]"   Plaintiff never even attempted to elicit from his experts the opinion that his work activities *caused* his bilateral knee, neck or left thumb arthritic conditions.

### 1.    Plaintiff's Bilateral Knee Arthritis

Dr. Andrew Lehman, Plaintiff's only expert witness to offer an opinion regarding his bilateral knee condition, testified over and over again that Plaintiff's bilateral knee condition was caused by his previous sports injuries and subsequent surgeries in the 1970s and '80s and not by his work activities.  Indeed, Dr. Lehman opined that Plaintiff's work activities merely caused the symptom related to arthritis, that is, pain.  Indeed, Dr. Lehman testified:

> Q.    But your opinion here in this case, as you expressed it before tonight, was that Mr. Crowther's disease process, his arthritis, was caused by these prior injuries and these prior surgeries, correct?
>
> A.    Correct.
>
> Q.    The activities of his work did not cause it, correct?
>
> A.    They caused the symptoms related to it.
>
> Q.    They caused the symptoms.  In other words, eventually he started to feel pain, correct?
>
> A.    Correct.

(See Pl.'s Ex. 29 at 94:10-23.)  Of particular importance is that Dr. Lehman repeatedly offered this opinion throughout his entire cross-examination. In fact, he did so on at least five other occasions.  (Id. at 96:11-17; 109:14-19; 113:9-13; 113:24-25, 114:2-4.)

In addition, Dr. Lehman opined that, in his opinion, regardless of what Plaintiff did for a living, he was going to develop arthritis in his knees because he has no menisci.  (Id. at 86:5-9.) Based on Dr. Lehman's testimony, no reasonable juror could find that Plaintiff's work activities caused his underlying bilateral knee arthritis and Defendants are entitled to judgment as a matter

of law.   Perhaps of greatest significance, however, is that Plaintiff himself admitted that his bilateral knee condition directly resulted from his previous injuries. In fact, Plaintiff admitted on Dr. Lehman's "New Patient Medical Questionnaire" that his bilateral knee pain was the result of a fall in 1977.  (See Defs.' Ex. O-9.)  Based on Dr. Lehman's testimony and Plaintiff's own admissions, no reasonable juror could find that Plaintiff's work activities caused his underlying bilateral knee arthritis and Defendants are entitled to judgment as a matter of law.

### 2.    Plaintiff's Neck Arthritis

Dr. R. Scott Cowan, Plaintiff's only expert witness to offer an opinion regarding his degenerative disc disease (i.e., neck arthritis), testified that Plaintiff's work activities did not cause Plaintiff's neck arthritis.  Rather, Dr. Cowan testified that aging process caused Plaintiff's underlying non-railroad related arthritic condition.  (See Pl.'s Ex. 12 at 83:10-16; 133:23-25, 134:2.)  As to any causal connection between the railroad and Plaintiff's underlying pre-existing non work-related neck arthritis, Dr. Cowan merely offered the opinion that Plaintiff's work activities contributed to the aggravation of Plaintiff's underlying condition.  Dr. Cowan offered the following testimony:

Q.    Is that still your opinion?

A.    My opinion is I would adjust it slightly in that we have the work "aggravation" or the phrase "aggravation of symptoms versus aggravation of actual disease process" and then the follow-up question in my opinion today would be that we have an aggravation of the actual disease process as opposed to just symptomology.[1]

---

[1] Defendants' acknowledge that Dr. Cowan offered this opinion off the video record and, as such, the jury was not presented with this testimony at trial.  However, Defendants made this testimony part of the record in Defendants' Reply in Support of Their Motion in Limine to Preclude Dr. Cowan as an Expert (Doc. No. 108.)  If necessary, Defendants will read this portion of the testimony to the jury.

As this Honorable Court is well-aware, however, Plaintiff's claim that Defendants' negligence aggravated his underlying pre-existing non work-related neck arthritis was dismissed as time-barred.

Also of particular importance is that Dr. Cowan testified that no matter what Plaintiff did for a living, railroad work or otherwise, he was going to develop degenerative disc disease.  (Id. at 88:21-24.)  Based on Dr. Cowan's testimony, no reasonable juror could find that Plaintiff's work activities caused his underlying neck arthritis and, therefore, Defendants are entitled to judgment as a matter of law.[2]

### 3.    Plaintiff's Left Thumb Arthritis

Dr. Steven M. Wenner, Plaintiff's only expert witness to offer an opinion regarding his left thumb condition, testified that Plaintiff's work activities did not cause his left thumb condition.   Instead, Dr. Wenner merely offered the opinion that Plaintiff's work activities contributed to the aggravation of his underlying pre-existing non work-related left thumb condition, arthritis.   Indeed, Dr. Wenner testified:

Q.    What you told me off the record is that your opinion is not that the underlying arthritis in Mr. Crowther's thumb was caused by his work activities, correct?

A.    Correct.

Q.    You are not venturing an opinion today or offering an opinion to this jury what actually caused the arthritis itself, correct?

A.    Correct.

Q.    That was there, something caused it and you are not offering an opinion what it was?

A.    Correct.

---

[2]Defendants hereby restate their argument that Dr. Cowan's testimony should be stricken in its entirety for Plaintiff's failure to disclose Dr. Cowan's trial testimony.  Indeed, it is undisputed that Dr. Cowan changed his medical causation opinion prior to trial and that Defendants were not made aware of the change thereby prejudicing their defense of Plaintiff's claims.

Q.      Your opinion is merely that the work activities over time contributed to an aggravation of that underlying arthritic condition, whatever originally caused it?

A.      Correct.

(See Pl.'s Ex. 34 at 68:12-23, 69:1-7.)  Dr. Wenner also offered the opinion that had Plaintiff been doing the same activities in another industry, non-railroad related, his symptoms would have been aggravated just the same.  (Id. at 92:4-14.)

Based on Dr. Wenner's testimony, no reasonable juror could find that Plaintiff's work activities caused his underlying left thumb arthritis and Defendants are entitled to judgment as a matter of law.[3]

### 4.      Plaintiff's Left Elbow Arthritis

Dr. Martin J. Luber, Plaintiff's only expert witness to offer an opinion regarding his left elbow arthritis, admittedly cannot state to a reasonable degree of medical certainty that Plaintiff's work activities caused his underlying left elbow condition.  Instead, Dr. Luber offers the opinion that a pre-existing Osteochondritis Dissecans lesion ("OCD") could be the cause of Plaintiff's left elbow arthritis.  Indeed, Dr. Luber testified that that he cannot determine, one way or another, whether the OCD or work activities caused Plaintiff's underlying left elbow arthritis in this case.  Dr. Luber testified:

Q.      It [OCD] in and of itself can cause the very condition which you saw in Mr. Crowther correct?

A.      It can.

***

Q.      It's impossible to tell for certain whether or not it was the OCD or whether it was the work activities?

---

[3] Defendants hereby restate their argument that Dr. Wenner's testimony should be stricken in its entirety for Plaintiff's failure to disclose Dr. Wenner's trial testimony.  Indeed, it is undisputed that Dr. Wenner changed his medical causation opinion prior to trial and that Defendants were not made aware of the change thereby prejudicing their defense of Plaintiff's claims.

A.      With absolute certainty, correct.

In any event, Dr. Luber did opine that, regardless of what work activities Plaintiff engaged in, railroad or otherwise, the activities would have caused Plaintiff's underlying left elbow arthritis. Accordingly, based on Dr. Luber's testimony, no reasonable juror could find that Plaintiff's work activities caused his underlying left elbow arthritis and Defendants are entitled to judgment as a matter of law.

    C.    **Plaintiff Has Failed to Present A Scintilla of Evidence That His Work Activities Aggravated His Underlying Pre-Existing Non Work-Related Bilateral Knee Arthritis and Defendants are Entitled to Judgment as A Matter of Law**

Based on the evidence before the Court, no reasonable juror could find that Plaintiff's work activities aggravated his underlying pre-existing non work-related bilateral knee condition, arthritis. Dr. Lehman, Plaintiff's only expert witness to offer an opinion regarding his bilateral knee condition testified that, at best, Plaintiff's work activities merely aggravated Plaintiff's symptoms and did not aggravate Plaintiff's underlying pre-existing non work-related condition. Again, to the extent Plaintiff relies on the opinion Dr. Lehman offered on direct examination, Dr. Lehman's opinion was offered in response to an impermissibly confusing and misleading question. Indeed, on direct examination, Dr. Lehman responded to the following compound and misleading question, "[i]n your opinion did excessive bending, stooping, crouching, kneeling, lifting and carrying as a trackman at the railroad aggravate, worsen, exacerbate Geoff Crowther's bilateral knee degenerative joint disease?" Based on this question alone, there is absolutely no way to determine whether Dr. Lehman's opinion reflects aggravation of the underlying disease process or merely aggravation of Plaintiff's symptoms, i.e., pain. On cross-examination, however, Defendants specifically clarify what opinion Dr. Lehman is offering to the jury:

Q.      The activities of his work did not cause it, correct?

> A.   They caused the symptoms related to it.
>
> Q.   They caused the symptoms.  In other words, eventually he started to feel pain, correct?
>
> A.   Correct.

(Pl.'s Ex. 29 at 94:16-23.)  In addition, Dr. Lehman specifically opined for the jury that x-rays taken of Plaintiff knee in 1986 revealed exactly the same condition he suffered from in 2007, thereby indicating that no evidence existed to suggest an aggravation of the underlying disease process.  Dr. Lehman testified that the osteophyte formations present in 1986 were located in the same places as in 2007.  (Id. at 104:17-25, 105:2-4, 11-18.)  Moreover, Dr. Lehman testified:

> Q.   And you also note on your x-ray, just as was noted 21 years earlier in 1986, that he had arthritis in all three compartments of the knee, correct?
>
> A.   Correct.

(Id. at 106:9-13.)

Perhaps of greatest significance is the fact that Dr. Lehman opined that regardless of what activity Plaintiff performed, railroad or otherwise, he was eventually going to feel symptoms (pain) based on the condition of his knees.  (Id. at 95.)  Accordingly, based on Dr. Lehman's testimony, no reasonable juror could find that Plaintiff's work activities aggravated his underlying pre-existing non work-related bilateral knee arthritis and Defendants are entitled to judgment as a matter of law.

**D.   Plaintiff Has Failed to Present A Scintilla of Evidence That His Work Activities Aggravated His Underlying Pre-Existing Non Work-Related Left Thumb Arthritis and Defendants are Entitled to Judgment as A Matter of Law**

Based on the evidence before the Court, no reasonable juror could find that Plaintiff's work activities aggravated his underlying pre-existing non work-related left thumb arthritis.

Indeed, Plaintiff has failed to present any evidence whatsoever that his thumb condition worsened. Plaintiff's own medical expert and treating physician, Dr. Wenner, testified that radiographic scan taken in 2005 of Plaintiff's left thumb revealed several arthritis of the metacarpalphalangeal joint. Dr. Wenner admitted, however, that he did not take or review any scans of Plaintiff's left thumb prior to his surgery his 2007. Instead, Dr. Wenner only took post-surgery scans. As such, there is absolutely no objective evidence that Plaintiff's work activities aggravated his underlying pre-existing non work-related left thumb arthritis. Accordingly, Defendants are entitled to judgment as a matter of law.

### E.    Plaintiff's Claims That Defendants' Negligence Caused His Bilateral Knee, Neck and Left Thumb Conditions Are Time-Barred

Assuming *arguendo* that Plaintiff presented sufficient evidence for the jury to find that Defendants' negligence caused his bilateral knee, neck and left thumb conditions, which he has not, Plaintiff has failed to meet, by a fair preponderance of the evidence, his burden of proving that he complied with the FELA three-year statute of limitations in that he has failed to demonstrate that he neither knew nor should have known that he had developed arthritis and that it was potentially related to his work activities, less than three years prior to September 21, 2007.

Of particular importance is that it is not Defendants' burden to prove lack of compliance with the FELA's statute of limitations. Rather, the burden lies with Plaintiff to demonstrate that he did in fact bring his claims in a timely fashion by proving that he did not suffer from the conditions which are the subject of this lawsuit prior to September 21, 2004, i.e., that the conditions which are the subject of this action are separate and distinct from the conditions he suffered from pre-2004. See Emmons v. S. Pac. Transp. Co., 701 F.2d 1112 (5th Cir. 1983) (holding that burden of proof is on the claimant to allege and to prove that his cause of action was commenced within the three-year period). Here, Plaintiff has clearly failed to meet that

burden.  In fact, aside from the opinion testimony offered by Plaintiff's medical experts as well as medical records which have been offered into evidence, Plaintiff has offered no evidence proving he complied with the three-year statute of limitations.  Thus, the Court must rely exclusively on Plaintiff's experts' testimony and Plaintiff's medical records in reaching its decision here.

> **1.      Plaintiff Knew or Should Have Known About His Bilateral Knee Condition and The Potential Cause Thereof Prior to September 21, 2004**

Assuming *arguendo* that this Court finds that Plaintiff presented sufficient evidence for the jury to conclude that Plaintiff's work activities caused his underlying bilateral knee condition (which he did not as his only expert on the issue, Dr. Lehman, testified that, in his opinion, Plaintiff's prior injuries and surgeries caused his bilateral knee condition), this Court must charge Plaintiff with knowledge of his knee condition, arthritis, as early as April 24, 1986, given that he was definitively diagnosed with degenerative arthritis of his right knee on that date.  (See Defs.' Ex. YY.)  In fact, an x-ray of Plaintiff's right knee dated April 24, 1986, indicated an extremely severe degree of osteoarthritis change involving the medial and lateral aspect of the right knee joint.  (Id.)  Thereafter, on March 31, 1998, Plaintiff admitted that he had bothersome knees and, more specifically, identified arthritis as his diagnosis.  (See Defs.' Ex. N-1.)

Similarly, Plaintiff knew or should have known of his alleged left knee condition, arthritis, on or before January 17, 2003, when Allan Baustin, M.D., Plaintiff's primary care physician, specifically noted Plaintiff suffered from marked arthritic changes in his left knee. (See Defs.' Ex. FFF.)   Indeed, Dr. Baustin testified that, during his January 17, 2003, examination of Plaintiff he identified physical findings of arthritis of Plaintiff's left knee.  Dr. Baustin further testified that he would have discussed these findings with Plaintiff.  Most importantly, on April 9, 2007, during a physical examination with his treating physician, John

Macatee, D.O., Plaintiff admitted that his bilateral knee pain started in 2002 and "was probably due to overuse at work." (See Defs.' Ex. O-6.)

Plaintiff's bilateral knee condition, prior to September 21, 2004, was not and cannot merely be labeled "de minimis" aches and pains. As early as 1986 and no later than 2003, Plaintiff received a clear diagnosis, arthritis, from several physicians and admittedly attributed his conditions to work. More importantly, Plaintiff himself admittedly attributed his bilateral knee pain to an alleged work-related injury which occurred in 1977. (See Defs.' Ex. O-9.) Thus, Plaintiff thought, or at least should have thought, that his bilateral knee condition was potentially related to his work activities well-before September 21, 2004. Accordingly, Plaintiff's claim that Defendants' negligence caused his bilateral degenerative knee condition is time-barred and Defendants are entitled to judgment as a matter of law.

### 2. Plaintiff Knew or Should Have Known About His Alleged Neck Condition and The Potential Cause Thereof Prior to September 21, 2004

As with Plaintiff's bilateral knee arthritis, Plaintiff knew, or should have known, of his neck arthritis prior to September 21, 2004. Indeed, on October 4, 2002, Plaintiff presented to Dr. Baustin with complaints of neck pain. (See Defs.' Ex. BBB.) An x-ray conducted on October 8, 2002, revealed degenerative disc disease, arthritis, of Plaintiff's cervical spine at multiple levels of his neck including most prominently at the C5-6 level. (See Defs.' Ex. O-5.) Interestingly, Plaintiff does not dispute telling Dr. Baustin that he suffered from neck pain in 2002, nor does Plaintiff admits that Dr. Baustin informed him, in 2002, he had degenerative disc disease, arthritis, at multiple levels of his neck. More importantly, Dr. Baustin testified that he would have told Plaintiff that the x-rays revealed evidence of arthritic changes in his neck.

In addition, Dr. Cowan, Plaintiff's only expert witness as to this condition, testified that, in his opinion, no later than October 2002, as confirmed by an x-ray report at or around that time,

Plaintiff had a confirmed diagnosis of degenerative disc disease (otherwise known as arthritis), and had been experiencing symptoms (i.e., pain) associated with his neck arthritis for several years.  (Pl.'s Ex. 12 at 111.)  More specifically, Dr. Cowan testified that, based on Plaintiff's medical records, Plaintiff was actively having symptoms associated with his diagnosed neck arthritis in 2002 when he was treating with Dr. Rehman.  Dr. Cowan opined that Plaintiff had obviously had degenerative disc disease for several years and at least as early as 2002.  (Id.)

Plaintiff's diagnosed neck condition, prior to September 21, 2004, was not and cannot be merely labeled "de minimis" aches and pains.  It is undisputed that in 2002 Plaintiff received a clear diagnosis, arthritis, from Dr. Baustin.  In 2006, Plaintiff's neck arthritis was merely confirmed by Dr. Cowan.  More importantly, in 2002 Plaintiff admittedly had a conversation with his primary care physician, Dr. Baustin, regarding the work-relatedness of his neck symptoms.  Thus, at that time, Plaintiff thought, or at least should have thought, that his neck condition was potentially related to his work activities.  In fact, after Dr. Baustin told him, in 2002, to stop doing physical labor, Plaintiff stopped welding altogether and "bid" into less physical jobs.  Accordingly, Plaintiff's claim that Defendants' negligence caused his neck arthritis is time-barred and Defendants are entitled to judgment as a matter of law.   Plaintiff, therefore, has no remaining claims regarding his neck arthritis as this Court has already ruled that Plaintiff's aggravation claim related to his neck is time-barred.

### 3.     Plaintiff Knew or Should Have Known About His Alleged Left Thumb Condition and The Potential Cause Thereof Prior to September 21, 2004

Assuming *arguendo* that this Court finds that Plaintiff presented sufficient evidence for the jury to conclude that Plaintiff's work activities caused his underlying left thumb condition, which he did not as his only expert on the issue, Dr. Wenner, testified that, in his opinion, Plaintiff's work activities merely contributed to the aggravation of his underlying pre-existing

non work-related left thumb condition, Plaintiff admittedly knew about his left thumb arthritis prior to September 21, 2004. Indeed, Dr. Wenner testified that Plaintiff first presented to him on September 26, 2005 for treatment of chronic left thumb pain and reported that his symptoms *had been present for several years* and were gradually worsening. Dr. Wenner testified that Plaintiff's left thumb pain had certainly been present for more than two years and at least as far back as 2003. More importantly, based on the fact that Plaintiff admittedly attributed his bilateral knee condition to his work activities and had been informed by Dr. Baustin that the symptoms related to his neck arthritis were related to his work activities, it cannot be disputed that Plaintiff thought, or at the very least should have thought, that a potential relationship existed between his left thumb condition and his work activities as early as 2003. Accordingly, Plaintiff's claim that Defendants' negligence caused his left thumb arthritis is time-barred and Defendants are entitled to judgment as a matter of law.

> **F.      Plaintiff's Claims That Defendants' Negligence Aggravated His Underlying Pre-Existing Non Work-Related Bilateral Knee, Neck and Left Thumb Conditions Are Time-Barred and Defendants Are Entitled to Judgment as A Matter of Law**

Plaintiff has also failed to meet, by a fair preponderance of the evidence, his burden of proving that he complied with the FELA three-year statute of limitations in that he has failed to demonstrate that he neither knew nor should have known that his arthritic conditions were aggravated and that the aggravation was potentially related to his work activities, less than three years prior to March 5, 2009.

As noted <u>supra</u>, it is not Defendants' burden to prove lack of compliance with the FELA's statute of limitations. Rather, the burden lies with Plaintiff to demonstrate that the he did in fact bring his claims in a timely fashion by proving that he did not suffer from the conditions which are the subject of this lawsuit prior to March 5, 2006. <u>See</u> <u>Emmons</u>, 701 F.2d

1112 (5th Cir. 1983) (holding that burden of proof is on the claimant to allege and to prove that his cause of action was commenced within the three-year period).   As with Plaintiff's direct causation claims, here, Plaintiff has clearly failed to meet that burden.   In fact, aside from the opinion testimony offered by Plaintiff's medical experts as well as medical records which have been offered into evidence, Plaintiff has offered no evidence proving he complied with the three-year statute of limitations as to his aggravation claims.   Instead, on redirect examination, Plaintiff admitted that, by 2005, he knew about his bilateral knee, left thumb and left elbow conditions and related each condition to his work activities.   Plaintiff, therefore, admittedly knew about his conditions and related them to his work activities more than three years prior to filing his lawsuit.   Accordingly, Defendants are entitled to judgment as a matter of law.   If Plaintiff's admissions are not enough, and they should be, the Court must also consider Plaintiff's experts' testimony and Plaintiff's medical records in reaching its decision here.

     **1.**     **Plaintiff Knew or Should Have Known About The Alleged Aggravation of His Underlying Pre-Existing Non-Work Related Bilateral Knee Condition and The Potential Cause Thereof Prior to March 5, 2006**

Again, assuming *arguendo* that this Court finds that Plaintiff presented sufficient evidence for the jury to conclude that Plaintiff's work activities aggravated his underlying  pre-existing non work-related bilateral knee condition (which he did not as his only expert on the issue, Dr. Lehman, testified that, in his opinion, Plaintiff's work activities merely caused the aggravation of symptoms, i.e, caused him to feel pain, and did not aggravate his underlying pre-existing non work-related condition) this Court must charge Plaintiff with knowledge that his work activities aggravated his bilateral knee condition well-before March 5, 2006.   Indeed, Dr. Lehman testified that when Plaintiff presented to him in February 2007, for treatment of his bilateral knee pain, Plaintiff complained that he had been experiencing pain for the last two

years.  (Defs.' Ex. O-9.)  In fact, Plaintiff completed a questionnaire on which he admitted that he had been experiencing pain for the "last two years."  (Id.)  Thus, Plaintiff had admittedly been having bilateral knee symptoms going back at least as far as February 2005 and certainly before March 5, 2006.  Again, Plaintiff himself admittedly attributed his bilateral knee pain to an alleged work-related injury which occurred in 1977.  (Id.)  Thus, Plaintiff thought, or at least should have thought, that the aggravation of his underlying pre-existing non work-related bilateral knee arthritis was potentially related to his work activities well-before March 5, 2006. Accordingly, Plaintiff's claim that Defendants' negligence aggravated his underlying pre-existing non work-related bilateral degenerative knee condition is time-barred and Defendants are entitled to judgment as a matter of law.

> **2.      Plaintiff Knew or Should Have Known About The Alleged Aggravation of His Underlying Pre-Existing Non Work-Related Left Thumb Condition and The Potential Cause Thereof Prior to March 5, 2006**

Plaintiff testified on direct examination that the ties in New Bedford were so hard that it caused the hydraulic spiker to vibrate when he operated it, which in turn caused him to feel pain in his left thumb.  Plaintiff testified that this pain led him to seek treatment from Dr. Wenner in September 2005.  Dr. Wenner testified that x-rays conducted of Plaintiff's left thumb in September 2005 revealed advanced arthritic deterioration of his thumb metacarpophalangeal joint.  Plaintiff also admitted on direct examination that he thought, at the time he treated with Dr. Wenner in the fall of 2005, that his left thumb arthritis was work-related.  Based on Plaintiff's and Dr. Wenner's testimony alone, it is absolutely indisputable that Plaintiff knew about the alleged aggravation of his underlying pre-existing non work-related left thumb condition and the potential relationship with his work activities as early as September 2005 and certainly before March 5, 2006.  Accordingly, Plaintiff's claim that Defendants' negligence

aggravated his underlying pre-existing non work-related left thumb condition is time-barred and Defendants are entitled to judgment as a matter of law.

> **3.      Plaintiff Knew or Should Have Known About The Alleged Aggravation of His Underlying Non Work-Related Left Elbow Condition and The Potential Cause Thereof Prior to March 5, 2006**

Dr. Luber, Plaintiff's only medical expert with regard to his left elbow arthritis, testified on *direct examination* that when Plaintiff presented to him on February 26, 2007, Plaintiff complained of mechanical locking episodes of his left elbow *over the past several years*. The plain and obvious definition of "several" is, at a minimum, more than one. As such, at the time Plaintiff presented to Dr. Luber on February 26, 2007, he had been experiencing mechanical locking symptoms of his left elbow at least as far back as February 26, 2006, and certainly before March 5, 2006.

Based on Dr. Luber's testimony and Plaintiff's admitted knowledge of the potential relationship his work activities had with his other conditions, it is indisputable that Plaintiff's claim that Defendants' negligence aggravated his underlying pre-existing non work-related degenerative left elbow condition is time-barred. Accordingly, Defendants are entitled to judgment as a matter of law.

> **G.      Even if Plaintiff Offered Sufficient Reliable Evidence that His Railroad Work Activities Caused and/or Aggravated His Arthritic Conditions, Which He Has Not, Plaintiff Has Not Presented Any Evidence That Defendants Failed to Provide Him A Reasonably Safe Workplace and Defendants are Entitled to Judgment as A Matter of Law**

> **1.      Manpower, Tools and Equipment**

Plaintiff has failed to present any evidence whatsoever causally linking any perceived manpower or equipment issues to the development of his arthritis, to the extent he has presented any evidence at all on the issue. Instead, Plaintiff admitted that, in his opinion, his supervisors at

Conrail and CSXT (Roy Squires and Mike Wojtas) provided him with a reasonably safe work place as well as the equipment and tools necessary to perform his job safely.  Plaintiff also admitted that, over the years, Defendants actively sought to improve tools and equipment and purchased new tools and equipment as it became available.  Plaintiff (and his own witnesses) further testified that the increase in mechanized tools and equipment over the years has reduced the number of railroad employees it takes to perform certain tasks, thereby accounting for the alleged reduction in manpower, and also that the mechanization of the workplace has made it safer, more efficient and more comfortable.  Most importantly, Plaintiff testified that the mechanized tools and equipment Defendants introduced into the workplace have greatly reduced the amount of manual physical labor performed by railroad employees, including Plaintiff. Accordingly, a reasonable juror could not conclude that Defendants failed to provide Plaintiff with a reasonably safe workplace and Defendants are entitled to judgment as a matter of law.

**2.      Plaintiff's Liability Expert, Michael Shinnick, Admitted That Plaintiff's Arthritic Conditions Are Not Related to His Railroad Work Activities**

Michael Shinnick, Plaintiff's only liability expert, failed to offer any testimony that Plaintiff's arthritic conditions are work-related.  In fact, Dr. Shinnick admitted (and agreed) that, according to NIOSH, arthritis is not a work-related disorder and instead is considered a "non work-related musculoskeletal disorder."  Dr. Shinnick further testified that any "science" related to risk factors in the work place simply does not relate to arthritis.

Dr. Shinnick purported to offer the opinion that Defendants failed to provide Plaintiff with an adequate ergonomics program, however, Dr. Shinnick admitted that the Federal Railroad Administration does not even require that Defendants have an ergonomic program.  In any event Dr. Shinnick ultimately testified that, despite the fact that the railroads are not required by law to have an ergonomics program, Defendants ergonomic programs included routine physical

examinations, job analyses, comprehensive safety rules (which include a hearing loss program, back conservation program, occupational exposure management, lifestyle management, etc.) improved tools and equipment over the years and the replacement of manual labor with machines. Most importantly, to the extent Dr. Shinnick ultimately offered the opinion that Defendants did not provide Plaintiff with an adequate ergonomics program, which he did not, Dr. Shinnick did not opine that any alleged deficiency in the ergonomics programs, if any, caused Plaintiff's arthritis. Accordingly, no reasonable juror could conclude that Plaintiff's arthritis has anything at all to do with his work activities, including the absence or presence of an ergonomics program, and Defendants are entitled to judgment as a matter of law.

> **H.    Defendants are Entitled to Judgment as A Matter of Law on The Grounds That Plaintiff's Experts Have Failed to Offer Reliable Opinions Pursuant to Rule 702 of the Federal Rules of Evidence**

Defendants hereby reinstate their respective motions to preclude all of Plaintiff's experts on the grounds that their opinions are entirely unreliable because they lack the necessary factual foundation and the requisite scientific support required by Fed. R. Evid. 702 and <u>Daubert v. Merrell Dow Pharm.</u>, 509 U.S. 579, 589-591 (1993). That is, Plaintiff's experts did not apply any scientific analyses, principles or methods to this case. Instead, each expert bears out at trial that his opinions rest on the mere fact that a temporal relationship existed between Plaintiff's job duties and the onset of symptoms related to his arthritic conditions. As this Court well-knows, however, the existence of a temporal relationship is entirely insufficient to pass muster under <u>Daubert</u>.

Plaintiff's experts admitted that there are no peer-reviewed, published, scientific studies that demonstrate a causal, dose-response relationship between railroad-related work activities (indeed, any activities) and the development of arthritis. There are also no studies that establish

any threshold levels of movements, postures, vibrations or any other exposures that are known to cause arthritis. The experts also based their opinions on vague and self-serving job descriptions provided by Plaintiff's counsel. Moreover, these descriptions were of jobs Plaintiff was not performing over the last five years of his career (for instance, Dr. Cowan based his opinion on a "welder" job description) or the last twenty years of his career (for instance, Dr. Lehman, Dr. Luber and Dr. Wenner thought Plaintiff was a trackman). Nor did any expert rely on scientific studies in forming his opinions. Plaintiff's experts also each admitted that they are unaware of any scientific evidence that Plaintiff's job activities could have caused his arthritic condition or the related symptoms.

Plaintiff's experts' opinions are clearly based exclusively on their own subjective belief and speculation, and not on any reliable scientific analyses or methods, or any facts or data which have been applied reliably to the facts of this case.

**H.      Plaintiff Has Failed to Present Any Evidence Whatsoever That Ballast Is Related to His Arthritic Conditions and Defendants are Entitled to Judgment as A Matter of Law on Plaintiff's Claim That Ballast and/or Poor Walking Conditions Caused His Arthritic Conditions**

Plaintiff is unable to present <u>any</u> evidence that walking on ballast, of any size, caused or aggravated his bilateral knee arthritis. Indeed, Dr. Lehman, Plaintiff's only medical expert as to his bilateral knee arthritis, did not offer any opinion whatsoever regarding ballast on either direct or cross-examination. In addition, Dr. Shinnick did not offer the opinion that Plaintiff was exposed to cumulative trauma and/or repetitive stress due to working in poor ground conditions and/or walking on ballast. In fact, Plaintiff has failed to present any evidence at all related to ballast.

Accordingly, Plaintiff has failed to present evidence of a causative relationship between ballast and his arthritic conditions. Defendants are, therefore, entitled to judgment as a matter of

law on Plaintiff's claims that ballast and/or poor walking conditions caused and/or aggravated his arthritic conditions.

WHEREFORE, for all the above-stated reasons, this Honorable Court should grant Defendants' Motion for Judgment as a Matter of Law.

Respectfully submitted,
CSX Transportation, Inc.,
by its attorneys,

 /s/  Heather M. Gamache_____
Michael B. Flynn, BBO# 559023
mflynn@flynnwirkus.com
Heather M. Gamache, BBO# 671898
hgamache@flynnwirkus.com
FLYNN & WIRKUS, P.C.
400 Crown Colony Drive, Suite 200
P.O. Box 699242
Quincy, MA 02269
T: (617) 773-5500
Dated: January 19, 2011                F: (617) 773-5510

## CERTIFICATE OF SERVICE

I, Heather M. Gamache, attorney for Defendants hereby certify that I have served true and correct copies of the foregoing upon all counsel of record electronically via *CM/ECF* this 19th day of January, 2011.

/s/ Heather M. Gamache
Heather M. Gamache, Esq.