IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| GEOFFREY CROWTHER | : | Civil Action No.  09-10334-MAP and |
| | : | 09-11467-MAP |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| CSX TRANSPORTATION, INC. | : | <u>ORAL ARGUMENT REQUESTED</u> |
| and | : | |
| CONSOLIDATED RAIL CORP. | : | |
| | : | |
| Defendants | : | |

<u>PLAINTIFF'S RESPONSE AND MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW</u>

The Plaintiff, Geoffrey Crowther, by and through his attorney, Thomas J. Joyce, III, responds in opposition to Defendants CSX Transportation, Inc. and Consolidated Rail Corp.'s Motion for Judgment as a Matter of Law as follows:

I.      <u>INTRODUCTION</u>:

This is an occupational injury action brought pursuant to an Act of Congress known as the Federal Employers' Liability Act (FELA), 45 U.S.C. Section 51, et seq.  Plaintiff, Geoffrey Crowther, claims occupational neck, bilateral knee, left elbow, and left thumb injuries, which were caused, contributed to, and/or aggravated, worsened and exacerbated, in whole or in part, by excessive exposure to occupational risk factors for cumulative-trauma injuries, including repetition, force, vibration and/or awkward postures, in his employment as a track laborer, track welder, track foreman, and track inspector (trackman) with Defendants, CSX Transportation, Inc. (CSX) and Consolidated Rail Corp. (Conrail).  CSX and Conrail failed to provide Geoffrey Crowther with adequate manpower and adequate tools and equipment to safely perform his job

duties. CSX and Conrail failed to provide Geoffrey Crowther with a timely and adequate comprehensive ergonomic, safety and medical management program to prevent or reduce the risk of occupational cumulative-trauma injuries. The railroad's safety, medical and claims departments did not communicate with each other about a comprehensive safety program to address any cumulative-trauma injuries. This fundamental failure prevented Defendants from proactively conducting work site analyses, hazard prevention and control, medical monitoring, and employee education and training, as to cumulative-trauma injuries. The railroad's safety training was concerned only with specific traumatic injuries and historically ignored occupational injuries that develop over time. Defendants failed to provide a reasonably safe place to work under the FELA.

Defendants have filed a motion seeking judgment as a matter of law on the basis of alleged lack of evidence of negligence and insufficient causation. Defendants further seek judgment as a matter of law on the basis of expiration of the statute of limitations. Defendants have already raised these same issues in Defendants' Motion for Summary Judgment, Defendants' Motion for Reconsideration, and several of Defendants' Motions in Limine, which were previously denied by this Honorable Court. For the reasons stated herein, and for the reasons previously set forth at length in Plaintiff's Responses in Opposition to Defendants' earlier motions as stated above, Defendants' Motion for Judgment as a Matter of Law should be denied.

II.     ARGUMENT:

Rule 50(a) of the Federal Rules of Civil Procedure is applicable to Defendants' Motion for Judgment as a Matter of Law. Rule 50(a) states:

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a

> claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

F.R.C.P. 50(a).

Geoffrey Crowther's occupational injury action was brought pursuant to an Act of Congress known as the Federal Employers' Liability Act (FELA), 45 U.S.C. Sec. 51, et seq. Congress and the United States Supreme Court have, over the years, consistently stated the purpose of the FELA is to protect and benefit railroad employees injured on the job. The FELA is to be liberally construed to allow railroad employees, such as Geoffrey Crowther, injured in the scope of their employment to recover from the railroad even where the railroad's negligence is minimal. *Rodriguez v. Deloroy Connecting Railroad Company*, 473 F. 2d 819 (6th Cir. 1973). In *Rogers v. Missouri Pacific Railroad Company,* 352 U.S. 500 (1957), the United States Supreme Court stated:

> The test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought.

*Rogers* at 506-07.

In *Pehowic v. Erie Lackawanna Railroad Company*, 430 F. 2d 697 (3rd Cir. 1970), at the close of the plaintiff's presentation of his FELA case, the railroad defendant moved for dismissal for failure to prove a prima facie case. The motion was granted and judgment was entered dismissing the action. The U.S. Court of Appeals for the Third Circuit reversed, stating in pertinent part:

> In his complaint the plaintiff asserted that the railroad was negligent in causing or permitting him to work in a dangerous location; the negligence specifically alleged was the failure to trim the brush and undergrowth. This negligence was asserted to have contributed to his injury. In dismissing the action, the district court concluded as a matter of law that the jury could not reasonably infer that the defendant's negligence contributed to plaintiff's injury.

- - -

A review of the decisions of the Supreme Court with reference to the integrity of the jury's function in these cases, keeping in mind the purposes of the Act and the liberal construction given it, teaches that a trial court is justified in withdrawing such issues from the jury's consideration only in those extremely rare instances where there is a zero probability either of employer negligence or that any such negligence contributed to the injury of an employee.

The district court concluded that there was no evidence from which the jury could infer a causal relation. Direct evidence is not essential. Circumstantial evidence is sufficient. *Rogers v. Missouri Pacific R. Co.,* 352 U.S. at 50*8*, n. 17, 77 S.Ct. 443, 449.

In *Gallick v. Baltimore & Ohio R. Co.,* 372 U.S. 108, 113-11*4*, 83 S.Ct. 659 (1963), the Supreme Court held there was sufficient evidence to sustain the jury's finding that an insect bite had been caused by the employer's breach of duty. The Court characterized the issue as "whether or not the insect was from or had been attracted by the pool" of stagnant water which had been present on the railroad property for some time. There was testimony by the plaintiff that he had seen similar such insects crawling on animal carcasses in the pool and testimony by medical witnesses that such pools attract and breed insects. Such circumstantial evidence was said to be sufficient to support a causal inference.

In this case the railroad is chargeable with notice of the existence of the brush and the presence of the bees in large concentrations. Mr. Pehowic testified that he had on a prior occasion notified the dispatcher and requested permission to leave the area because of these conditions. The railroad thus had notice of the existence of a hazardous condition, *Inman v. Baltimore & Ohio R. Co.,* 361 U.S. 13*8*, 80 S.Ct. 242, 4 L.Ed.2d 198 (1959); *Nivens v. St. Louis Southwestern R. Co.,* 425 F.2d 11*4* (C.A. 5, 1970). It is not unreasonable to conclude that some injuries from these conditions either separately or in combination were foreseeable by the employer, G*allick v. Baltimore & Ohio R. Co.*, 372 U.S. at 117-118, 83 S.Ct. 659, 9 L.Ed.2d 618. See also, R*inghiser v. Chesapeake & O. R. Co.*, 354 U.S. 901, 77 S.Ct. 1093 (1957).

From the facts presented, the jury could reasonably conclude that the defendant's omission to mitigate these conditions was a breach of its duty to provide its employees with a reasonably safe place to work. Further, it could infer the existence of a causal relation between that breach of duty and the injury sustained by the plaintiff. Even though equally reasonable alternative inferences are supportable, such an analysis would not be unsupported in reason. Viewing the evidence in a light most favorable to the plaintiff, we conclude that it was error for the district court to enter judgment for the defendant.

*Pehowic* at 698-700.

Summary judgment in an FELA case is appropriate "only in those extremely rare instances where there is a zero probability either of employer negligence or that any such negligence contributed to the injury of an employee...." *Hines v. Consolidated Rail Corporation*, 926 F. 2d 262, 268 (3rd Cir. 1991) (quoting *Pehowic v. Erie Lackawanna Railroad Company*, 430 F. 2d 697, 699-700 (3rd Cir. 1970).

Geoffrey Crowther began working for the railroad in 1975. As a track laborer, track welder, track foreman, and track inspector (trackman) with the railroad, Geoffrey Crowther was required to do an extreme amount of heavy repetitive work, utilizing certain track tools and equipment such as torches, electric and gas welding equipment, grinders, chipping guns, track chisels, sledge hammers, claw bars, spiking mauls, needle guns, air impact hammers and saws. He was also required to lift and carry heavy objects, and was exposed to excessive and harmful vibration. Geoffrey Crowther's job duties further required prolonged use of his arms in awkward and extended positions, and working in poor ground conditions and walking on improper and poorly maintained ballast. Many times he was required to perform his tasks without adequate tools and equipment and/or adequate manpower. Geoffrey Crowther has produced ample evidence of the negligence of Defendants through his own testimony, as well as through the testimony of Plaintiff's ergonomic expert, Michael D. Shinnick. Michael D. Shinnick testified that Plaintiff was sufficiently exposed to multiple risk factors to create a risk of injury from an ergonomic standpoint, and that Defendants failed to provide a reasonably safe place to work from an ergonomic perspective.

In *Aparicio v. Norfolk & Western Railway Company*, 84 F. 3d 803 (6th Cir. 1996), the Sixth Circuit considered an FELA occupational injury action involving a track maintenance

worker. Robert Andres, Ph.D., was the plaintiff's ergonomic expert in the *Aparicio* case. The Sixth Circuit in *Aparicio* stated:

> The testimony of Dr. Robert Andres, Aparicio's ergonomics expert, shows that there were ergonomic risk factors and known remedial measures that had been described and accepted by the scientific community. This information was widely published in trade and scientific journals. A jury could accept Dr. Andres' testimony and find that a reasonably prudent employer would have known about the risk factors and taken steps to ameliorate them.
> …
> Aparicio has presented more than a scintilla of evidence tending to prove that Norfolk & Western could reasonably have anticipated that a track laborer such as Aparicio working with the tools he was assigned to use was likely to develop an upper extremity cumulative trauma injury.

*Aparicio* at 803.

Geoffrey Crowther produced the expert medical testimony of his treating physicians and orthopedic surgeons, Dr. R. Scott Cowan, Dr. Andrew Lehman, Dr. Martin Luber, and Dr. Steven Wenner, with regard to this matter. Dr. Cowan, Dr. Lehman, Dr. Luber, and Dr. Wenner are Board Certified Orthopedic Surgeons with years of experience. They are familiar with the risk factors, both work related and non-work related, for cumulative-trauma injuries of the neck, knees, elbows and thumbs. Dr. Cowan, Dr. Lehman, Dr. Luber, and Dr. Wenner testified that Geoffrey Crowther's neck, bilateral knee, left elbow, and left thumb injuries were caused, contributed to, and/or aggravated, worsened and exacerbated, in whole or in part, by his exposure to excessive risk factors in his railroad work.

Dr. R. Scott Cowan testified in pertinent part as follows:

Q. Dr. Cowan, I would like to ask you a series of opinion questions and I request that you answer all of my opinion questions based upon the history you received, your physical examinations, your review of the diagnostic tests, your surgery, your medical treatment, your review of my letter, the job descriptions, your deposition and your experience. And I request that you answer all of my opinion questions based upon a reasonable degree of medical certainty. Dr. Cowan, in your opinion what was Geoff Crowther's diagnosis as to his neck?

A. Geoff Crowther's diagnosis as to his neck was disc degeneration, associated herniations and associated stenosis, meaning nerve tunnels were narrowed.

Q. In your opinion what caused that condition in Geoff's neck?

A. In my opinion the cause was, as I previously eluded to, a combination of environmental and genetic.

Q. When you say "environmental", you are talking about railroad work?

A. Yes, in this case.

Q. In your opinion what risk factors contributed to the development of Geoff Crowther's cervical disc disease?

A. What risk - -

Q. I guess, what environmental risk factors.

A. Well, the ones I am aware of are the ones that would have been as a result of his work which would have been predominantly the fact that he had to work in a position, in a physical position posture where he is leaning forward. He is a welder. He probably has on a fairly heavy helmet. And that would over time, over 30 years time apply stress to the neck that I would think would contribute to a degenerative disc condition.

(Please see Dr. Cowan's trial deposition, Page 47, Line 22 through Page 49, Line 15).

Dr. R. Scott Cowan further testified in pertinent part as follows:

Q. Dr. Cowan, in your opinion did excessive lifting, carrying, bending, stooping as a trackman and welder at the railroad contribute to the development of Geoff Crowther's cervical disc condition?

A. Yes.

Q. In your opinion did Geoff Crowther sustain a cumulative microtrauma to his neck as a result of excessive, strenuous physical labor on the railroad for 30 plus years?

A. Yes.

(Please see Dr. Cowan's trial deposition, Page 55, Line 9 through Line 19).

Dr. Andrew Lehman testified in pertinent part as follows:

Q. Dr. Lehman, I'd like to ask you a series of opinion questions and I request that you answer all of my opinion questions based upon the history you received, your physical examinations, your review of the diagnostic tests, your surgery, your medical treatment, your review of my letter from April 11, 2008, your review of the job descriptions from Conrail and CSX for trackman, your prior deposition and your experience. And I request that you answer all of my opinion questions based upon a reasonable degree of medical certainty.

A. Okay.

Q. Dr, Lehman, in your opinion what was Geoff Crowther's diagnosis with regard to his knees?

A. Osteoarthritis.

Q. And again, osteoarthritis is also known as degenerative joint disease of the knees/

A. Correct.

Q. In your opinion, what caused Geoff Crowther's bilateral knee degenerative joint disease?

A. I think the cause of arthritis is multifactorial. I think he had numerous issues that contributed to his development of arthritis.

Q. In your opinion what risk factors contributed to the development Geoff Crowther's bilateral knee degenerative joint disease?

A. I think his original injuries back in the 1970s. His subsequent meniscectomies had a lot to do with it. I think his ACL injury and subsequent reconstruction contributed to it. And I think 30 years on the railroad probably contributed to it as well.

Q. Did you consider both work related and non-work related risk factors when coming to that opinion?

A. I'm sorry. Could you repeat that?

Q. Did you consider both the - - my understanding is the surgeries from the '70s were not work related. They were sports related. You consider those in forming this opinion?

A. Correct.

Q. In your opinion did the excessive bending, stooping, crouching, kneeling, lifting

        and carrying as a trackman on the railroad contribute to the development of Geoff's bilateral knee degenerative joint disease?

A.     Yes.

Q.     In your opinion did Geoff Crowther's job as a trackman at the railroad aggravate, worsen, exacerbate his bilateral knee degenerative joint disease?

A.     Yes.

Q.     In your opinion did excessive bending, stooping, crouching, kneeling, lifting and carrying as a trackman at the railroad aggravate, worsen, exacerbate Geoff Crowther's bilateral knee degenerative joint disease?

A.     Yes.

Q.     In your opinion is Geoff Crowther's weight a contributing factor in the development of his osteoarthritis in his knees?

A.     No.

Q.     You don't consider him to be obese?

A.     Not at 6'1", 212 pounds, no.

Q.     In your opinion is Geoff Crowther's age a contributing factor in the development of his knee osteoarthritis?

A.     No. At the time of his surgery, he was only 55 years old.

Q.     Are there any other risk factors that you are aware of in Geoff Crowther's case aside from the prior knee injuries in the '70s with the surgeries and the prior work related knee injury in 1986 with the surgery that is a risk factor for this aside from his job at the railroad?

A.     Not that I am aware of.

(Please see Dr. Lehman's trial deposition, Page 36, Line 5 through Page 39, Line 20).

    Dr. Martin Luber testified in pertinent part as follows:

Q.     Dr. Luber, I would like to ask you a series of opinion questions and I request that you answer all of my opinion questions based upon the history, your examinations, your review of the diagnostic tests, your surgery, your review of the medical records, my letter to you, your narrative medical report, the job descriptions that you reviewed and your experience. I'd ask you to answer all of

> my opinion questions based on a reasonable degree of medical certainty. Dr. Luber, in your opinion what was Geoff Crowther's diagnosis as to his left elbow?

A. The diagnosis was degenerative osteoarthropathy of his left elbow accompanied with loose bodies.

Q. Also known as degenerative joint disease?

A. Degenerative joint disease.

Q. In your opinion what caused Geoff Crowther's left elbow degenerative joint disease?

A. It appeared to be related to repetitive heavy use of his left elbow. It may have been contributed to by an osteochondritis lesion. But that's, again, only supposition from the CT scan and proven by history.

Q. In your opinion was Geoff Crowther's job as a trackman, welder at the railroad for 30 plus years a contributing factor in the development of his left elbow degenerative joint disease?

A. Given the job descriptions that I've had an opportunity to review, it appears to be consistent with what would lead to and cause degenerative joint disease, yes.

Q. In your opinion did excessive repetitive motion of the left upper extremity contribute to the development of Geoff Crowther's left elbow degenerative joint disease?

A. Yes.

Q. In your opinion did Geoff Crowther's job at the railroad as a trackman, welder for 30 plus years aggravate, worsen, exacerbate his left elbow degenerative joint disease?

A. I believe it did.

Q. In your opinion was this - - I'm going to call it OCD because it's easier to pronounce. In your opinion was this OCD lesion a contributing factor in the development of his left elbow degenerative joint disease?

A. If in fact he had an OCD lesion, and again, that's what his CT scan would suggest, and OCD lesion is likely a contributing factor to what happened to his left elbow and may have contributed to the formation of the loose bodies.

Q. In your opinion is Geoff Crowther's age a risk factor or a contributing factor in the development of his left elbow degenerative joint disease?

  A.  While the instance of arthritis does increase with age, arthritis of the elbow is, again, very uncommon and typically does not seem to increase significantly with age. It is not the primary cause of arthritis in the elbow, and I would not believe it's a contributing factor to Mr. Crowther's condition.

(Please see Dr. Luber's trial deposition, Page 32, Line 5 through Page 35, Line 7).

  Dr. Steven Wenner testified in pertinent part as follows:

  Q.  Dr. Wenner, I'd like to ask you a series of opinion questions, and I request that you answer all of my opinion questions based upon the history you received, your examinations, your review of the diagnostic tests, your surgical procedure, your review of the medical records, my letter and your experience, and I ask you to answer all of my opinion questions based on a reasonable degree of medical certainty. In your opinion what was Geoff Crowther's diagnosis as to his left thumb?

  A.  Arthritis of the metacarpophalangeal joint.

  Q.  In your opinion what caused Geoff Crowther's left thumb arthritis?

  A.  In my opinion it's more likely caused by - -

MR. FLYNN: Objection please. I am sorry.

THE WITNESS: In my opinion it is more likely caused by repetitive trauma than it is by a disease traveling throughout his body.

  Q.  And in your opinion, what factors contributed to the development of Geoff Crowther's left thumb arthritis?

  A.  Repetitive trauma.

MR. FLYNN: Objection.

  Q.  In your opinion did excessive left upper extremity use at the railroad contribute to the development of Geoff Crowther's left thumb arthritis?

MR. FLYNN: Objection.

THE WITNESS: It's likely that it did.

  Q.  In your opinion did excessive upper extremity use at the railroad aggravate, worsen, exacerbate Geoff Crowther's left thumb arthritis?

    A.     Likely that it did.

    MR. FLYNN: Objection again.  Sorry.  And motion to strike.

    Q.     In your opinion did age play a role in Geoff Crowther's left thumb arthritis?

    A.     Not so likely.

    Q.     In your opinion are there any other risk factors out there that would have played a part in Geoff Crowther's left thumb arthritis?

    MR. FLYNN:  Objection.

    THE WITNESS:  I don't think so.

(Please see Dr. Wenner's trial deposition, Page 25, Line 2 through Page 26, Line 20).

    In *McBride v. CSX Transportation, Inc.*, U.S. Court of Appeals for the Seventh Circuit, Civil Action No. 08-3557 (March 2010), the Seventh Circuit recently stated:

> The central issue in this case is the proper standard for causation under the FELA. Stated another way, the question we must resolve is whether Section 1 of the FELA, 45 U.S.C. Sec. 51, abrogates the common-law rule of proximate cause.
>
> …
>
> In *Lisak v. Norfolk & Western Railway Co.*, 30 F. 3d 823 (7th Cir. 1994), we reviewed whether the district court had erred in entering summary judgment for the employer in an FELA case.  We stated: "The FELA is meant to provide a broad remedial framework for railroad workers and, in light of that purpose, is to be liberally construed in their favor. … Plaintiffs' burden in an FELA action is therefore significantly lighter than it would be in an ordinary negligence case. In a FELA action, the railroad is liable if 'the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury…' *Harbin v. Burlington N. R.R. Co.*, 921 F. 2d 129, 131 (7th Cir. 1990) (quoting *Rogers v. Missouri Pac. R.R. Co.*, 352 U.S. 500, 506 (1957)." *Id.* at 831-32.
>
> …
>
> The idea that *Rogers* relaxed the proximate cause requirement has been echoed by every other court of appeals.
>
> …

> Justice Ginsburg, concurring in (*Norfolk Southern Railway Co. v. Sorrell*, 547 U.S. 158 (2007)) …wrote..: "FELA was prompted by concerns about the welfare of railroad workers… 'We have liberally construed FELA to further Congress' remedial goal.' *Gottshall*, 512 U.S., at 543. With the motivation for FELA center stage in *Rogers*, we held that a FELA plaintiff can get to a jury if he can show that his employer's negligence was even the slightest cause of his injury." *Id.* at 177-78.
>
> …
>
> Additionally, before creating a division of authority among the circuits, we take respectful note that our current interpretation of *Rogers* is in accord with the interpretation adopted by all of our sister circuits. All have taken the view, based on *Rogers*, that there is a "relaxed" standard of probable cause under the FELA.
>
> As we noted in a prior FELA case: "We will not assume that Congress is unaware of the judicial gloss that the Act has received. If the Act as it has been interpreted and applied does not correctly reflect what was intended by the legislative branch then the change must be made there. The duty of this court is to follow what is now well-established authority." *Heater v. Chesapeake & Ohio Ry. Co.,* 497 F.2d 1243, 1246 (7th Cir. 1974).

*McBride v. CSX Transportation, Inc.*, U.S. Court of Appeals for the Seventh Circuit, Civil Action No. 08-3557 (March 2010), page 7-40.

Plaintiff's evidence here is certainly sufficient. The jury is certainly entitled to infer the connection between Defendants' negligence and Geoffrey Crowther's injuries under the low threshold for causation under the FELA. The FELA does not require a plaintiff to prove that the defendant's negligence proximately caused his injury.

In the case of *Hardyman v. Norfolk & Western Railway Company*, 243 F. 3d 255 (6th Cir. 2001), the Sixth Circuit considered an FELA carpal tunnel syndrome action in which the trial court precluded the plaintiff from offering expert causation testimony and erred in granting the railroad's motion for summary judgment on the ground that plaintiff failed to show that a genuine issue of fact exists as to whether the railroad's negligence was, in whole or in part, a cause or contributing factor of plaintiff's carpal tunnel syndrome. In *Hardyman*, the Sixth Circuit stated:

> (T)he district court held that unless the plaintiff could offer a scientific or epidemiological study specifically concerning carpal tunnel syndrome and railroad brakemen, the only way plaintiff could establish causation would be with the proffer of a known "dose/response relationship" or "threshold phenomenon". Not only does such a requirement ignore the alternative method of establishing causation through differential diagnosis, but it is contrary to the testimony of plaintiff's experts, i.e., that one simply could not quantify the level or dose of risk factors causative of CTS in a manner consistent with dose/response relationship or threshold level.
> …
> After careful review of the entire record, we are firmly convinced that the rationale of the district court did not justify exclusion of plaintiff's expert testimony.

*Hardyman* at 262, 267. (Emphasis added).

Defendants' motion is without merit, as there is evidence of record for the jury to conclude that Geoffrey Crowther's neck, bilateral knee, left elbow, and left thumb injuries were caused, contributed to and/or aggravated, worsened and exacerbated, in whole or in part, by the negligence of Defendants, CSX and Conrail, under the FELA. As this Honorable Court noted in its Order denying summary judgment:

> Given the "low threshold" required for Plaintiff to overcome the summary judgment motion, the court concludes that the record contains sufficient evidence for a reasonable jury to find in Plaintiff's favor.

Order dated October 5, 2010 (Document 45), page 11.

As to the statute of limitations, Defendants again raise the same arguments as in Defendants' Motion for Summary Judgment and Defendants' Motion for Reconsideration, which were previously denied by this Honorable Court.

Whether a plaintiff may be charged with knowledge that his injury is work-related depends on factors including the number of possible causes for the injury and if the medical advice either suggests an erroneous causal connection or otherwise puts to rest a plaintiff's suspicion regarding his injury. *Albert v. Maine Central*, 905 F.2d 541, 544 (1st Cir. 1990).

With regard to Plaintiff's knees, although Geoffrey Crowther sustained prior traumatic injuries to his knees in the 1970s and again in 1986, the record evidences that his knee injuries claimed in this action did not accrue until after treating with Dr. Lehman.  With regard to Plaintiff's neck, although Geoffrey Crowther had a cervical x-ray in 2002, the record evidences that the primary reason for the x-ray having been ordered was due to shoulder and/or hand symptoms he was experiencing, and that his neck injuries claimed in this action did not accrue until after treating with Dr. Cowan.  With regard to Plaintiff's left elbow, although Geoffrey Crowther was apparently diagnosed with some bilateral tennis / golfer's elbow in 2002, the record evidences that his left elbow injuries claimed in this action did not accrue until after treating with Dr. Luber.  With regard to Plaintiff's left thumb, the record evidences that his left thumb injuries claimed in this action did not accrue until after treating with Dr. Wenner.

In *Granfield v. CSX Transportation, Inc.*, U.S. Court of Appeals for the First Circuit, Civil Action No. 09-1302 (March 2010), the First Circuit recently noted:

> Dr. Spector determined that Granfield's lateral epicondylitis was being caused by the repetitive back and forth manipulation of what he deemed to be "levers" inside the locomotive cabin.  Granfield maintained throughout the trial that it was during this visit that he first became aware of the connection between his work activities and his injury.
> …
> [T]he jury returned its verdict in favor of Granfield.
> …
> In its briefs, CSX essentially rehashes the arguments it made in its motions for summary judgment and judgment as a matter of law.  Both motions were denied by the District Court, which found that the question of whether Granfield had complied with the three-year statute of limitations was one for the trier of fact to decide.  We agree.
> We have reiterated that:
>> [a]pplication of the discovery rule ordinarily involves questions of fact and therefore in most instances will be decided by the trier of fact.  In particular, application of the discovery rule involves determining what the plaintiff knew or should have known, which is a factual question that is appropriate for the trier of fact.  Determining when a plaintiff had notice of the likely cause of her injury is one example of such a

> determination.
> *Genereux v. Am. Beryllia Corp.*, 577 F.3d 360, 360 (1st Cir. 2009).
> …
> In his notes from Granfield's visit to him on July 8, 2003, Dr. Spector noted that Granfield had complained to him of feeling "symptoms" in his left elbow since December 2002. However, the record in unclear as to what these symptoms were, and whether they rose to the magnitude to lead Granfield to consider himself "injured."
> Generally, de minimus aches and pains are not considered to be an injury for the purposes of the FELA statute of limitations. *Green v. CSX Transp., Inc.*, 414 F.3d 758 (7th Cir. 2005); see also *Lancaster v. Norfolk & W. Ry. Co.*, 773 F.2d 807, 821 (7th Cir. 1985)…

*Granfield v. CSX Transportation, Inc.*, U.S. Court of Appeals for the First Circuit, Civil Action No. 09-1302 (March 2010).

III.    <u>CONCLUSION</u>:

On October 5, 2010, this Honorable Court found that Defendants are not entitled to judgment as a matter of law. There is certainly evidence of record for the jury to conclude that Geoffrey Crowther's neck, bilateral knee, left elbow, and left thumb injuries were caused, contributed to and/or aggravated, worsened and exacerbated, in whole or in part, by the negligence of Defendants, CSX and Conrail, in Geoffrey Crowther's FELA occupational injury action. There is no doubt that the issues of negligence and causation are properly for the jury to determine.

A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there are genuine issues of fact. *Anderson v. Liberty Lobby, Inc.,* 106 S. Ct. 2505, 477 U.S. 242, 249-50 (1986). As the United States Supreme Court in *Bailey v. Cent. Vt. Ry., Inc.,* 319 U.S. 350 (1943), has previously held:

> The right to a trial by jury is part and parcel of the remedy afforded railroad

>workers under the Federal Employers' Liability Act … [The] jury has been chosen as the appropriate tribunal to apply those standards to the facts of these personal injuries … To deprive these workers of a jury trial in close or doubtful cases is to take away a goodly portion of the relief which Congress has afforded them.

*Bailey* at 354.

Plaintiff has produced sufficient evidence of record to prove his case under the FELA. Defendants' Motion for Judgment as a Matter of Law should be denied.

WHEREFORE, Plaintiff, Geoffrey Crowther, respectfully requests this Honorable Court to enter an Order denying Defendants' Motion for Judgment as a Matter of Law.

---

Respectfully submitted,

*/s/Thomas J. Joyce, III*
THOMAS J. JOYCE, III
Law Office of Thomas J. Joyce, III
801 Centerton Road
Mount Laurel, NJ 08054
(856) 914-0220
Attorney for Plaintiff

DATED: January 19, 2011

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

| | | |
|---|---|---|
| GEOFFREY CROWTHER | : | Civil Action No. 09-10334-MAP and |
| | : | 09-11467-MAP |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| CSX TRANSPORTATION, INC. | : | |
| and | : | |
| CONSOLIDATED RAIL CORP. | : | |
| | : | |
| Defendants | : | |

_____

CERTIFICATE OF SERVICE

  I, THOMAS J. JOYCE, III, hereby certify that on January 19, 2011, I electronically filed Plaintiff's Response and Memorandum of Law in Opposition to Defendants' Motion for Judgment as a Matter of Law with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following counsel of record for the Defendants:

Heather M. Gamache, Esquire
Flynn & Wirkus
400 Crown Colony Drive, Suite 200
Quincy, MA 02169

                 */s/Thomas J. Joyce, III*
                 Thomas J. Joyce, III